IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
ROBERT HUNTER, ELMER IRWIN,
DOUG MERRIN, and THE SECOND
AMENDMENT FOUNDATION,

      Plaintiffs,

   -against-

CORTLAND HOUSING AUTHORITY
and ELLA M. DILORIO, in her official
capacity as Executive Director of
CORTLAND HOUSING AUTHORITY,

      Defendants.
--------------------------------------------------------X

Case No. 5:23-cv-1540 (GTS/ML)

**COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, Robert Hunter ("Hunter"), Elmer Irwin ("Irwin"), Doug Merrin ("Merrin") (together, the "Individual Plaintiffs"), and The Second Amendment Foundation ("SAF"), by and through their attorneys, Bochner PLLC, bring this action against Defendants Cortland Housing Authority ("CHA") and Ella M. Dilorio, in her official capacity as Executive Director of CHA ("Dilorio"), and allege as follows:

## INTRODUCTION

1. CHA, a New York State public housing authority that receives federal funding, ***categorically bans*** the possession of firearms (and other weapons) on CHA premises (the "Firearms Ban" or the "Ban"), at which CHA's public housing tenants reside in flagrant violation of the tenants' fundamental right to keep and bear arms in their homes under the Second Amendment to the United States Constitution, which provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed. U.S. CONST. amend. II.

2. Incorporated against the states through the Due Process Clause of the Fourteenth

1

Amendment (U.S. CONST. amend. XIV, § 1), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Second Amendment guarantees "an individual right to keep and bear arms," *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). It is "a fundamental constitutional right guaranteed to the people," *id.*, which is and has always been key to "our scheme of ordered liberty." *McDonald*, 561 U.S. at 767-68.

3. "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2118 (2022) (citing *Heller*, 554 U.S. 570). Consistent with this demand, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

4. As set forth in greater detail below, because of the Firearms Ban, CHA's tenants are completely barred from exercising their fundamental right to keep and bear arms in their "*home*, where the need for defense of self, family, and property is *most acute*." *Heller*, 554 U.S. at 628. (Emphasis added).

5. This is not a close case. Rather, CHA has blatantly thumbed its nose at the Supreme Court of the United States, and will continue to do so absent court intervention. A governmental entity simply may not impose a wholesale ban on the possession of firearms in the home, *full stop*. *See Heller*, 554 U.S. at 576 (holding that the District of Columbia's "total ban on handguns, as well as its requirement that firearms in the *home* be kept nonfunctional even when necessary for self-defense" violated the Second Amendment) (emphasis added); *Id.* at 627 ("As we have said, the law totally bans handgun possession in the *home*.") (emphasis added).

6. It is beyond cavil that there is *no* historical tradition of banning firearms possession in American homes.

7. Therefore, the Firearms Ban is not only unconstitutional as applied to Hunter, Irwin,

and Merrin; the Ban is unconstitutional on its face. Accordingly, Plaintiffs bring this challenge to vindicate their rights under the Second and Fourteenth Amendments to the United States Constitution, and to immediately and permanently enjoin enforcement of the Firearms Ban.

## PARTIES

8. Plaintiff Hunter is a 51-year-old natural person and a citizen of the state of New York, residing alone as a CHA tenant in Unit # B4 at the CHA senior public housing apartments located at 37 Galatia Street, Marathon, New York (the "Galatia Apartments"). Unit # B4 is Hunter's full-time home and only residence. Hunter is a peaceable, law-abiding citizen who is not disqualified in any way from ownership, possession, and use of firearms. But for the Firearms Ban, Hunter would own and possess firearms for self-defense and other lawful purposes in his home.

9. Plaintiff Irwin is a 57-year-old natural person and a citizen of the state of New York, residing with his wife as a CHA tenant in Unit # B3 at the Galatia Apartments. Unit # B3 is Irwin's full-time home and only residence. Irwin is a peaceable, law-abiding citizen who is not disqualified in any way from ownership, possession, and use of firearms. But for the Firearms Ban, Irwin would own and possess firearms for self-defense and other lawful purposes in his home.

10. Plaintiff Merrin is a 71-year-old natural person and a citizen of the state of New York, residing with his wife as a CHA tenant in Unit # A2 at the Galatia Apartments. Unit # A2 is Merrin's full-time home and only residence. Merrin is a peaceable, law-abiding citizen who is not disqualified in any way from ownership, possession, and use of firearms. But for the Firearms Ban, Merrin would own and possess firearms for self-defense and other lawful purposes in his home.

11. Plaintiff SAF is a 501(c)(3) nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutional right to keep and bear arms, to possess

firearms and firearms ammunition, and the consequences of gun control. SAF has over 720,000 members and supporters nationwide, including thousands of members in New York. SAF brings this action on behalf of those members, which include the Individual Plaintiffs. These members of SAF are adversely and directly harmed by Defendants' enforcement of the Firearms Ban.

12.  Defendant CHA is a municipal housing authority existing under the laws of the State of New York, created by N.Y. Pub. Hous. Law § 447, which provides, in pertinent part: "A municipal housing authority, to be known as the Cortland Housing Authority, is hereby created and established for the city of Cortland in the county of Cortland . . . . It shall have all the powers and duties now or hereafter conferred by this chapter upon municipal housing authorities." As set forth on CHA's website, CHA, being a public (municipal) housing authority (PHA), participates in the federal Public Housing program "designed to house eligible persons in affordable, decent, safe and sanitary apartments that are owned by the [CHA]." As also provided on CHA's website, The United States Department of Housing and Urban Development (HUD) "contracts with [CHA] to administer" public housing "in accordance with HUD regulations and provides an operating subsidy to [CHA]", which "must create written policies that are consistent with HUD regulations."

13.  CHA administers and owns multiple public housing properties in Cortland County. As provided on the "NY Connects" website maintained by the State: "[CHA] has 380 units for Federally-subsidized Public Housing located throughout Cortland County. Housing units for seniors and disabled individuals are located in the City of Cortland, the Villages of Homer, McGraw and Marathon, and the Towns of Cincinnatus and Truxton. Eligibility for most of CHA's housing units is also means-based and available only to individuals with an annual income at or below certain federally-mandated thresholds.

14.  The Galatia Apartments, where the Individual Plaintiffs reside, consist of sixteen one-bedroom senior apartments, administered and owned by CHA. Only those individuals who

are 62 years of age, or disabled, are eligible for housing at Galatia.

15.     Defendant Dilorio, sued in her official capacity, is the Executive Director of CHA, and in that capacity, directs, implements, and supervises the policies and rules of CHA, including the Firearms Ban.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

17.     This action, based on violations of Plaintiffs' constitutional rights, is brought under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

18.     This Court has personal jurisdiction over the Defendants since they are situated within the Northern District of New York.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because all Defendants are residents of the state of New York, where the Northern District of New York is located; or, alternatively, under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

20.     As a condition of receiving the benefit of CHA public housing, all CHA tenants, including the Individual Plaintiffs, were required to enter into a standard Residential Lease Agreement ("RLA") and did in fact enter into a RLA. (A true and accurate copy of the RLA is attached hereto as **Exhibit A**).

21.     As a condition of continuing to receive the benefit of CHA public housing,

continuing to have a home, not being subjected to lease termination, and not being evicted, all CHA tenants, including the Individual Plaintiffs, must abide by the Firearms Ban, which is set forth in "Tenant's Obligations" in Article IX of their RLAs. Article IX, section (p), the Firearms Ban, and provides that the "**Tenant shall be obligated: (p) Not to <u>display, use, or possess</u> or allow members of Tenant's household or guest to display, use or possess <u>any firearms (operable or inoperable) or other weapons</u> as defined by the laws and courts of the State of New York anywhere on the property of CHA**." (Emphasis added).

22. On April 10, 2023, Hunter sent an email to CHA complaining about the Firearms Ban, writing:

> First up tenants are allowed to have firearms in their private dwelking [sic], as long as the [sic] are law abiding citizens. At the time of writing this and prior to writing this, what your lease states is unconstitutional. If it isn't removed, I will have no other choice but to take legal action against the housing authority. I've spoke too [sic] and am ready to move forward with a lawsuit if the policy is not changed. I also research HUDs position, federal and state laws, I can't find one that allows for a firearm ban, making your firearm covenant unconstitutional and discriminatory against poor people. N DOE V East St Louis Housing authority court decision decided it was an unconstitutional provision in the lease, no different than the lease you made every tenant here sign. The lease you had me and every other tenant sign was from 2008, and not the updated guidelines of 2020, which believe it or not say nothing about firearms. This is a strict violation of the constitution and it has been proven in courts over and over and I am not sure why Cortland housing authority funds [sic] it ok to ignite the constitution, or discriminate based upon a person being poor.
>
> I will also file a full grievance regarding the issue, I will also be looking at litigation as ignorance of law is not a defense. The ignorance of the housing authority is discrimination, blatant discrimination.

23. On May 1, 2023, CHA's attorney emailed Hunter's attorney and advised regarding the Firearms Ban: "*Unconstitutional lease provision regarding firearms. We will not be changing our stated position or lease provision on this matter.*" (Emphasis added).

24. CHA's refusal to discard the Firearms Ban confirms that CHA's leadership believes CHA is above the law, doesn't need to conform the RLA to the crystal clear holdings by the

6

Supreme Court in *Heller*, *McDonald*, and *Bruen*, and that CHA has open contempt for the Second Amendment. This arrogance, defiance, and contempt can only be remedied by this Court's immediate intervention.

25.     Worse still, CHA, by enforcing the Firearms Ban, impermissibly discriminates against elderly, disabled, and financially-disadvantaged individuals who make their homes in public housing facilities such as the Galatia Apartments, and who are just as entitled to exercise their Second Amendment rights as individuals who are not elderly, disabled, or of limited financial means, and who are just as entitled to equal protection under the law.

26.     Each day that the Individual Plaintiffs are forced to live under the Firearms Ban is another day that their fundamental right to keep and bear arms is openly violated by CHA, resulting in irreparable harm.

27.     The circumstances of this action are virtually identical to those of *N. DOE, filing anonymously, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION*, Plaintiffs, *v. EAST ST. LOUIS HOUSING AUTHORITY* ("ESLHA") *and MILDRED A. MOTLEY, in her official capacity as Executive Director of the East St. Louis Housing Authority*, Defendants, No. 3:18-cv-545 (United States District Court for the Southern District of Illinois), action commenced on March 7, 2018.

28.     In *N. DOE*, the ESLHA, just like CHA, imposed a firearms ban on its public housing tenants through the lease agreement. The ban provided, *inter alia*, that tenants were not permitted to "display, use, or possess or allow members of [DOE's] household or guests to display, use, or possess any firearms, (operable or inoperable) . . . anywhere in the unit or elsewhere on the property of the Authority."

29.      On April 3, 2019, the parties in *N. DOE* entered into a "Stipulation to Entry of

Final Judgment and Permanent Injunction," whereby the parties stipulated "that the Court shall issue an Order . . . enjoining Defendants . . . from enforcing" the sections of the East St. Louis Housing lease agreement that banned firearms for "residents who are permitted under Illinois law to possess a firearm, to possess functional firearms that are legal in their jurisdiction for self-defense and defense of others in their residences, provided they are otherwise-qualified to do so." That same day, the parties filed an "Agreed Motion for Entry of Final Judgment and Permanent Injunction" requesting that the Court enter final judgment and a permanent injunction in accordance with the Stipulation.

30. On April 11, 2019, the Court entered an "Order of Final Judgment and Permanent Injunction" permanently enjoining enforcement of the offending lease provisions, and required the defendants to "take the necessary steps to strike or amend the challenged sections of the ESLHA Lease, such that the ESLHA will no longer prohibit Plaintiffs, and other ESLHA residents who are otherwise qualified under Illinois law to possess firearms, to possess functional firearms, that are legal in their jurisdiction, in their residences."

31. The Second Amendment requires the same result in this action as in *N. DOE*.

## CLAIMS FOR RELIEF

32. As to all claims for relief set forth below, Plaintiffs repeat, reallege, and incorporate by reference each and every allegation of the foregoing paragraphs as if fully set forth in each claim for relief.

**COUNT ONE**
**Violation of the United States Constitution**
**Second & Fourteenth Amendments**
**(42 U.S.C. § 1983)**
**As-Applied to the Individual Plaintiffs and Facial**
**(All Plaintiffs v. All Defendants)**

33. The Second Amendment to the United States Constitution provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed. U.S. CONST. amend. II.

34. Incorporated against the states through the Due Process Clause of the Fourteenth Amendment (U.S. CONST. amend. XIV, § 1), *McDonald*, 561 U.S. 742, the Second Amendment guarantees "an individual right to keep and bear arms," *Heller*, 554 U.S. at 595. It is "a fundamental constitutional right guaranteed to the people," *id.*, which is and has always been key to "our scheme of ordered liberty." *McDonald*, 561 U.S. at 767-68.

35. "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2118 (citing *Heller*, 554 U.S. 570). Consistent with this demand, and because "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms," *Heller*, 554 U.S. at 582, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

36. Here, CHA's tenants, including the Individual Plaintiffs, are completely barred from exercising their fundamental right to keep and bear arms in their "*home*, where the need for defense of self, family, and property is *most acute*." *Heller*, 554 U.S. at 628. (Emphasis added).

37. A governmental entity simply may not impose a wholesale ban on the possession of firearms in the home. *Heller*, 554 U.S. at 576 (holding that the District of Columbia's "total ban on handguns, as well as its requirement that firearms in the *home* be kept nonfunctional even when necessary for self-defense" violated the Second Amendment) (emphasis added); *Id.* at 627 ("As we have said, the law totally bans handgun possession in the *home*.") (emphasis added).

38. It is beyond cavil that there is *no* historical tradition of banning firearms possession

in American homes. Therefore, CHA cannot make an affirmative showing that the Firearms Ban is part of any historical tradition of firearms regulation.

39. Moreover, because "the Second Amendment extends, prima facie, *to all instruments that constitute bearable arms*," *Heller*, 554 U.S. at 582 (emphasis added), the Firearms Ban is unconstitutional both because it bans the possession of firearms *and* because it bans the possession of other legal non-firearm weapons, such as knives. The Individual Plaintiffs have a fundamental right not only to possess firearms in their homes at the Galatia Apartments, but also to possess non-firearm weapons for self-defense and other lawful purposes.

40. The Firearms Ban is a *wholesale* ban on firearms possession *and ownership*, since CHA's tenants, including the Individual Plaintiffs, are uniformly individuals of extremely limited economic means and have no other homes or residences at which to maintain or store firearms. There can be no firearms ownership without firearms possession, and since the Ban precludes firearms possession, it also cuts off the fundamental right to firearms *ownership*.

41. The Firearms Ban also deprives the Individual Plaintiffs and all other CHA tenants from exercising their fundamental right to armed self-defense in the home, since there can be no armed self-defense in the home without lawfully-possessed firearms or non-firearm weapons.

42. The Firearms Ban lacks any constitutional, statutory, or regulatory basis. The Ban is nothing more than Defendants' ideological policy preference.

43. Wholesale firearms bans, particularly in the home, are absolutely *verboten* under the Second Amendment.

44. Defendants, intentionally and acting under color of state law, have deprived and continue to deprive the Individual Plaintiffs and all other tenants at CHA properties of their fundamental constitutional right to keep and bear arms in their homes, entirely inconsistent with

any historic tradition of firearms regulation, and Plaintiffs have consequently been damaged and will be irreparably harmed each day that the Firearms Ban is allowed to stand.

45. The Firearms Ban inflicts irreparable harm on the Individual Plaintiffs, all other CHA tenants, and SAF and its other members affected by the Ban, all of whom would possess and own firearms and non-firearm weapons in their homes at CHA properties, but for the Ban. Plaintiffs have a substantial likelihood of success on the merits of their claims under the Second and Fourteenth Amendments, lack an adequate remedy at law for this infringement on their fundamental right to keep and bear arms, and the harm that Plaintiffs would suffer from denial of an injunction exceeds any legally cognizable harm an injunction may inflict upon Defendants. The public interest favors enjoining enforcement of the Firearms Ban.

46. As a direct and proximate result of the above violation of Plaintiffs' rights protected under the Second and Fourteenth Amendments, the Individual Plaintiffs, SAF and its other members, and all other similarly situated individuals, have suffered an unlawful deprivation of their fundamental constitutional right to keep and bear arms, and they will continue to suffer such an injury until granted the relief sought herein.

47. Plaintiffs are entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and ultimately a permanent injunction, enjoining Defendants from enforcing the Firearms Ban and requiring Defendants to strike the Firearms Ban from the CHA RLA in order to protect against the irreparable harm of ongoing deprivation of Second and Fourteenth Amendment rights.

48. Plaintiffs are further entitled to a declaration that the Firearms Ban violates the Second and Fourteenth Amendment rights of the Individual Plaintiffs, SAF and its other members, and all other CHA tenants; and further, that the Firearms Ban is unconstitutional as applied to the

Individual Plaintiffs and on its face.

49.     Plaintiffs are also entitled to compensatory and/or punitive damages, or nominal damages, in an amount to be determined upon a jury trial, as well as attorneys' fees.

**COUNT TWO**
**Violation of the United States Constitution**
**Fourteenth Amendment**
**(42 U.S.C. § 1983)**
**Equal Protection**
**(Individual Plaintiffs v. All Defendants)**

50.     The Fourteenth Amendment to the United States Constitution provides in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; not deny to any person within its jurisdiction the *equal protection of the laws*." U.S. CONST. amend. XIV.

51.     "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

52.     Here, Defendants' Firearms Ban, which deny lawful persons their individual rights of firearms ownership and possession as secured by the Second Amendment, due to their age, financial disadvantage, circumstances of residing in public housing, and disability, on its face and as applies, violate the right to equal protection of the law of the Individual Plaintiffs, all tenants at CHA properties and all similarly situated members of SAF, as secured by the Fourteenth Amendment.

53. Plaintiffs have no adequate remedy at law and seek injunctive and declaratory relief for the deprivation of their Fourteenth Amendment rights by Defendants under color of state law.

54. Plaintiffs are also entitled to compensatory and/or punitive damages, or nominal damages, in an amount to be determined upon a jury trial, as well as attorneys' fees.

## JURY DEMAND

55. Plaintiffs hereby demand trial by jury.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, on both Counts, as follows:

(a) A temporary restraining order, followed by preliminary and permanent injunctions enjoining enforcement of the Firearms Ban; and a judgment declaring the Firearms Ban to be unconstitutional under the Second and Fourteenth Amendments to the United States Constitution;

(b) Compensatory and/or punitive damages, or nominal damages, awarded to the Individual Plaintiffs in an amount to be determined upon a jury trial;

(c) Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(d) Any other and further relief as the Court deems just and proper.

Dated: December 7, 2023
New York, NY

Respectfully submitted,

**BOCHNER PLLC**

By: *s/ Edward Andrew Paltzik*
Edward Andrew Paltzik
Serge Krimnus
1040 Avenue of the Americas, 15th Floor
New York, NY 10018
(516) 526-0341
edward@bochner.law
*Attorneys for Plaintiffs*