**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

ROBERT HUNTER, ELMER IRWIN,
DOUG MERRIN, and THE SECOND
AMENDMENT FOUNDATION,

        Plaintiffs,

   -against-

CORTLAND HOUSING AUTHORITY
and ELLA M. DILORIO, in her official
capacity as Executive Director of
CORTLAND HOUSING AUTHORITY,

        Defendants.

-------------------------------------------------------X

Case No. 5:23-cv-1540 (GTS/ML)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW**
**CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY**
**INJUNCTION**

## TABLE OF CONTENTS

I.     INTRODUCTION...................................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................................ 1

    A.    The Firearms Ban............................................................................................... 1

    B.    Plaintiffs.............................................................................................................. 2

    C.    Defendants .......................................................................................................... 3

III.   ARGUMENT.............................................................................................................. 4

    A.    Standard for Injunctive Relief........................................................................... 4

    B.    Plaintiffs Are Highly Likely to Prevail on the Merits...................................... 5

    C.    Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief.................. 9

    D.    The Balance of Equities and Public Interest Favor Granting Injunctive Relief ............... 11

IV.    CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

Cases

*725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424 (S.D.N.Y. Sept. 30, 2019) .............. 5

*Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985)................................................................. 5

*Basank v. Decker*, 449 F. Supp. 3d 205 (S.D.N.Y. Mar. 26, 2020)........................................... 4, 9

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226 (2d Cir. 2004) ................................ 9

*District of Columbia v. Heller*, 554 U.S. 570 (2008)................................................................. 6, 7

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................................................ 9

*Eng v. Smith*, 849 F.2d 80 (2d Cir. 1988) ..................................................................................... 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ............................ 4, 9

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112 (2d Cir. 2005) .................................................. 9

*Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ...................................................................... 9

*Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173 (2d Cir. 2019) ......................................................... 4

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)...................................................................... 6

*Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010) ............................................................. 5

*Doe v. East St. Louis Housing Authority*, No. 3:18-cv-545 (S.D. Ill. Apr. 11, 2019). .................. 7

*New York State Rifle and Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)...................................... 6

*New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020) ......................... 5

*Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL 2357266 (S.D.N.Y. May 23, 2018)..................... 9

*Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317 (2d Cir. 1999) ................ 9

*United States v. Thorn*, 317 F.3d 107 (2d Cir. 2003)................................................................... 5

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981) ...................................................................... 5

United States Constitution

U.S. Const. amend. II. ........................................................................................................ 6

U.S. Const. amend. XIV, § 1 ............................................................................................. 6

Statutes

N.Y. Pub. Hous. Law § 447 ............................................................................................... 3

## I.     INTRODUCTION

Plaintiffs, Robert Hunter ("Hunter"), Elmer Irwin ("Irwin"), Doug Merrin ("Merrin") (together, the "Individual Plaintiffs") and The Second Amendment Foundation ("SAF"), by and through their attorneys, Bochner PLLC, submit this Memorandum of Law in Support of their Order to Show Cause (the "Motion") for a Temporary Restraining Order and Preliminary Injunction against Defendants Cortland Housing Authority ("CHA") and Ella M. Dilorio, in her official capacity as Executive Director of CHA ("Dilorio"). This Order to Show Cause follows Plaintiffs' Complaint filed December 7, 2023 ("Compl.") [ECF 1] (**Exhibit A** to the accompanying Declaration of Plaintiffs' counsel Edward Andrew Paltzik ["Paltzik Decl."]) against Defendants. Submitted herewith are the Paltzik Declaration and the Declarations of Adam Kraut (Executive Director of SAF) ("Kraut Decl."), and of the Individual Plaintiffs ("Hunter Decl.", "Irwin Decl.", "Merrin Decl.", individually, "Ind. Pls' Decl." collectively).

The Complaint and Declarations detail an egregious and flagrant violation of Plaintiffs' fundamental right to keep and bear arms in their homes under the Second Amendment to the United States Constitution, to wit: Defendants ***categorically ban*** the possession of firearms (and other weapons) on CHA premises (the "Firearms Ban" or the "Ban"), at which CHA's public housing tenants reside and make their homes. (Compl. ¶¶ 1, 21; Paltzik Decl. ¶¶ 6, 9; Kraut Decl. ¶ 7; Ind Pls' Decl. ¶ 5; **Exhibit B** to Paltzik Decl.).

## II.    STATEMENT OF FACTS

### A.     The Firearms Ban

CHA, a New York State public housing authority that receives federal funding and houses tenants, categorically bans the possession of firearms and other weapons on CHA premises. (Compl. ¶¶ 1, 21; Paltzik Decl. ¶ 5; Kraut Decl. ¶ 7; Ind Pls' Decl. ¶ 5). As a condition of receiving

the benefit of CHA public housing, all CHA tenants, including the Individual Plaintiffs, were required to enter into a standard Residential Lease Agreement ("RLA") and did in fact enter into a RLA. (Ex. B; Compl. ¶¶ 20, 21; Kraut Decl. ¶ 8; Ind Pls' Decl. ¶ 6). As a condition of continuing to receive the benefit of CHA public housing, continuing to have a home, not being subjected to lease termination, and not being evicted, all CHA tenants, including the Individual Plaintiffs, must abide by the Firearms Ban, which is set forth in "Tenant's Obligations" in Article IX of their RLAs. Article IX, section (p), the Firearms Ban, and provides that the "**Tenant shall be obligated: (p) Not to <u>display, use, or possess</u> or allow members of Tenant's household or guest to display, use or possess <u>any firearms (operable or inoperable) or other weapons</u> as defined by the laws and courts of the State of New York anywhere on the property of CHA**." (**Ex. B**; Compl. ¶¶ 21; Paltzik Decl. ¶ 9; Kraut Decl. ¶ 9; Ind Pls' Decl. ¶ 7) (emphasis added).

### B.    Plaintiffs

Plaintiff Hunter is a 51-year-old natural person and a citizen of the state of New York, residing alone as a CHA tenant in Unit # B4 at the CHA senior public housing apartments located at 37 Galatia Street, Marathon, New York (the "Galatia Apartments"). (Compl. ¶ 8; Hunter Decl. ¶ 4). Unit # B4 is Hunter's full-time home and only residence. (Compl. ¶ 8; Hunter Decl. ¶ 4).

Plaintiff Irwin is a 57-year-old natural person and a citizen of the state of New York, residing with his wife as a CHA tenant in Unit # B3 at the Galatia Apartments. (Compl. ¶ 9; Irwin Decl. ¶ 4). Unit # B3 is Irwin's full-time home and only residence. (Compl. ¶ 9; Irwin Decl. ¶ 4). Plaintiff Merrin is a 71-year-old natural person and a citizen of the state of New York, residing with his wife as a CHA tenant in Unit # A2 at the Galatia Apartments. (Compl. ¶ 10; Merrin Decl. ¶ 4). Unit # A2 is Merrin's full-time home and only residence. (Compl. ¶ 10; Merrin Decl. ¶ 4).

Each of the Individual Plaintiffs are peaceable, law-abiding citizens who are not disqualified in any way from ownership, possession, and use of firearms. (Compl. ¶¶ 8-10; Ind.

Pls' Decl. ¶¶ 4). But for the Firearms Ban, each of the Individual Plaintiffs would own and possess firearms for self-defense and other lawful purposes in their homes. (Compl. ¶¶ 8-10; Ind. Pls' Decl. ¶¶ 4).

Plaintiff SAF is a 501(c)(3) nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. (Compl. ¶ 11; Kraut Decl. ¶ 3). SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutional right to keep and bear arms, to possess firearms and firearms ammunition, and the consequences of gun control. (Compl. ¶ 11; Kraut Decl. ¶ 4). SAF has over 720,000 members and supporters nationwide, including thousands of members in New York, and including the Individual Plaintiffs. (Compl. ¶ 11; Kraut Decl. ¶ 5).

### C.    Defendants

Defendant CHA is a municipal housing authority existing under the laws of the State of New York, created by N.Y. Pub. Hous. Law § 447, which provides, in pertinent part: "A municipal housing authority, to be known as the Cortland Housing Authority, is hereby created and established for the city of Cortland in the county of Cortland . . . . It shall have all the powers and duties now or hereafter conferred by this chapter upon municipal housing authorities." (Compl. ¶ 12; Paltzik Decl. ¶ 7). Defendant Dilorio is the Executive Director of CHA. (Compl. ¶ 12).

As set forth on CHA's website, CHA, being a public (municipal) housing authority (PHA), participates in the federal Public Housing program "designed to house eligible persons in affordable, decent, safe and sanitary apartments that are owned by the [CHA]." (*Id*.). As also provided on CHA's website, The United States Department of Housing and Urban Development (HUD) "contracts with [CHA] to administer" public housing "in accordance with HUD regulations

3

and provides an operating subsidy to [CHA]", which "must create written policies that are consistent with HUD regulations." (*Id*.).

CHA administers and owns multiple public housing properties in Cortland County. (*Id*. ¶ 13). As provided on the "NY Connects" website maintained by the State: "[CHA] has 380 units for Federally-subsidized Public Housing located throughout Cortland County. (*Id*.). Housing units for seniors and disabled individuals are located in the City of Cortland, the Villages of Homer, McGraw and Marathon, and the Towns of Cincinnatus and Truxton. (*Id*.). Eligibility for most of CHA's housing units is also means-based and available only to individuals with an annual income at or below certain federally-mandated thresholds. (*Id*.).

The Galatia Apartments, where the Individual Plaintiffs reside, consist of sixteen one-bedroom senior apartments, administered and owned by CHA. (*Id*. ¶ 14). Only those individuals who are 62 years of age, or disabled, are eligible for housing at Galatia. (*Id*.).

## III.   ARGUMENT

### A.   Standard for Injunctive Relief

Courts in the Second Circuit decide an application for both a temporary restraining order ("TRO") and a preliminary injunction under the same legal standard. *Basank v. Decker*, 449 F. Supp. 3d 205, 210 (S.D.N.Y. Mar. 26, 2020) ("It is well established in this Circuit that the standard for an entry of a TRO is the same for a preliminary injunction."). Either a TRO or a preliminary injunction may be granted if a plaintiff shows "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183–84 (2d Cir. 2019) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009)).

In deciding an application for either, Courts in the Second Circuit also consider whether "the balance of equities tips in [a plaintiff's] favor, and that an injunction is in the public interest." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58 (2d Cir. 2020), *cert. granted sub nom. Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1370 (2021), *and cert. dismissed Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1292 (2021). Further, "[t]he Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Mullins v. City of New York*, 626 F.3d 47, 51–52 (2d Cir. 2010) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

Here, the evidence presented is extremely straightforward (a lease agreement—the RLA—that undoubtedly violates the United States Constitution); clearly demonstrates that Plaintiffs are likely to succeed on the merits of their claims, particularly their Second Amendment claims; and clearly demonstrates that Plaintiffs have been, and will continue to be, irreparably harmed by Defendants' ongoing violation of Plaintiffs' fundamental constitutional rights; and that any equitable and public interest considerations plainly weigh in favor of injunctive relief.

## B. Plaintiffs Are Highly Likely to Prevail on the Merits

To establish a likelihood of success on the merits, Plaintiffs "need not show that success is an absolute certainty. [They] need only make a showing that the probability of [their] prevailing is better than fifty percent." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) ). Moreover, Plaintiffs need not demonstrate a likelihood of success on the merits of every claim—rather, they need only "show a likelihood of success on the merits of at least *one* of [their] claims." *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. Sept. 30, 2019). (Emphasis added). As discussed more fully below, because Defendants' constitutional violation is so blatant and so clear-cut, Plaintiffs are highly

likely to prevail on their Second Amendment claim.

The Second Amendment to the United States Constitution provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed. U.S. CONST. amend. II.

Incorporated against the states through the Due Process Clause of the Fourteenth Amendment (U.S. CONST. amend. XIV, § 1), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Second Amendment guarantees "an individual right to keep and bear arms," *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). It is "a fundamental constitutional right guaranteed to the people," *id.*, which is and has always been key to "our scheme of ordered liberty." *McDonald*, 561 U.S. at 767-68.

"*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *New York State Rifle and Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2118 (2022) (citing *Heller*, 554 U.S. 570).

Consistent with this demand, and because "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms," *Heller*, 554 U.S. at 582, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*

Here, CHA's tenants, including the Individual Plaintiffs, are completely barred from exercising their fundamental right to keep and bear arms in their "*home*, where the need for defense of self, family, and property is *most acute*." *Heller*, 554 U.S. at 628 (emphasis added). A governmental entity simply may not impose a wholesale ban on the possession of firearms in the home. *Heller*, 554 U.S. at 576 (holding that the District of Columbia's "total ban on handguns, as well as its requirement that firearms in the *home* be kept nonfunctional even when necessary for self-defense" violated the Second Amendment) (emphasis added); *Id.* at 627 ("As we have said,

the law totally bans handgun possession in the *home*.") (emphasis added). It is beyond cavil that there is *no* historical tradition of banning firearms possession in American homes. Therefore, CHA cannot make an affirmative showing that the Firearms Ban is part of any historical tradition of firearms regulation.

Moreover, because "the Second Amendment extends, prima facie, *to all instruments that constitute bearable arms*," *Heller*, 554 U.S. at 582 (emphasis added), the Firearms Ban is unconstitutional both because it bans the possession of firearms *and* because it bans the possession of other legal non-firearm weapons, such as knives. The Individual Plaintiffs have a fundamental right not only to possess firearms in their homes at the Galatia Apartments, but also to possess non-firearm weapons for self-defense and other lawful purposes.

Simply put, the Firearms Ban is a *wholesale* ban on firearms possession *and ownership*, since CHA's tenants, including the Individual Plaintiffs, are uniformly individuals of extremely limited economic means and have no other homes or residences at which to maintain or store firearms – which would not save CHA's RLA provision in any event. There can be no firearms ownership without firearms possession, and since the Ban precludes firearms possession, it also cuts off the fundamental right to firearms *ownership*. Along the same lines, the Firearms Ban also deprives the Individual Plaintiffs and all other CHA tenants from exercising their fundamental right to armed self-defense in the home, since there can be no armed self-defense in the home without lawfully-possessed firearms or non-firearm weapons.

As further confirmation of Plaintiffs' high likelihood of success on the merits, the circumstances of this action are virtually identical to those of Doe *v.* East St. Louis Housing Authority, No. 3:18-cv-545 (S.D. Ill. Mar 07, 2018). In *Doe*, the East St. Louis Housing Authority, just like CHA, imposed a firearms ban on its public housing tenants through the lease agreement.

7

The ban provided, *inter alia*, that tenants were not permitted to "display, use, or possess or allow members of [DOE's] household or guests to display, use, or possess any firearms, (operable or inoperable) . . . anywhere in the unit or elsewhere on the property of the Authority." On April 3, 2019, the parties in *Doe* entered into a "Stipulation to Entry of Final Judgment and Permanent Injunction," whereby the parties stipulated "that the Court shall issue an Order . . . enjoining Defendants . . . from enforcing" the sections of the East St. Louis Housing lease agreement that banned firearms for "residents who are permitted under Illinois law to possess a firearm, to possess functional firearms that are legal in their jurisdiction for self-defense and defense of others in their residences, provided they are otherwise-qualified to do so." That same day, the parties filed an "Agreed Motion for Entry of Final Judgment and Permanent Injunction" requesting that the Court enter final judgment and a permanent injunction in accordance with the Stipulation. On April 11, 2019, the Court entered an "Order of Final Judgment and Permanent Injunction" permanently enjoining enforcement of the offending lease provisions, and required the defendants to "take the necessary steps to strike or amend the challenged sections of the ESLHA Lease, such that the ESLHA will no longer prohibit Plaintiffs, and other ESLHA residents who are otherwise qualified under Illinois law to possess firearms, to possess functional firearms, that are legal in their jurisdiction, in their residences."

The Second Amendment requires the same result in this action as in *Doe*. The bottom line is that the Firearms Ban here, just like the ban in *Doe*, lacks any constitutional, statutory, or regulatory basis. The Ban is nothing more than Defendants' ideological policy preference. Accordingly, the evidence as set forth in the Statement of Facts coupled with the black-letter law on this subject, shows that Plaintiffs are likely to succeed on the merits of their Second Amendment against Defendants.

### C.    Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief

In the Second Circuit, "a showing of irreparable harm is the single most important prerequisite" for preliminary injunctive relief. *Faively Transport Malmo AB v. Wabetc Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citations omitted). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction, they will suffer 'an injury that is neither remote nor speculative, but actual and imminent," and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).

As well in this Circuit, "it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Basank*, 449. F. Supp. 3d at 213 (citing *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury.")); *see also Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (clarifying that "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm" and a substantial likelihood of success on the merits of a constitutional violation is not necessary); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of [constitutional] freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); *Basank*, 449 F.Supp. 3d at 210 ("Petitioners have shown irreparable injury by establishing the risk of harm to their health and to their constitutional rights."); *Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) (finding that immigration detainee established irreparable injury by alleging that prolonged immigration detention violated his constitutional due process rights).

Here, Plaintiffs will without question be irreparably harmed if Defendants are permitted to continue enforcing the Firearms Ban, since the existence of a constitutional violation constitutes irreparable harm without any further evidentiary showing. There is no question that the Individual Plaintiffs entered into CHA RLAs, that they make their homes at the Galatia Apartments, and that the Firearms Ban provision of the RLA categorically deprives them of their fundamental Second Amendment right to keep and bear arms in their homes. Accordingly, irreparable harm has been established.

However, even with irreparable harm so obvious, it bears mentioning that the continuation of the irreparable harm is inevitable absent Court intervention, as evidenced by Defendants' appalling and explicitly-stated open disregard for the law in email correspondence with Hunter. On April 10, 2023, Hunter sent an email to CHA complaining about the Firearms Ban, writing:

> First up tenants are allowed to have firearms in their private dwelking [sic], as long as the [sic] are law abiding citizens. At the time of writing this and prior to writing this, what your lease states is unconstitutional. If it isn't removed, I will have no other choice but to take legal action against the housing authority. I've spoke too [sic] and am ready to move forward with a lawsuit if the policy is not changed. I also research HUDs position, federal and state laws, I can't find one that allows for a firearm ban, making your firearm covenant unconstitutional and discriminatory against poor people. N DOE V East St Louis Housing authority court decision decided it was an unconstitutional provision in the lease, no different than the lease you made every tenant here sign. The lease you had me and every other tenant sign was from 2008, and not the updated guidelines of 2020, which believe it or not say nothing about firearms. This is a strict violation of the constitution and it has been proven in courts over and over and I am not sure why Cortland housing authority funds [sic] it ok to ignite the constitution, or discriminate based upon a person being poor.

> I will also file a full grievance regarding the issue, I will also be looking at litigation as ignorance of law is not a defense. The ignorance of the housing authority is discrimination, blatant discrimination.

On May 1, 2023, CHA's attorney emailed Hunter's attorney and advised regarding the Firearms Ban: "*Unconstitutional lease provision regarding firearms. We will not be changing our stated*

*position or lease provision on this matter*" (emphasis added). CHA's refusal to discard the Firearms Ban confirms that CHA's leadership believes CHA is above the law, doesn't need to conform the RLA to the crystal clear holdings by the Supreme Court in *Heller*, *McDonald*, and *Bruen*, and that CHA has open contempt for the Second Amendment. This arrogance, defiance, and contempt further evidences the existence of irreparable harm, and can only be remedied by this Court's immediate intervention.

>        **D.      The Balance of Equities and Public Interest Favor Granting Injunctive Relief**

The balance of equities between the Parties, and the public interest, both tip overwhelmingly in favor of granting injunctive relief, including a TRO. In the absence of injunctive relief, Plaintiffs will continue to suffer daily violation of their fundamental Second Amendment rights; in contrast, if injunctive relief is granted, Defendants will suffer no harm and will simply be compelled to conform their rules with the United States Constitution. The public interest would also be served by granting injunctive relief because doing so would uphold the Constitution and comply with the Supreme Court's Second Amendment jurisprudence; in contrast, denial of injunctive relief would cause severe harm to the public interest, since public authorities— here, CHA—that flout the Constitution cause harm to the public.

## IV.     CONCLUSION

Respectfully, this is not even a remotely close case. Defendants' violation of the Constitution is egregious and clear-cut. Wholesale firearms bans, particularly in the home, are absolutely *verboten* under the Second Amendment, *full stop*. There is no legally valid excuse or justification for the Firearms Ban. Accordingly, Defendants' motion for a temporary restraining order and preliminary injunction should be granted and Plaintiffs should be awarded the following relief: (i) a temporary restraining order and a preliminary injunction enjoining enforcement of the Firearms Ban; and (ii) Plaintiffs' attorneys' fees and costs associated with this motion for

injunctive relief, and the underlying Complaint.

Dated:  December 7, 2023
       New York, NY                          Respectfully submitted,

                                        **BOCHNER PLLC**

                                        By: *s/ Edward Andrew Paltzik*
                                        Edward Andrew Paltzik
                                        Serge Krimnus
                                        1040 Avenue of the Americas, 15th Floor
                                        New York, NY 10018
                                        (516) 526-0341
                                        edward@bochner.law
                                        *Attorneys for Plaintiffs*

12