UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ROBERT HUNTER, ELMER IRWIN, DOUG
MERRIN, and THE SECOND AMENDMENT                    Case No: 5:23-cv-01540
FOUNDATION,                                                      (GTS/ML)

                                        Plaintiffs,

                    - against –

CORTLAND HOUSING AUTHORITY, and ELLA M.
DILORIO, in her official capacity as Executive Director
of CORTLAND HOUSING AUTHORITY,

                                        Defendants.
-------------------------------------------------------------------X

---

**DEFENDANTS, CORTLAND HOUSING AUTHORITY AND
ELLA M. DILORIO, MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF, SECOND AMENDMENT FOUNDATION'S,
COMPLAINT AND IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR
INJUNCTIVE RELIEF**

---

John W. Liguori, Esq.
NDNY Bar Roll No. 507379
Ligouri & Houston, PLLC
Attorneys for Defendants
*Cortland  Housing Authority
And Ella M. DiLorio*
69 State Street, Suite 1400-D
Albany, New York 12207
P: (518) 407-3880
F: (518) 763-0898
john@jwlawalbany.com

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

Table of Authorities........................................................................................... iii-vii

Preliminary Statement ...........................................................................................1

Statement of Facts .................................................................................................3

Standard of Review ...............................................................................................4

    A.  Organizational Standing...............................................................................4

    B.  Temporary Restraining Orders and Preliminary Injunctions .......................6

Argument................................................................................................................7

    <u>POINT I:</u>

    The Second Amendment Foundation Lacks
    Standing .........................................................................................................7

    <u>POINT II:</u>

    There Is No "Categorical Ban" on The Possession
    of Firearms on CHA Property .........................................................................8

    <u>POINT III:</u>

    Plaintiffs' Request for A Temporary Restraining
    Order and Preliminary Injunction Must Be Denied ......................................11

    A.  Plaintiffs Failed to Demonstrate a Clear or
        Substantial Likelihood of Success on the Mertis
        of Their Complaint....................................................................................14

        i.        CHA May Restrict Firearms on Its Properties ...............................15

        ii.      The Challenged RLA Provision Is Not an Unreasonable
               Term or Condition ..........................................................................20

        iii.     CHA Is Not Requiring Plaintiffs to Give Up a
               Constitutional Right for Their Housing Subsidy ...........................21

B.  Plaintiffs Have Not Demonstrated a Strong
    Showing Any Irreparable Harm by CHA's
    Firearms Restriction.............................................................................22

C.  The Equities Do Not Favor Plaintiffs and a
    Preliminary Injunction Is Not in the Best
    Interest of the Public.............................................................................24

Conclusion..........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

**Constitutional Provisions**

Second Amendment Foundation ........................................................................ 1, 15, 16

**Federal Statutes**

42 U.S.C. § 13663 ..............................................................................................19
42 U.S.C. § 1437(a)(4) .......................................................................................17
42 U.S.C. § 1437d ..............................................................................................20
FRCP 12(b)(1) .................................................................................................1, 4
FRCP 65 ..............................................................................................................1
U.S. Housing Act of 1973, ch. 896, 50 Stat. 888 .............................................17

**Federal Regulations**

24 C.F.R. § 960.203 ...........................................................................................19
24 C.F.R. § 960.204 ...........................................................................................19
24 C.F.R. § 982.203 ...........................................................................................19

**Supreme Court of the United States Cases**

<u>District of Columbia v. Heller,</u> 554 US 570, 128 S.Ct 2783 (2008) ...............15
<u>Glossip v. Gross,</u> 576 US 863, 135 S.Ct. 2726 (2015)................................7, 12
<u>Koontz v. St. Johns River Water Mgmt. Dist.,</u> 570 US 595, 133 S. Ct. 2586 (2013) .................22
<u>Lindsey v. Normet,</u> 405 US 56, 92 S.Ct. 862 (1972) ....................................21
<u>Los Angeles v. Lyons,</u> 461 US 95, 103 S.Ct. 1660 (1983).............................23
<u>Moore v. City of E. Cleveland, Ohio,</u> 431 US 494, 97 S.Ct 1932 (1977)....................19
<u>N.Y. State Rifle & Pistol Ass'n v. Bruen,</u> 597 US 1, 142 S.Ct. 2111(2022) ................... 15, 16, 18
<u>Quillion v. Walcott,</u> 434 US 246 (1978) ......................................................19
<u>Regan v. Tax'n With Representation of Washington,</u> 461 US 540, 103 S.Ct. 1997 (1983) .........22
<u>Smith v. Org. of Foster Fams. For Equal. & Reform,</u> 431 US 816, 97 S. Ct. 2094 (1977) ..........19
<u>United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,</u> 517 U. 544, 116 S. Ct. 1529 (1996).........................................................................6
<u>United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,</u> 517 US 544, 116 S.Ct. 1529 (1996)..........................................................................7
<u>Warth v. Seldin,</u> 422 US 490, 498, 95 S. Ct. 2197 (1975)...........................5
<u>Winter v. NRDC, Inc.,</u> 555 US 7, 129 S.Ct. 365 (2008) ...........................7, 12

**U.S. Court of Appeals Cases**

Abdul Wali v. Coughlin, 754 F.2d 1015, (2d Cir. 1985) ..............................................13

Able v. United States, 44 F3d 128 (2d Cir. 1995)..........................................................12

Acevedo v. Nassau County, New York, 500 F.2d 1078 (2d Cir. 1974).........................21

Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev., 651 F.d 218 (2d Cir. 2011) ......21

Am. Civil Liberties Union v. Clapper, 785 F.3d 787 (2d Cir. 2015)..........................7, 12

Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F3d 140 (2d Cir. 2011) .....................5

Antonyuk v. Chiumento, Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023
     U.S. App. LEXIS 32492, at *139-40 (2d Cir. Dec. 8, 2023) ...........................passim

Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 [2d Cir. 1983]....................22

Binderup v. Att'y Gen. United States of Am., 836 F3d 336 (3d Cir. 2016)..................................16

Brenntag Int'l Chems., Inc. v. Bank of India, 175 F3d 245 (2d Cir. 1999)..................................23

Carter v. HealthPort Technologies, LLC, 822 F3d 47 (2d Cir. 2016) ...........................................5

Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30 (2d
     Cir. 2010) .....................................................................................................................7

Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30 (2d
     Cir. 2010) ....................................................................................................................12

Conn. Parents Union v. Russell-Tucker, 8 F.4th 167 (2d Cir. 2021)..............................8

Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l., 790 F3d 411, 416-17 (2d Cir. 2015) 5

Hirschfield v. Bd. of Elections, 984 F.2d 35 (2d Cir. 1993)..........................................24

H'Shaka v. O'Gorman, 758 F. App'x 196, (2d Cir. 2019) .............................................13

J.S. ex rel. N.S. v Attica Cent. Schools, 386 F3d 107 (2d Cir 2004)...............................5

Jolly v. Coughlin, 76 F.3d 468 (2d Cir. 1996) ..............................................................23

Kachalsky v. Cty of Westchester, 701 F3d 81, 89 (2d Cir. 2012).................................16

Katz v. Donna Karan Co., LLC, 872 F3d 114 (2d Cir. 2017)..........................................5

Knife Rights, Inc. v. Vance, 802 F.3d 377 (2d Cir. 2015) ...............................................8

LaRouche v. Kezer, 20 F3d 68 (2d Cir. 1994) ..............................................................13

Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, 965 F.2d 1224 (2d Cir. 1992)...12

Mastrio v. Sebelius, 768 F.3d 116 (2d Cir. 2014) .........................................................13

Million Youth March v. Safir, 155 F3d 124 (2d Cir. 1998) ...........................................24

Moore v. Consol. Edison Co. of N.Y., 409 F3d 506 (2d Cir. 2005)...............................12

Nat'l Rifle Ass'n v. Bondi, 61 F4th 1317, (11th Cir.) ....................................................15

New York v. Actavis PLC, 787 F3d 638 (2d Cir. 2015)..................................................13

Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227 (2d Cir. 1998).............................22

Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129 (2d Cir.1998) ................................5

Stoltz v. Brattleboro Hous. Auth. (in Re Stoltz), 315 F3d 80 (2d Cir. 2002) .................9

Time Warner Cable v. Bloomberg L.P., 118 F3d 917 (2d Cir. 1997).............................23

Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969 (2d Cir. 1989)..................23

United States v. Rahimi, 61 F4th 443 (5th Cir. 2023).....................................................15

United States v. Sitladeen, 64 F4th 978 (8th Cir. 2023).................................................15

**U.S. District Court Cases**

AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc., 740 F. Supp. 2d 465 (SDNY 2010) .............6

Andre-Rodney v Hochul, 618 F.Supp.3d 72 (NDNY 2022) ..................................................21, 22

Antonyuk v. Hochul, 635 F. Supp.3d 111 (NDNY 2022) ............................................. 6, 7, 12, 13

Davis v. City of New York, 959 F. Supp. 2d 324 (SDNY 2013) ..........................................20, 21

Dishi & Sons v. Bay Condos LLC, 510 BR 696, 705 (SDNY 2014) .........................................21

Fair Hous. In Huntington Comm. v. Town of Huntington, NY, No. 02 Civ. 2787, 2005 U.S. Dist.
   LEXIS 4552, 2005 WL 675838 (EDNY Mar. 23, 2005).........................................................21

Fairfield Cnty. Med. Ass'n v. United Healthcare of New England, 985 F. Supp. 2d 262 (D. Conn.
   2013) .............................................................................................................................................6

Frey v Bruen, No. 21 CV 05334 (NSR), 2022 US Dist LEXIS 31053 (SDNY Feb. 22, 2022)....23

General Elec. Co. v. Compagnie Euralair, S.A., 945 F. Supp. 527, (SDNY 1996) .......................9

Hamilton v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 9:18-CV-1312 (MAD/CFH),
   2019 U.S. Dist. LEXIS 92793 (NDNY June 4, 2019)..................................................... 12, 23

Joglo Realties, Inc. v. Seggos, 16-CV-1666 [ARR][CLP], 2016 U.S. Dist. LEXIS 113057, 2016
   WL 4491409 (EDNY. Aug. 24, 2016) ....................................................................................23

Levine v. 860 W. Tower, Inc., 96 Civ. 6124 (LAP), 1999 U.S. Dist. LEXIS 4430 (SDNY Mar. 31,
   1999) ......................................................................................................................................8, 9

N. Doe v. East St. Louis Housing Authority, No. 3:18-cv-545 (SD Ill Mar 7, 2018)...............1, 14

Richmond Tenants Org., Inc. v. Richmond Redevelopment & Hous. Auth., 751 F. Supp. 1204
   (E.D. Va. 1990) ........................................................................................................................20

Stevens v City of Oneonta, 6:21-CV-1258 (MAD/ML), 2022 WL 16635301 (NDNY Nov. 1,
   2022)..........................................................................................................................................5

Turley v. Giuliani, 86 F. Supp. 2d 291 (SDNY 2000)................................................................23

Wade Park Land Holdings, LLC v. Kalikow, 589 F. Supp. 3d 335 (SDNY 2022)........................9

**New York Constitution**

N.Y. Const. art. XVIII, § 1...............................................................................................................3

N.Y. Constit., art XVIII, § 1 ...........................................................................................................2

**New York Statutes**

Pub. Hous. Law § 40 ......................................................................................................................3

Penal Law § 265.00.................................................................................................................. 10, 11

Pub. Hous. Law § 447 ....................................................................................................................3

**New York Regulations**

6 NYCRR 180.3.............................................................................................................................10

**N.Y. Court of Appeals Cases**

George Backer Management Corp. v. Acme Quilting Co., 46 NY2d 211, 413 NYS2d 135, 385
    NE2d 1062 (1978) ................................................................................................9

**New York Appellate Division Cases**

Maio v. Kralik, 70 A.D.3d 1, 888 N.Y.S.2d 582 (2d Dept. 2009)...............................11
Oefinger v. N.Y. State Police, 146 A.D.2d 186, 540 N.Y.S.2d 360 (3d Dept. 1989)...................11
Slamow v. Delcol, 174 AD2d 725, 571 NYS2d 335, (2d Dept 1991) ..........................9

**New York Supreme Court Cases**

DCV Holdings, Inc. v. ConAgra, Inc., 889 A.2d 954 (Del. 2005)..................................9
Hovorka v. Ingram, No. 08-31700, 2009 N.Y. Misc. LEXIS 2538 (Sup. Ct. Jefferson County
    June 23, 2009) ....................................................................................................9
People v. Attaway, 2016 NY Slip Op 26249, 53 Misc. 3d 435, 36 N.Y.S.3d 380 (Cayuga Cnty Ct.
    Aug. 3, 2016)......................................................................................................11

**Other Sources**

11 Williston on Contracts § 32:10 (4th ed.).................................................................9
Barry G. Jacobs, HDR Handbook of Housing and Development Law §2:1 (2010)....................17
Black's Law Dictionary 898 (7th ed 1999) ................................................................9
Cass Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741 (1993) ................................18
Ctr. on Budget and Policy Priorities, Policy Basics: Introduction to Public Housing 1,6 (2008) .17
Rasch's Landlord & Tenant, 4th Edition, 1998, Chapter 6...........................................9
Restatement (Second) of Contracts § 203© ...............................................................9

## PRELIMINARY STATEMENT

Defendants, Cortland Housing Authority and Ella M. DiLorio (collectively referred to as "Defendants" and individually as "CHA" and "Ms. DiLorio", respectfully), by and through their attorneys, Liguori & Houston, PLLC, respectfully submit this Memorandum of Law in Opposition to Plaintiffs', Robert Hunter, Elmer Irwin, Doug Merrin and the Second Amendment Foundation (collectively referred to as "Plaintiffs" and individually as "Mr. Hunter", "Mr. Irwin", "Mr. Merrin", and "Second Amendment Foundation") application for a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65 and in Support of Defendants' Motion to Dismiss the Second Amendment Foundation from the action pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiffs[1] assert a violation of Second Amendment Rights based upon a provision in CHA's Residential Lease Agreement ("RLA") that obligates tenants "[n]ot to display, use, or possess or allow members of Tenant's household or guest to display, use or possess any firearms (operable or inoperable) or other weapons as defined by the laws and courts of the State of New York anywhere on the property of CHA." They mischaracterize this provision as a "categorical" or "wholesale ban" on the possession firearms on CHA property. They also attempt to expand this characterization by an apparent incongruity, wherein Plaintiffs attempt to utilize their status as low income to infer CHA's lease restriction also inhibits ownership of any firearm. Plaintiffs frame their arguments by reducing the complex and unique nature of a public housing development to an overly broad and simplistic premise of a governmental entity regulating firearms within an individual's household. Further, they mistakenly assert that this action is the equivalent to *N. Doe v. East St. Louis Housing Authority*, No. 3:18-cv-545 (SD Ill Mar 7, 2018) to justify the extreme remedy of a temporary restraining order and preliminary injunction.

---

[1] As discussed *infra*, Defendants challenge the Second Amendment Foundation's organizational and individual standing to maintain an action against the Defendants.

In doing so, Plaintiffs ignore the distinctive and intricate interests involved regulating activities in public housing developments. Public housing authorities ("PHAs") are created under state laws s to provide affordable housing for low-income households. In New York, they are expressly formed to accomplish the goals set forth in Article XVIII of New York's Constitution. However, PHAs receive funding from the U.S Department of Housing and Urban Development ("HUD") while also being held to the same standard as a private landlord as they are not considered to be a municipal subdivision of the state and distinct from the municipality for which they were formed by the New York Legislature. PHAs, such as CHA, are state-created, federally funded, and locally administered entities. Further, they are obligated under Federal and state law to provide "decent, safe, and sanitary conditions" to their tenants. To that end, Federal law requires PHAs to develop crime prevention plans in conjunction with local law enforcement. In addition to the foregoing governmental interests interwoven in public housing developments, there are also the property interests and liberties inherent in residential apartments and proprietary rights of a landlord. The *sui generis* nature of PHAs and public housing developments, and their relevantly new creation, were the type of circumstance the founding fathers could not have fathomed at the time of the signing of the Constitution. There is no equivalent entity in this nation's history for the courts to look to for guidance in considering the balancing of the many interests at stake when a PHA regulates a person's activities in a public housing development.

In light of the foregoing, Plaintiffs' arguments to justify the extreme remedy of a temporary restraining order and preliminary injunction are lacking. They fail to properly assess the constitutionality of CHA's firearms restriction in light of the complex and unique nature of public housing developments. They fail to fully acknowledge the fact that the public housing development

is not focusing solely on the alleged burden placed on Plaintiffs by CHA's mischaracterized firearms restriction.

Thus, it is respectfully submitted that Plaintiffs failed to meet their burden to warrant the issuance of a temporary restraining order or preliminary injunction requiring this Court to deny their motion as a matter of law.


## STATEMENT OF FACTS

The CHA is a municipal housing authority is defined as a municipal corporation formed by the New York Legislature to accomplish the goals of Article XVIII of the Constitution of the State of New York. N.Y. Pub. Hous. Law § 447 (Consol., Lexis Advance through 2023 released Chapters 1-730). It is authorized to accept aid from, and cooperate with, the federal government. N.Y. Pub. Hous. Law § 40. The CHA maintains several public housing developments within the County and City of Cortland as well as administers HUD's Housing Choice Voucher (formerly known as "Section 8") in the County of Cortland. (Dec. Lorio, ¶¶5-6)

The CHA has three hundred and eighty units (apartments) within multiple public housing developments within the County of Cortland, New York. (Id., ¶¶6-7). All of the public housing developments maintained by CHA are held by a Declaration of Trust with HUD as the named trustee. (Id., ¶8). Presently three hundred and fifty units are occupied with some units being occupied by individuals with a known criminal history. (Id., ¶7). The development that is the subject of this action is located at 37 Galatia Street, Marathon, New York ("37 Galatia") which only has sixteen units designated for elderly tenants. (Id., ¶¶6, 14).

The natural plaintiffs are tenants of the CHA.  Specifically, they all reside in one of CHA's public housing developments located at 37 Galatia. (Id., ¶¶15, 16) Each of the natural plaintiffs

3

were found by the CHA to qualify for a public housing subsidy before entering into a lease with the CHA. (Id.) Mr. Merrin is the longest tenant of the CHA having lived in one development or another prior to 2005 and moved in his most recent residence on July 2, 2018. (Id., ¶18) During the duration of his tenancy, he failed to object or raise any concerns about the subject RLA provision. (Id., ¶¶18-19) Mr. Irwin is the second longest tenant having moved in November 1, 2021, again without any objection to the RLA provision. (Id., ¶18)

Mr. Hunter is the youngest tenant between the three natural plaintiffs having only moved in June 2, 2022. (Id., ¶15). Yet, Mr. Hunter also did not object to the RLA provision when the CHA explained it to him prior to entering into the lease. (Id., ¶16). He had no objection to the lease provision until CHA attempted to evict Mr. Hunter in a non-payment proceeding. (Id., ¶¶16-17). After his rental arrears were paid for, Mr. Hunter began lodging complaints against CHA with different state agencies and began complaining about conditions at 37 Galatia. (Id.) He at one point felt unsafe based on the presence of African American individuals on the property whom, he and other residents, believe were engaged in illegal drug activities. (Id., ¶17) The eviction along with the aforementioned situation appear to be the impetus for Mr. Hunter's desire to have a firearm on CHA property.

## LEGAL STANDARD

### A. Organization Standing

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of a claim when the federal court "lacks subject matter jurisdiction". FRCP 12(b)(1). When reviewing a motion to dismiss under FRCP 12(b)(1) for lack of subject matter jurisdiction, in contrast to a motion to dismiss for failure to state a claim, a court "must accept as true all material factual allegations in a complaint" without

"draw[ing] inferences from the complaint favorable to [the] plaintiff[]". <u>J.S. ex rel. N.S. v Attica Cent. Schools</u>, 386 F3d 107, 110 (2d Cir 2004) (*citing*, <u>Shipping Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 [2d Cir.1998]); *see also*, <u>Stevens v City of Oneonta</u>, 6:21-CV-1258 (MAD/ML), 2022 WL 16635301, at *3 (NDNY Nov. 1, 2022). An essential element of a federal court's subject matter jurisdiction is standing. <u>Warth v. Seldin</u>, 422 US 490, 498, 95 S. Ct. 2197 (1975)("[Standing asks] whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. . . This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise"); *see also*, <u>Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.</u>, 790 F3d 411, 416-17 (2d Cir. 2015)("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing").

Challenges to standing can be either "facial" or "fact based" and the burden on plaintiff varies depending upon the type of challenge being made. <u>Carter v. HealthPort Technologies, LLC</u>, 822 F3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, the plaintiff has no evidentiary burden. <u>Id.</u> (*citing*, <u>Amidax Trading Group v. S.W.I.F.T. SCRL</u>, 671 F3d 140, 145 [2d Cir. 2011]). When considering a "facial" challenge, a court must determine whether a plaintiff asserting standing alleges facts that affirmatively and plausibly suggest the plaintiff has a right to sue in federal court. <u>Id.</u>[2] In this case, the Defendants present a facial challenge to The Second Amendment Foundation's standing to maintain an action against the Defendants seeking equitable and monetary relief from

---

[2] Where a defendant makes a "fact based" challenge, defendant proffers evidence outside of the pleading and plaintiff must then come forward with controverting evidence or rest on its pleadings, if the evidence offered by defendant is immaterial. <u>Katz v. Donna Karan Co., LLC</u>, 872 F3d 114, 119 (2d Cir. 2017).

this Court. Based upon the Defendants' challenge, the burden rests with the Second Amendment Foundation to demonstrate to this Court that it has subject matter jurisdiction over the Second Amendment Foundation's claims for equitable and monetary relief.

Further in order for an organization, such as the Second Amendment Foundation to have associational standing it must demonstrate that "its members would otherwise have standing to sue in their own right." Antonyuk v. Chiumento, Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *139-40 (2d Cir. Dec. 8, 2023)(*quoting and citing*, United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc., 517 U.S. 544, 553, 116 S. Ct. 1529 [1996]).


## B.  Temporary Restraining Orders and Preliminary Injunctions

In this Circuit, the standard for the issuance of a temporary restraining order is the same as the standard for the issuance of a preliminary injunction. Antonyuk v. Hochul, 635 F. Supp.3d 111, 124-25 (NDNY 2022)(*citing*, Fairfield Cnty. Med. Ass'n v. United Healthcare of New England, 985 F. Supp. 2d 262, 270 [D. Conn. 2013], *aff'd as modified sub nom.* Fairfield Cnty. Med. Ass'n v. United Healthcare of New England, Inc., 557 F. App'x 53 [2d Cir. 2014]; AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc., 740 F. Supp. 2d 465, 471 [SDNY 2010]).

When considering an application for a temporary restraining order or preliminary injunction, the movant must establish three elements: "(1) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; and (3) that the public interest would not be

disserved by the relief." <u>Antonyuk</u>, 635 F. Supp.3d at 125 (*citing*, <u>Winter v. NRDC, Inc.</u>, 555 US 7, 20, 129 S. Ct. 365 [2008]; <u>Glossip v. Gross</u>, 576 U.S. 863, 135 S. Ct. 2726, 2736-37 [2015]; <u>Am. Civil Liberties Union v. Clapper</u>, 785 F.3d 787, 825 [2d Cir. 2015]; <u>Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.</u>, 598 F.3d 30, 38 [2d Cir. 2010]).

## **ARGUMENT**

### **POINT I**

### **THE SECOND AMENDMENT FOUNDATION LACKS STANDING**

An organization may be entitled to have a federal court decide the merits of a dispute on its own behalf in the organization's individual capacity or on behalf of its members. <u>Chiumento</u>, Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *139-40. In order for an organization to have the latter organization standing it must show that "its members would otherwise have standing to sue in their own right." <u>Id.</u>, Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *139-40 (*quoting*, <u>United Food & Com. Workers Union Loc. 751</u>, 517 US at 553, 116 S. Ct. at 1529). In this case, the Second Amendment Foundation premises its organizational standing on a conclusory statement that it has "thousands of members in New York". (Dkt. <u>#1</u>, ¶11). This statement on its face does not demonstrate that any of the Second Amendment Foundation's "thousands of members" are tenants or prospective tenants of CHA. There are no facts alleged to permit this Court to find that the Second Amendment Foundation is acting on behalf of its other members, other than the already named individual plaintiffs. The Second Amendment Foundation, as recognized by the Second Circuit in *Chiumento*, premises its organizational standing solely on the individual plaintiffs. (Dkt. <u>#7</u>, ¶5). Hence, the Second Amendment Foundation's organizational standing collapses alongside

that of plaintiffs, Hunter, Irwin, and Merrin. Id., Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *140

Furthermore, the Second Amendment Foundation has not sufficiently plead any facts to establish that it has standing to maintain this action independent of the membership of the other named plaintiffs. Id., Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *140 (citing, Knife Rights, Inc. v. Vance, 802 F.3d 377, 388 [2d Cir. 2015]). Here, the Second Amendment Foundation has not alleged a direct injury to it based upon the alleged firearms ban. (See, Dkt. #1). It failed to allege any fact that CHA's alleged ban increased the difficulty of already ongoing activities. Further, the Second Circuit has recently rejected the idea that the Second Amendment Foundation has standing based upon a theory that allows any organization to have standing by claiming that it is injured by any law touching on an issue within the scope of its mission. Chiumento, Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *141-42(citing, Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 173-74 [2d Cir. 2021]).

Thus, it is respectfully submitted that this Court must dismiss the Second Amendment Foundation from this action based upon its lack of Article III standing.


**POINT II**

**THERE IS NO "CATEGORICAL BAN" ON THE POSSESSION OF
FIREARMS ON CHA PROPERTY**

Under New York law, it is well recognized that a lease is subject to the same rules of construction applicable to any other written agreement. Levine v. 860 W. Tower, Inc., 96 Civ. 6124 (LAP), 1999 U.S. Dist. LEXIS 4430, at *9 (SDNY Mar. 31, 1999)(citing, George Backer Management Corp. v. Acme Quilting Co., 46 NY2d 211, 217, 413 NYS2d 135, 138, 385 NE2d

1062, 1065 [1978][*internal citations omitted*]); *see also*, <u>Stoltz v. Brattleboro Hous. Auth. (in Re Stoltz)</u>, 315 F3d 80, 90 (2d Cir. 2002)(*quoting*, Black's Law Dictionary 898 [7th ed 1999])("A lease is "[a] contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration." ; <u>Hovorka v. Ingram</u>, No. 08-31700, 2009 N.Y. Misc. LEXIS 2538, at *9 (Sup. Ct. Jefferson County June 23, 2009)(*quoting,* Rasch's Landlord & Tenant, 4th Edition, 1998, Chapter 6). If the terms of the written contract are clear and unambiguous, "the intent of the parties must be found within the four corners of the contract," and the court must apply a "practical interpretation to the language employed and the parties' reasonable expectations." <u>Id.</u> (*quoting*, <u>Slamow v. Delcol</u>, 174 AD2d 725, 726, 571 NYS2d 335, 335-36 [2d Dept 1991]). Further, if the contract is ambiguous, "the preferred 'interpretation of an instrument  ... avoids inconsistencies and gives meaning to all its terms." <u>Levine</u>, 96 Civ. 6124 (LAP), 1999 U.S. Dist. LEXIS 4430, at *10 (*quoting*, <u>General Elec. Co. v. Compagnie Euralair, S.A.</u>, 945 F. Supp. 527, 533 [SDNY 1996]). "Stated differently, a contract or lease should be interpreted so as to make every part of it effective". <u>Id.</u> Further, the "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." <u>Wade Park Land Holdings, LLC v. Kalikow</u>, 589 F. Supp. 3d 335, 372 (SDNY 2022)(*quoting*, <u>DCV Holdings, Inc. v. ConAgra, Inc.</u>, 889 A.2d 954, 961 [Del. 2005]; *citing*, 11 Williston on Contracts § 32:10 [4th ed.]["When general and specific clauses conflict, the specific clause governs the meaning of the contract."); Restatement [Second] of Contracts § 203[c]).

The provision of the RLA that Plaintiffs' take exception to states that a tenant is obligated "[n]ot to display, use, or possess or allow members of Tenant's household or guest to display, use or possess any firearms (operable or inoperable) or other weapons as defined by the laws and courts

of the State of New York anywhere on the property of CHA." (Dkt. #1-1, pg. 7). Plaintiffs characterize this restriction as a "wholesale" or "categorical" ban on the possession of any firearm on CHA property.[3] (Dkt. #2-1, pg. 7; Dkt. #2-2, ¶¶9-10).

However, Plaintiff's reading of the lease ignores the qualifier in the restriction "as defined by the laws and courts of the State of New York". This qualifier must also be considered when reading the restriction. The effect of which is to narrow the scope of the restriction from a categorical ban on all weapons, as read by Plaintiffs, to only those guns that the State of New York's defines as a "firearm". Admittedly, the lease provision does not directly reference a specific statute; however, Section 265.00(3) of New York's Penal Law contains the definition of "firearm". A firearm as defined by New York law[4] means:

> (a)any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon; or (f) any other weapon that is not otherwise defined in this section containing any component that provides housing or a structure designed to hold or integrate any fire control component that is designed to or may readily be converted to expel a projectile by action of explosive. For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm. N.Y. Penal Law § 265.00 (Consol., Lexis Advance through 2023 released Chapters 1-730).

---

[3] Defendants are legally the trustees for HUD who by the Declaration of Trust owns the subject property.

[4] Additionally, New York's Department of Environmental Conservation through its regulations defines "firearm" as meaning "any gun or other instrument which by force of gunpowder or other explosive, or which by the force of a spring, air or other gas, expels a missile or projectile capable of killing, wounding or otherwise inflicting physical damage upon fish, wildlife or other animals." 6 NYCRR 180.3 (Lexis Advance through December 29, 2023). However, a regulation in and of itself is not a law but a legal directive written to implement specific statute or laws and said definition cannot be said to be referenced by the Residential Lease Agreement.

Further, the courts of the State of New York of cite to this definition when considering if a weapon is considered a "firearm". <u>Maio v. Kralik</u>, 70 A.D.3d 1, 8, 888 N.Y.S.2d 582, 586-87 (2d Dept. 2009)(*citing*, N.Y. Penal Law § 265.00[3])("rifles and shotguns do not qualify as "firearms"); <u>Oefinger v. N.Y. State Police</u>, 146 A.D.2d 186, 189, 540 N.Y.S.2d 360, 362 (3d Dept. 1989)(" The definition of "firearm" contained in Penal Law § 265.00 (3) does not include 'machine guns'"); <u>People v. Attaway</u>, 2016 NY Slip Op 26249, ¶ 6, 53 Misc. 3d 435, 444, 36 N.Y.S.3d 380, 387 (Cayuga Cnty Ct. Aug. 3, 2016).

In construing the subject lease provision in light of New York's definition of "firearm", Plaintiffs' mischaracterize the lease provision as a "categorical" or "wholesale ban". Although the provision restricts tenants and their household to the possession of "firearms" on CHA property, what is a "firearm" under the lease is not as broad as they assert in their arguments. Under the lease agreement and New York's definition of "firearm", tenants may possess rifles and shotguns on CHA property without incurring a breach of the lease as well as other traditional hunting weapons such as a crossbow.  Plaintiffs' assertion that CHA has a categorical ban on firearms, which is the keystone of their arguments, is incorrect. The CHA restricts tenants from possessing some types of firearms on its properties but does not through the subject lease term ban all firearms.


**POINT III**

**PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION MUST BE DENIED**

Plaintiffs seek a temporary restraining order and preliminary injunction against CHA and Ms. DiLorio directing them to refrain from enforcing the firearms restriction found in CHA's residential lease agreement. Plaintiffs premise their instant application on a characterization of the

CHA's firearms restriction as a "categorical ban" to justify the extreme relief of a temporary restraining order and preliminary injunction.

"[P]reliminary injunctive relief is an extraordinary remedy and should not be routinely granted." Hamilton v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 9:18-CV-1312 (MAD/CFH), 2019 U.S. Dist. LEXIS 92793, at *56 (NDNY June 4, 2019)(*quoting*, Moore v. Consol. Edison Co. of N.Y., 409 F3d 506, 510 [2d Cir. 2005]). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. (*citing*, Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd., 598 F3d 30, 35 [2d Cir. 2010]); *see also*, Antonyuk, 635 F. Supp.3d at 125 (*citing*, Winter, 555 U.S. at 20; Glossip, 576 US at 863, 135 S. Ct. at 2736-37; Am. Civil Liberties Union, 785 F3d at 825; Citigroup Global Markets, Inc., 598 F.3d at 38). This standard also applies to the consideration of a party's application for a temporary restraining order. Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, 965 F.2d 1224, 1238 (2d Cir. 1992).

There are three limited exceptions to the aforementioned general standard for a preliminary injunction. Antonyuk, 635 F.Supp.3d at 126 (*citing*, Citigroup Global Markets, Inc., 598 F.3d at 35, n.4). The first exception occurs when the movants seek to stay a government action taken in the public interest for which the district court should only grant an injunction if movants demonstrate a likelihood of success along with irreparable harm. Id. "This is because 'governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" Id. (*quoting*, Able v. United States, 44 F3d 128, 131 [2d Cir. 1995]). The second exception requiring a heightened standard both "clear or substantial"

likelihood of success and a "strong" showing of irreparable harm when the requested relief will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits. Id. (citing, Citigroup Global Markets, Inc., 598 F.3d at 35, n.4). The third occurs when the movant seeks relief that is "mandatory" in that it would alter the status quo by commanding some positive act by the non-movant as opposed to simply seeking to prohibit the non-movant from taking action to maintain the status quo. Id.[5] An injunction that would change the status quo is called a "mandatory" injunction.  H'Shaka v. O'Gorman, 758 F. App'x 196, 198 (2d Cir. 2019)(citing, Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 [2d Cir. 1985]).

This case falls squarely into all three categories. Plaintiffs seek to stay the enforcement of CHA's firearms restriction. The restriction was taken by the CHA in the interest of public safety in its public housing developments. Furthermore, any change to the lease is subject to a thirty-day notice period to provide the public with the opportunity to be heard on any proposed change. When the CHA adopted the firearm restriction it was subject to the notice period to be heard. The firearms restriction was adopted after a democratic process of providing the public the opportunity to be heard and oppose the action. The relief Plaintiffs seek through the instant application is the same relief that they seek in their Complaint. The granting of the relief sought essentially lifting any firearm restriction on CHA property could not then be undone by a judgment of this Court favorable to Defendants. There would be no way for CHA to then determine which tenants acquired and possessed firearms on its properties. Furthermore, Plaintiffs are not seeking an order to maintain the status quo; rather, they are seeking an order that effectively changes the status quo. No CHA tenant has challenged the firearm restriction until Mr. Hunter. As such, the status quo in

---

[5] In determining the point that serves as the status quo for a matter, "the Second Circuit has defined this point in time as 'the last actual, peaceable uncontested status which preceded the pending controversy.'" Antonyuk, 635 F.Supp3d at 127 (quoting, LaRouche v. Kezer, 20 F3d 68, 74, n.7 [2d Cir. 1994]; citing, Mastrio v. Sebelius, 768 F.3d 116, 120 [2d Cir. 2014]; New York v. Actavis PLC, 787 F3d 638, 650 [2d Cir. 2015]).

this respect is to have the firearms restriction remain in place pending the result of this litigation. The burden was on Plaintiffs to make a strong showing of irreparable harm and a clear or substantial likelihood of success on the merits which they failed to do so as discussed below and requires this Court to deny their application in its entirety.

**A. Plaintiffs Failed to Demonstrate a Clear or Substantial Likelihood of Success on the Merits of Their Complaint.**

Plaintiffs' entire argument with respect to the likelihood of success as against Defendants is premised upon the result of *N. Doe v. East St. Louis Housing Authority*, No. 3:18-cv-545 (SD Ill Mar 7, 2018) and their mischaracterization of the subject lease provision as a "categorical ban" on firearms.

Initially, it must be noted that Plaintiffs reliance on *East St. Louis Housing Authority*) is misplaced. In that matter, there was no determination of fact or law made by the district court regarding the constitutionality of the firearm ban by the East St. Louis Housing Authority. Id. The case is further distinguishable given that the firearm restriction challenged there did not define the term firearms as CHA's restriction does in this case. Additionally, Plaintiffs fail to inform the Court that the Order of Final Judgment and Permanent Injunction was premised upon a mutual motion made by all parties for the district court to enter the final judgment which was stipulated by the parties. Nevertheless, the stipulation which the Second Amendment Foundation did participate in drafting recognized that the East St. Louis Housing Authority did have authority to regulate firearms on its properties. The result of *East St. Louis Hous. Auth*. does not guarantee Plaintiffs victory in this case as it is entirely distinguishable on the facts and the law from the case at bar.

Furthermore, as discussed *infra*, the challenged RLA provision is constitutional and does not represent an unreasonable lease provision or require plaintiffs to trade their constitutional rights for the public benefit of governmental subsidized housing payments.

### i.    CHA May Restrict Firearms on Its Properties

The Second Amendment of the United States Constitution protects "the right of the people to keep and bear arms". U.S. Const. amend II. In *District of Columbia v. Heller, 554 US 570, 128 S.Ct 2783 (2008)*, the United States Supreme Court established that the "central component" of the Second Amendment is the "inherent right of self-defense. Id., 554 US at 628, 128 S.Ct at 2817.

Recently, the Supreme Court in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, *597 US 1, 142 S.Ct. 2111(2022)* articulated a new standard for Second Amendment analysis. Id., 597 US at 17, 142 S.Ct at 2126; Chiumento, Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *34 (*citing*, Bruen, 597 US at 17, 142 S.Ct. at 2127). First, the Court must consider whether "the Second Amendment's plain text covers an individual's conduct". Id., (*quoting*, Bruen, 142 S.Ct. at 2129-30). If the Court determines the conduct being regulated is presumptively protected by the Second Amendment then to justify the regulation, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id., (*quoting*, Bruen, 597 US at 22, 142 S.Ct. at 2130). The Second Circuit applies the *Bruen* test as setting out a two-step analysis with the first step based on text and the second step based on history. Id. (*citing,* United States v. Sitladeen, 64 F4th 978, 985-86 & n.3 [8th Cir. 2023]; Nat'l Rifle Ass'n v. Bondi, 61 F4th 1317, 1321 [11th Cir.]), *vacated pending reh'g en banc*, 72 F4th 1346 [11th Cir. 2023]; United States v. Rahimi, 61 F4th 443, 453 [5th Cir. 2023], *cert. granted*, 143 S. Ct. 2688, 216 L. Ed. 2d 1255 [2023]).

Here, the conduct that is being regulated by CHA's firearms restriction is the possession of certain firearms on its properties. Inherently, this restriction also applies to CHA's tenants' residences. The guarantees of the Second Amendment are at their zenith within the home. Id., Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *35 (*quoting*, Kachalsky v. Cty of Westchester, 701 F3d 81, 89 [2d Cir. 2012]). Hence, the Residential Lease Agreement provision is within the scope of the Second Amendment and presumptively protected conduct of owning a firearm for self-defense in one's hearth and home.

The CHA must then justify the restriction by demonstrating that it is "consistent with the Nation's historical tradition of firearm regulation." Id., Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *37 (*quoting*, Bruen, 142 S.Ct. at 2130). Under this part of the *Bruen* analysis, the court must identify the "societal problem" that the challenged regulation seeks to address and determine whether past generations experienced the same problem. Id. Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *43-44 (*quoting*, Bruen, 142 S.Ct. at 2131). If the regulation addresses a societal problem that has persisted since the 18th century, that regulation would likely be deemed unconstitutional. Id. On the other hand, if the government has had previous regulations in place then the regulation should be seen as constitutional. Id. (*quoting*, Bruen, 142 S.Ct. at 2137). However, "novelty does not mean unconstitutionality." Id., Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *45 (*quoting*, Binderup v. Att'y Gen. United States of Am., 836 F3d 336, 369 [3d Cir. 2016] [en banc]) [Hardiman, *J.*, concurring in part and concurring in the judgments]). Silence in the legislative historical record does not necessarily demonstrate the historical limits of the Second Amendment but rather a lack of political will or demand to regulate firearms in certain areas of our society. Id.

In this case, Plaintiffs are correct to assert that there is a dearth of historical evidence regarding a state regulating firearms in one's private residence. Equally so, there is no historical equivalent to a public housing development in the legislative history prior to 1937. Public housing authorities and public housing developments are a *sui generis* creation of the Twentieth century legislatures.[6]

Public housing authorities are unique because they are simultaneously an agency of the local municipality, state, and federal governments. They are independent entities that contract with both local municipalities, state, and federal governments. While the state may have passed the enabling legislation, the "actual" creator of any public housing authority is the county or municipality in which it is located. In addition, federal control is dominant in certain areas of a public housing authority's operations. In this same vein, public housing developments are also prime for a sui generis classification. Public housing developments are low-income residential facilities, which provide a governmental benefit categorized as a property right, under the management and operation of a federally-subsidized state government landlord. There is no parity between public housing developments and any other type of facility given the affordable housing goals and government ownership of residential property. Even other HUD subsidized housing projects are not appropriate given they are privately-owned. Public housing developments have

---

[6] The Housing Act of 1937 created public housing as part of "the first large-scale low-income housing program established by the federal government." U.S. Housing Act of 1973, ch. 896, 50 Stat. 888 (codified as amended in scattered sections of 42 U.S.C.); Barry G. Jacobs, HDR Handbook of Housing and Development Law §2:1 (2010). The program was a direct result of the Great Depression and President Franklin Delano Roosevelt's New Deal legislation. Jacobs at §1:3. At the federal level, public housing programs are presently under HUD authority. Ctr. on Budget and Policy Priorities, Policy Basics: Introduction to Public Housing 1,6 (2008) [hereinafter Public Housing Policy], available at http://www.cbpp.org/files/policybasics-housing.pdf. HUD administers a diverse range of housing initiatives nationwide, public housing being only one of many different affordable housing and urban development programs. *See generally*, U.S. Dep't of Hous. & Urban Dev., Programs of HUD: Major Mortgage, Grant, Assistance, and Regulatory Programs (2006), *available at* www.huduser.org/resources/hudprgs/ProgOfHUD06.pdf. A combination of HUD programs provide federal funding to regional and local PHAs, making possible the opportunity for low-and very low-income families to live in affordable and decent housing. 42 U.S.C. § 1437(a)(4).

layers of complexity that make them not analogous to other types of properties that courts are often required to review with respect to constitutional claims. Such complexities include: (1) the governmental interest in preserving the facility as affordable housing; (2) the proprietary right of the landlord to control its property; (3) the exercise of the state police power to control crime; (4) gun-related crime problems specific to public housing; (5) the liberties inherent in a residential premises; and (6) the property interests that tenants have in the occupancy. Thus, public housing developments are sui generis for which this nation has no prior historical equivalent to prior to the Twentieth century. PHAs and public housing developments were "unimaginable at the founding" of our Nation that the government would act as landlord and provide low-income housing to its citizens. *See*, Chiumento, Nos. 22-2908 (L), 22-2972 (Con), 22-2933, 22-2987, 22-3237, 2023 U.S. App. LEXIS 32492, at *47 (*citing and quoting*, Bruen, 597 USat 28, 142 S.Ct at 2132)

In cases such as involving "new circumstances", like public housing developments, the Supreme Court directs the Court to utilize a more nuanced approach to its historical analysis. Id. The "historical inquiry that courts must conduct will often involve reasoning by analogy." Id. Under this approach, the Court looks to see if the challenged regulation has a historical analogue that is "relatively similar". Id (*quoting*, Cass Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741, 773 [1993]). The Court is not required to "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment", it must just identify an appropriate metric by which to compare the two laws. Id.

The RLA provision along with regulating CHA's common areas also regulates activity within a tenant's residence.[7] The closest analogous regulations imposed on public housing

---

[7] It has already been found that public housing authorities may regulate firearms possession in common areas of their public housing developments. Doe v. Wilmington Housing Authority, 880 F.Supp2d 513, 535 (D. Del. 2012) ("While the Common Area Provision may not be the least restrictive means of serving WHA's interest in protecting safety of

developments that regulate activities that limit tenants' fundamental right to family. The Supreme Court has held that "the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." Moore v. City of E. Cleveland, Ohio, 431 US 494, 503, 97 S.Ct 1932, 1938 (1977). This fundamental right to family extends to the right of a family to live together as a family. Smith v. Org. of Foster Fams. For Equal. & Reform, 431 US 816, 862, 97 S. Ct. 2094, 2119 (1977)(J. Stewart concur) *cited with appv'l*, Quillion v. Walcott, 434 US 246, 555 (1978).

Here, there is a historic regulatory analogy between the RLA provision and PHAs limiting who may be part of a tenant's household which affects a tenant's fundamental familial rights. The concept of the fundamental right of a family is as deeply rooted in this Nation's history. Any regulation that impacts an individual's right of family inherently concerns the activities that occur within one's home. There is a close analogy that can be made between governmental regulation of family within one's home and a restriction of firearms in the same. With respect to a PHA tenant's fundamental right to family, HUD and PHAs regulate whether certain members of a family may live in a public housing development. Specifically, members of tenant's family that demonstrate a pattern of alcohol abuse, engaged in drug related activities, have used illegal drug use, or are registered sex-offenders are all subject to immediate eviction or denial to public housing developments. 42 U.S.C. § 13663; 24 C.F.R. § 960.204(a)(1)-(4); § 960.204(b); § 960.203(c)(3)(i); § 982.203. These law regulations impact a tenant's fundamental right to family; more particularly,

---

the common areas, and the fit may not be "perfect", the provision does not burden Second Amendment rights . . .any more than reasonably necessary to ensure that the asserted government interest end is met."); *rev'd in part*, 568 F.App'x 128 (3d Cir. 2014)(reversed on state constitutional grounds); People v. Cunningham, 2019 IL App (1st) 160709, ¶ 25, 126 N.E.3d 600, 615 ("The state's aim is to protect vulnerable populations in public housing facilities and it has done so with a modest and easily avoidable burden on its citizens' second amendment rights. We hold the statutory provision at issue in this case survives the heightened intermediate scrutiny that is applicable in this instance and, thus, defendant's facial challenge to the statute fails.")

the right for a family to live together. Similarly, the lease provision limiting certain firearms from its properties, including tenants' residences should also be upheld based upon the historic analogy of the government limiting the equivalent fundamental family rights of individuals in public housing.

### ii.   The Challenged RLA Provision Is Not an Unreasonable Term or Condition

Under Federal law, public housing authority leases are prohibited from having "unreasonable terms and conditions" a term that is largely undefined in statute or regulation. 42 U.S.C. § 1437d(1)(2). In *Richmond Tenants Org., Inc. v. Richmond Redevelopment & Hous. Auth., 751 F. Supp. 1204, 1205–06 (E.D. Va. 1990) aff'd, 947 F2d 942 (4th Cir. 1991)*, the district court interpreted the term to require a public housing authority's lease terms to be rationally related to a legitimate housing purpose. Id. The district court went further stating in applying this test, reasonableness will be defined by "particular problems and concerns confronting the local housing authority." Id., 751 F Supp at 1206. A lease that contains arbitrary and capricious terms, or that is overly broad or under-inclusive should be invalidated by the court. Id. The courts of this Circuit have adopted this test in examining public housing leases.  Davis v. City of New York, 959 F. Supp. 2d 324, 372 (SDNY 2013)(*quoting and citing*, Richmond Tenants Org., Inc., 751 F.Supp at 1205-06).

Here, the challenged provision is found within Plaintiffs' leases with the CHA. As discussed above, the restriction of certain firearms on CHA properties is constitutional. CHA in adopting to the RLA provision sought to provide for the pubic safety by limiting the type of firearms on its properties. The restriction is not a categorical ban as alleged but rather a reasonable solution to the potential problem of gun violence and involuntary gun injuries on CHA's property.

Further, as discussed *supra*, the provision is constitutional and thereby cannot be considered to be arbitrary or capricious in nature.

### iii. CHA Is Not Requiring Plaintiffs to Give Up a Constitutional Right for Housing Subsidy.

Initially, it should be noted that an individual does not have a fundamental right to public housing. *See e.g.*, Lindsey v. Normet, 405 US 56, 74, 92 S.Ct. 862 (1972) (finding no "constitutional guarantee of access to dwellings of a particular quality"); Acevedo v. Nassau County, New York, 500 F.2d 1078, 1080-1081 (2d Cir. 1974) (finding no constitutional or statutory duty to provide low income housing); Fair Hous. In Huntington Comm. v. Town of Huntington, NY, No. 02 Civ. 2787, 2005 U.S. Dist. LEXIS 4552, 2005 WL 675838, at *8 (EDNY Mar. 23, 2005) ("Unfortunately for Plaintiffs, there is no constitutional or statutory duty to provide low income housing, nor is there a constitutional guarantee of access to dwellings of a particular quality.")(*quoting*, Acevedo, 500 F.2d at 1080-81). The governmental benefit or subsidy that an individual receives is not the actual physical housing, which there is not a fundamental right to; rather, the benefit is the subsidy of having the government pay a part of one rent. *See,* Id. Subsequent to the receipt of the subsidy, a PHA must then enter into leases with its tenants which give rise to subsequent property interests. Davis, 379 F.Supp.3d at 253(*citing*, Dishi & Sons v. Bay Condos LLC, 510 BR 696, 705 [SDNY 2014]).

The "unconstitutional condition doctrine" provides that "the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance." Andre-Rodney v Hochul, 618 F.Supp.3d 72, 84 (NDNY 2022)(*quoting*, Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev., 651 F.d 218, 231 [2d Cir. 2011]). A "predicate for any unconstitutional conditions claim is that the government could not have constitutionally

ordered the person asserting the claim to do what it attempted to pressure that person into doing." Id. (*quoting*, Koontz v. St. Johns River Water Mgmt. Dist., 570 US 595, 612, 133 S. Ct. 2586 [2013])

In this case, Plaintiffs inadvertently intwine the property interest of their subsidy with the secondary property interest created by their lease. There is no claim by Plaintiffs that CHA is placing a condition upon their receipt of their subsidizing housing payments. The CHA, in an effort to keep its properties in a safe condition, has chosen simply not to subsidize the right of tenants to possess certain firearms on its properties. Regan v. Tax'n With Representation of Washington, 461 US 540, 541, 103 S.Ct. 1997, 1999 (1983)("A legislature's decision not to subsidize the exercise of a fundamental right does not infringe that right"). Plaintiffs are free to convert their subsidies to a Housing Choice Voucher (formerly known as "Section 8") and seek private housing if they desire to exercise their Second Amendment Rights to their fullest.

Thus, it is respectfully submitted that this Court must find that Plaintiffs did not demonstrate a clear or substantial likelihood of success on the merits.

**B.      Plaintiffs Have Not Demonstrated a Strong Showing Any Irreparable Harm by Defendants Firearms Restriction.**

"Irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1998)(*quoting*, Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42 (2d Cir. 1983)[*further citation omitted*]). "Irreparable harm exists 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" Brenntag Int'l Chems., Inc. v. Bank of India,

175 F.3d 245, 250 (2d Cir. 1999); <u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 975 (2d Cir. 1989) ("The injury must be one requiring a remedy of more than mere money damages.").

"In the Second Circuit . . . [the] presumption of irreparable harm arising from a constitutional deprivation is not automatic." <u>Frey v Bruen</u>, No. 21 CV 05334 (NSR), 2022 US Dist LEXIS 31053, at *25 (SDNY Feb. 22, 2022)(*quoting*, <u>Joglo Realties, Inc. v. Seggos</u>, 16-CV-1666 [ARR][CLP], 2016 U.S. Dist. LEXIS 113057, 2016 WL 4491409, at *16 [EDNY. Aug. 24, 2016]); <u>Hamilton</u>, No. 9:18-CV-1312 (MAD/CFH), 2019 U.S. Dist. LEXIS 92793, at *56 (*citing*, <u>Jolly v. Coughlin</u>, 76 F.3d 468, 482 [2d Cir. 1996]; <u>Los Angeles v. Lyons</u>, 461 US 95, 111-12, 103 S.Ct. 1660 [1983]). Instead, "[b]ecause the violation of a constitutional right is the irreparable harm asserted [], the two prongs of the preliminary injunction threshold merge into one" and "in order to show irreparable injury, plaintiff must show a likelihood of success on the merits." <u>Id.</u>, (*quoting*, <u>Turley v. Giuliani</u>, 86 F. Supp. 2d 291, 295 [SDNY 2000]). As the Second Circuit has held that it is "more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights," the alleged violations of Plaintiffs' Second Amendment rights, by themselves, are not sufficient to show irreparable harm. <u>Id.</u> (*quoting*, <u>Time Warner Cable v. Bloomberg L.P.</u>, 118 F3d 917, 924 [2d Cir. 1997]),

In this case, Plaintiffs have not established a strong showing that they will suffer an irreparable harm. As discussed *infra*, Plaintiffs have not established a clear likelihood of success on the merits of their claim; thus, their arguments concerning their irreparable harm are specious. While Plaintiffs assert a violation of their Second Amendment Rights, they have not demonstrated any adverse factual consequences except for their inability to possess a firearm on CHA property.

However, their assertions are entirely conclusory and do not fully demonstrate their ability to actually purchase and possess a firearm under New York law.

Further, a movant's delay in seeking injunctive relief severely undermines his argument that he is or will suffer irreparable harm. Hirschfield v. Bd. of Elections, 984 F.2d 35, 39 (2d Cir. 1993). All three Plaintiffs have lived on CHA property for an extensive period of time without possessing a firearm. Mr. Merrin has lived CHA's development for five years. In that time, he has consented to the terms of the RLA each year without complaint until the instant action. Similarly, Mr. Irwin has lived in the development and consented to the RLA provision for two years without issue. While Mr. Hunter has only lived in development for one year but still waited ten months before he started to complain of the RLA provision, after a non-payment proceeding was brought against him by CHA.

### C. The Equities Do Not Favor Plaintiffs and a Preliminary Injunction Is Not in the Best Interest of the Public.

"An injunction is an exercise of a court's equitable authority, and the exercise of that authority, in the vindication of any legal protection, . . . must sensitively assess all the equities of the situation, including the public interest." Million Youth March v. Safir, 155 F.3d 124, 125 (2d Cir. 1998).

Plaintiffs are correct that the equities favor compliance with the Constitution and Federal law. However, there is an equally compelling public interest in maintaining the safety of CHA's tenants by restricting firearms on its properties while this matter is litigating on the merits. Plaintiffs ask this Court to completely enjoin and restrict Defendants from enforcing any firearms regulation on its properties. This poses a potential risk public safety risk to other tenants and the public in general as it would allow not only residents to possess any type of firearm on CHA

24

properties but also allow members of the general public to bring weapons onto CHA property. As much as Plaintiffs desire unfettered restrictions on firearms on CHA property, there are more tenants that prefer the restrictions to remain in place until at least the conclusion of litigation.

Therefore, it is respectfully submitted that this Court must deny Plaintiffs' application for a temporary restraining order and preliminary injunction as they failed to establish that they will suffer any irreparable harm by maintaining the current firearm restriction during the pendency of this action, that they are likely to succeed on the merits of claim, and that such extreme relief is justified after a balancing of the equities.

## <u>CONCLUSIONS</u>

In view of the foregoing points, and supporting documents, it is respectfully submitted that the Plaintiff has failed to sufficiently plead a cause of action as against the AHA Defendants, that this Court lacks the jurisdiction to hear claims, and that Plaintiff failed to establish his right to a temporary restraining order and preliminary injunction.   Therefore, the Complaint must be dismissed in its entirety and the application for a temporary restraining order and preliminary injunction be denied as against AHA Defendants.

**DATED:**         January 3, 2024
                   Albany, New York

                                        Respectfully submitted,

                                        By:  ___*s/ John W. Liguori*_____
                                             John W. Liguori, Esq.
                                             NDNY Bar Roll No. 507379
                                             Liguori & Houston PLLC
                                             Attorneys for Defendants
                                             69 State Street, Suite 1400-D
                                             Albany, New York 12207
                                             (518) 407-3880

Cc:  Counsel of Record (*via ECF*)