IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

----------------------------------------------------X

ROBERT HUNTER, ELMER IRWIN, DOUG MERRIN, and THE SECOND AMENDMENT FOUNDATION,

        Plaintiffs,

   -against-

CORTLAND HOUSING AUTHORITY and ELLA M. DILORIO, in her official capacity as Executive Director of CORTLAND HOUSING AUTHORITY,

        Defendants.

----------------------------------------------------X

Case 5:23-cv-01540-GTS-ML

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ....................................................................................... 1

II. REPLY ARGUMENT ........................................................................................................ 2

    A.   The Firearms Ban Violates The Unconstitutional Conditions Doctrine ............................ 2
    B.   Defendants' Meritless *Bruen* Analysis ............................................................................. 4
    C.   The Definition of "Firearms" In The RLA Includes Handguns and Violates *Heller* ......... 6
    D.   Defendants' Meritless Attempt to Shift the Burden to Plaintiffs ....................................... 9
    E.   Other Meritless Arguments Offered by Defendants ........................................................ 10

III. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*327 Realty, LLC v. Nextel of New York, Inc.*,
 150 A.D.3d 581 (1st Dep't 2017) ............................................................................................ 7, 8

*Alliance for Open Soc'y Int'l v. U.S. Agency for Int'l Dev.*,
 651 F.3d 218 (2d Cir. 2011) ..................................................................................................... 2, 3

*District of Columbia v. Heller*,
 554 U.S. 570 (2008) ................................................................................................................. 5, 6

*Dube v. Horowitz*,
 258 A.D. 724 (3d Dep't 1999) .................................................................................................. 7, 8

*McDonald v. City of Chicago*,
 561 U.S. 742 (2010) ..................................................................................................................... 4

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
 597 U.S. 1 (2022) ................................................................................................................ *passim*

*Perry v. Sindermann*,
 408 U.S. 593 (1972) ..................................................................................................................... 2

Statutes

N.Y. PENAL LAW § 400.00 ................................................................................................................ 7

N.Y. PENAL LAW § 265.00 .......................................................................................................... 7,8,9

Regulations

6 NYCRR § 180.3 ............................................................................................................................ 8

I.      **PRELIMINARY STATEMENT**

Plaintiffs brought this action and sought injunctive relief because Defendant Cortland Housing Authority ("CHA") **_categorically bans_** the possession of "any firearms (operable or inoperable) or other weapons as defined by the laws and courts of the State of New York anywhere on the property of CHA," at which CHA's public housing tenants, including the Individual Plaintiffs, reside (the "Firearms Ban" or the "Ban"). The Ban, specified in CHA's uniform Residential Lease Agreement (the "RLA"), and enforced on pain of eviction, lease termination, and loss of subsidy and housing benefits, covers, most notably, all handguns (the term "handguns" hereinafter includes and refers to pistols and revolvers), and also other types of firearms.

Plaintiffs, Robert Hunter ("Hunter"), Elmer Irwin ("Irwin"), Doug Merrin ("Merrin") (together, the "Individual Plaintiffs") and The Second Amendment Foundation ("SAF") submit this Reply Memorandum of Law in Further Support of their Order to Show Cause [ECF 2] (the "Motion") for a Temporary Restraining Order and Preliminary Injunction against Defendants CHA and Ella M. Diiorio, in her official capacity as Executive Director of CHA ("Diiorio"), together with Reply Declarations of the Individual Plaintiffs. In support of the Motion, Plaintiffs previously submitted their Opening Memorandum, and Declarations of undersigned counsel, Adam Kraut, and of the Individual Plaintiffs.

In opposition to the Motion, Defendants submitted a Memorandum of Law (ECF 17-8) and Declaration of Diiorio (ECF 17-1). Defendants' take a "kitchen sink" approach and offer arguments that run the gamut from meritless to outright frivolous, and don't change the trajectory of the Motion: application of the historical test set forth in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 (2022) confirms that the Firearms Ban violates the Second Amendment, and thus the Court should grant the Motion.

1

II.     **REPLY ARGUMENT**

      A.     **The Firearms Ban Violates The Unconstitutional Conditions Doctrine**

The unconstitutional conditions doctrine (the "UCD") dictates that "the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance." *Alliance for Open Soc'y Int'l v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 231 (2d Cir. 2011) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). Defendants argue that the Firearms Ban does not violate the UCD. (ECF 17-8 at 21-22). They are mistaken.

Taking Defendants' facts at face value, the Individual Plaintiffs and other CHA tenants receive two public benefits from Defendants, in the following order: first, CHA partially covers the cost of CHA public housing through a subsidy to the individual tenant; and, second, CHA provides residency in CHA public housing to the tenant. (ECF 17-8 at 21; *see also* ECF 17-1 at ¶ 12). In other words, upon providing the housing subsidy to an individual, CHA must then enter into a lease with that individual (the RLA), giving rise to a subsequent property interest and tenancy in a CHA housing unit. *Id*. The RLA contains the Firearms Ban and requires Plaintiffs to refrain from firearms possession in their homes as one of the conditions of residency at CHA property.

Attempting to navigate around the UCD, Defendants raise three sub-arguments: (1) that "an individual does not have a fundamental right to public housing," (ECF 17-8 at p. 21); (2) that tenants can use their subsidies "to seek private housing if they desire to exercise their Second Amendment rights to the fullest," *Id*. at p. 22; and (3) that the Firearms Ban is not actually a ban, but a "[choice] simply not to subsidize the right of tenants to possess certain firearms on its properties." *Id*. Each of these sub-arguments are illogical and nothing more than red herrings.

*First*, Defendants are correct that there is no constitutional right to public housing and that

Defendants have no obligation to house any specific individual. But this is irrelevant because there is no constitutional right to *any* form of public assistance—*i.e.*, food stamps, Medicare, Medicaid, Social Security benefits, school vouchers—these government-provided benefits and subsidies are all creatures of statute that the government has no obligation to offer. This is precisely why the UCD applies "*even if the government has no obligation to offer the benefit in the first instance.*" *Alliance*, 651 F.3d at 231 (emphasis added). The situation here is identical: CHA's tenants have no fundamental constitutional right to live on CHA property, but this has no bearing whatsoever on the UCD analysis. When a governmental entity such as CHA *does* offer a benefit, it may not violate the UCD even if offering the benefit was discretionary in the first instance. Hence, while Defendants are correct that the Individual Plaintiffs have no fundamental right to public housing, this assertion is a red herring.

  *Second*, Defendants are once again correct that some tenants may have alternative housing options. But once again, under the UCD, this is irrelevant because the existence of alternative benefit options is no defense to an unconstitutional lease provision for the same reasons that the lack of a fundamental right to the benefit in question is also not a defense. Moreover, sub-argument (2) unravels like a ball of yarn when subjected to analogical reasoning. Following Defendants' twisted logic that the existence of alternative housing makes the Firearms Ban acceptable, the police could justify frivolous searches of subway passengers by claiming that the passengers have the option of riding in taxis or using the sidewalk instead of the subway. Or, a public housing authority could impose lease provisions on its tenants prohibiting them from posting on social media in support of a particular political party and prohibiting them from wearing religious clothing, with the justification that tenants could simply move to private housing (or perhaps be homeless) to escape these infringements of their First Amendment rights. Or, that same

3

housing authority could impose a lease provision on its tenants requiring them to submit to daily warrantless searches of their bedrooms, with the same justification that they could move out to escape this infringement of their Fourth Amendment rights.

*Third*, this sub-argument similarly unravels under analogical reasoning. The very same public housing authority could justify the aforementioned hypothetical lease provisions prohibiting tenants from posting on social media in support of a particular political party and prohibiting tenants from wearing religious clothing, with the justification that these are not First Amendment violations, but a "[choice] simply not to subsidize the right of tenants to freely express their political and religious viewpoints." Or, the housing authority could justify the aforementioned hypothetical lease provision requiring daily warrantless searches of tenants' bedrooms, with the justification that this is not a Fourth Amendment violation, but a "[choice] simply not to subsidize the right of tenants to be free from searches and seizures."

Defendants would never defend hypothetical lease provisions infringing on First or Fourth Amendment rights. The only difference here is that they believe that the Second Amendment is somehow lower in the hierarchy of the Bill of Rights. But Defendants are mistaken. *Bruen*, 597 U.S. at 71 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010)) (The right to keep and bear arms is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.").

### B. Defendants' Meritless *Bruen* Analysis

Defendants first awkwardly attempt to evade *Bruen* altogether by tiptoeing around the obvious fact that CHA is a governmental entity and halfheartedly arguing that public housing authorities are exempt from the Second Amendment because they are "*sui generis*," "unique," and "independent," and subject to "layers of complexity that make them not analogous to other types of properties that courts are often required to review with respect to constitutional claims." (ECF

4

17-8 at 2, 17, 18). However, this word salad amounts to nothing, as Defendants then concede that CHA is indeed a governmental entity subject to *Bruen* and that the Firearms Ban falls squarely within the scope of the Second Amendment:

> The guarantees of the Second Amendment are at their zenith within the home . . . . Hence, the Residential Lease Agreement Provision [Firearms Ban] is within the scope of the Second Amendment and presumptively protected conduct of owning a firearm for self-defense in one's hearth and home.

(ECF 17-8 at 16) (internal citations omitted).

Defendants then mangle the remainder of the *Bruen* analysis. "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). Consistent with this demand, "the government must affirmatively prove that its **firearms regulation** is part of the historical tradition that delimits the outer bounds of the right to keep and bear **arms**." *Id*. (emphasis added). This test, by its plain language, clearly requires the government to compare the modern *firearms* regulation in question to an analogous historical *firearms* regulation. The government may not analogize a challenged firearms regulation to a *non-firearms* regulation.

But that is exactly what Defendants do here in a misguided effort to save the Firearms Ban. (ECF 17-8 at 18-20). They argue: "[t]he closest analogous regulations imposed on public housing developments that regulate activities that limit tenants' *fundamental right to family*." *Id*. at 19 (emphasis added). Defendants also refer to "sanctity of the family" and the "right of family," concluding that "[t]here is a close analogy that can be made between governmental regulation of family within one's home and a restriction of firearms in the same." *Id*. Defendants then refer to illegal drug use, alcohol abuse, and sex offenders. *Id*. This argument is completely meritless. While *Bruen* does not demand that Defendants identify a "historical *twin*," *Bruen* certainly demands that

5

Defendants at least offer an apples to apples analogy; in other words, a comparison to a historical *firearms* regulation. *Bruen*, 597 U.S. at 30. The "fundamental right to family" and non-firearm issues relating to family, such as alcohol, drugs, and sexual abuse, have nothing whatsoever to do with the *Bruen* analysis. In fact, Defendants do not identify so much as one purportedly analogous *firearms* regulation. This meritless argument should be disregarded.

      **C.**    **The Definition of "Firearms" In The RLA Includes Handguns and Violates *Heller***

The Firearms Ban, as set forth in "Tenant's Obligations" in Article IX of the RLA, Article IX, section (p), provides the "Tenant shall be obligated: (p) Not to display, use, or possess or allow members of Tenant's household or guest to display, use or possess <u>any firearms (operable or inoperable) or other weapons as defined by the laws and courts of the State of New York</u> anywhere on the property of CHA." (Emphasis added). Relying on the modifier "as defined by the laws and courts of the State of New York," (ECF 17-8 at 10-11), Defendants argue that the Ban applies only to handguns, but not to rifles and shotguns, and that the Ban therefore passes constitutional muster because tenants can still possess long guns. *Id*. This argument is flat wrong and was expressly resolved by the Supreme Court in 2008 with its decision in *Heller* ("It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed."). 554 U.S. at 629.

Indeed, the Second Amendment "takes certain policy choices off the table [including] the absolute prohibition of *handguns* held and used for self-defense in the home." *Heller*, 554 U.S. at 636 (emphasis added). As Defendants should know, "the American people have considered the handgun to be the quintessential self-defense weapon" and "handguns are the most popular weapon chosen by Americans for self-defense in the home" *Id*. at 629. When it comes to the home, handgun bans (let alone bans of any types of firearms) are "off the table." *Id.* at 636.

6

Moreover, Defendants are mistaken in their interpretation of the Firearms Ban language. CHA—the drafter of the RLA generally and the Firearms Ban specifically—chose to use the modifier "as defined by the laws and courts of the State of New York" after the phrase "any firearms (operable or inoperable) or other weapons," but did not specify a precise definition of "firearms," or a specific controlling statutory or regulatory provision of New York law as a definition source. This was a crucial drafting omission because, as set forth below, there are multiple applicable definitions of "firearms." Accordingly, the term "firearms" must be given its broadest interpretation, since, under New York law, ambiguities must be construed against the drafter of the document in question—here, CHA. *327 Realty, LLC v. Nextel of New York, Inc.*, 150 A.D.3d 581 (1st Dep't 2017); *Dube v. Horowitz*, 258 A.D. 724, 725 (3d Dep't 1999).

First, the New York Penal Law contains the narrowest definition of "firearms":

> Firearm means (a) *any pistol or revolver*; or (b) shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon has an overall length of less than twenty-six inches; or (e) an assault weapon.
>
> N.Y. PENAL LAW § 265.00(3) (emphasis added and internal quotation marks omitted).

In New York, possession of items (b) through (e) are illegal. However, as required under *Heller*, possession of "(a) any pistol or revolver" *is* legal with a license. *See* N.Y. PENAL LAW § 400.00. In sum and substance, licenses to possess handguns in the home <u>shall</u> be issued by local law enforcement authorities to all applicants who are 21 years of age or older and not felons, fugitives, drug users, or suffering from serious mental illness, and who complete a training course. *Id*. § 400.00(1). Applicants and license holders must also maintain a fixed "residential address" associated with the handgun license. *Id*. § 400.00(10(a), (b)); (16-a). The Individual Plaintiffs are

all eligible to obtain handgun licenses and desire to do so but for the Firearms Ban, which prevents them from possessing handguns at their "residential address"—the Galatia Apartments, which are CHA housing. (*See* accompanying Reply Declarations of the Individual Plaintiffs). Even *arguendo* if the Penal Law definition of firearms applies to the Firearms Ban, it is nonetheless unconstitutional because handguns *are* included within the meaning of "firearm" under the Penal Law. But CHA, the drafter of the Firearms Ban, did not cite PENAL LAW § 265.00(3) in the Ban when it could have done so easily.

And, the definition of "firearms" *does* vary. The New York Department of Environmental Conservation ("DEC"), for example, promulgates a far more expansive definition of "firearm":

> any gun or other instrument which by force of gunpowder or other explosive, or which by the force of a spring, air or other gas, expels a missile or projectile capable of killing, wounding or otherwise inflicting physical damage upon fish, wildlife or other animals.
>
> 6 NYCRR § 180.3

Under the DEC's definition, the Firearms Ban applies to handguns, rifles, and shotguns, all of which the Individual Plaintiffs desire to possess and would possess but for the Ban. (*See* accompanying Reply Declarations of the Individual Plaintiffs).

Moreover, dictionaries typically define "firearm" expansively. The American Heritage Dictionary, for example, defines "firearm" as "a weapon, especially a pistol or rifle, capable of firing a projectile and using an explosive charge as a propellant." *See* https://ahdictionary.com/word/search.html?q=firearm. Merriam-Webster defines "firearm" as "a weapon from which a shot is discharged by gunpowder." *See* https://www.merriam-webster.com/dictionary/firearm.

"Under principles of contract interpretation . . . . [t]o the extent there may be an ambiguity, it is properly construed against the drafter . . . ." *327 Realty, LLC*, 150 A.D.3d 581 (construing

8

lease provision against drafter); *Dube*, 258 A.D. at 725 ("[A]ny ambiguity in a contract must be construed against the drafter . . . ."). Here, since CHA, as the drafter of the Firearms Ban, does not specifically refer to PENAL LAW § 265.00(3) or any other statutory or regulatory provision in the Ban, handguns *and* other firearms such as shotguns and rifles are covered by the Ban. But, even if the Ban only applies to handguns, the Ban is nonetheless unconstitutional under *Heller*.

### D. Defendants' Meritless Attempt to Shift the Burden to Plaintiffs

Once again, "the government must affirmatively prove that its firearms regulation is part of the [relevant] historical tradition." *Bruen*, 597 U.S. at 19. Notwithstanding the fact that *Bruen* places the burden squarely on Defendants to affirmatively justify its Firearms Ban, Diiorio has submitted a Declaration in which she inappropriately attempts to place the burden on the Individual Plaintiffs. (ECF 17-1).

For example, Diiorio claims that "[p]rior to signing his lease . . . . [Hunter] did not object to the firearms and weapons restriction at that time. Mr. Hunter did not inform CHA that he owned or possessed firearms or other weapons prior to moving into 37 Galatia." (ECF 17-1 at ¶ 15). Diiorio continues: "[s]imilarly, Mr. Hunter never informed CHA that he sought to have a firearm or other weapon in his apartment until last summer." (ECF 17-1 at ¶ 16). Diiorio makes the identical claims about Irwin and Merrin. (ECF 17-1 at ¶¶ 18-19).

Diiorio's allegations are irrelevant. The Individual Plaintiffs had no obligation to object to the Firearms Ban or to inform Defendants that they wanted to possess a firearm when they moved into the Galatia Apartments. When CHA tenants, including the Individual Plaintiffs, accept the benefits of subsidy and residency, they are not constitutionally or otherwise legally required to inform Defendants about *when* or *if* they intended to exercise their fundamental constitutional rights. In fact, this is none of Defendants' business and the Individual Plaintiffs owe Defendants no explanation of special need. *See Bruen*, 597 U.S. at 71 (holding New York's "proper-cause"

9

requirement for handgun carry licenses unconstitutional because no demonstration of "special need" is required under the Second and Fourteenth Amendments).

### E. Other Meritless Arguments Offered by Defendants

Defendants offer several other meritless arguments that warrant only the briefest of treatment and are instead calculated to inflame and mislead the Court. These arguments are also rebutted in the accompanying Reply Declaration of Hunter.

First, Diiorio falsely claims that Hunter is only objecting to the Firearms Ban in retaliation for failed eviction proceedings brought against him by CHA. (Dkt 17-1 at ¶ 16). Second, Diiorio levels thinly-veiled accusations of racism at Hunter, falsely tying his desire to possess firearms to his alleged racism. (*Id*. at ¶ 17). Third, Defendants justify the Ban on "public safety" grounds. (ECF 17-8 at 13, 20).[1] But *Bruen* abrogated two-step intermediate scrutiny, under which non-historical considerations such as public safety could potentially be considered. *Bruen*, 597 U.S. at 19 (The old "two-step approach, is one step too many."). Fourth, Diiorio argues that the Ban has always been in place during her tenure and was not previously the subject of complaints (ECF 17-1 at ¶¶ 10, 13), both of which are no defense, and the latter of which is false, as Hunter can attest.

## III.  CONCLUSION

The Motion should be granted in its entirety, with Plaintiffs awarded the following relief: (i) a temporary restraining order and a preliminary injunction enjoining enforcement of the Firearms Ban; and (ii) Plaintiffs' attorneys' fees and costs associated with the Motion and the commencement of this action.

---

[1] Oddly, Defendants undermine their own argument by conceding the need for self-defense, in light of the fact that some units are occupied by individuals with "*known criminal histories*." (ECF 17-1 at ¶ 7; *see also* ECF 17-8 at 3).

Dated: January 10, 2024
      New York, NY

Respectfully submitted,

**BOCHNER PLLC**

By: /s/ *Edward Andrew Paltzik*
Edward Andrew Paltzik, Esq.
Serge Krimnus, Esq.
1040 Avenue of the Americas, 15th Floor
New York, NY 10018
(516) 526-0341
edward@bochner.law

*Attorneys for Plaintiffs*