**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X

ROBERT HUNTER, ELMER IRWIN,
DOUG MERRIN, and THE SECOND
AMENDMENT FOUNDATION,

          Plaintiffs,

      -against-

CORTLAND HOUSING AUTHORITY
and ELLA M. DIIORIO, personally
and in her official capacity as Executive
Director of CORTLAND HOUSING
AUTHORITY,

          Defendants.

------------------------------------------------------X

Case 5:23-cv-01540-GTS-ML

**FIRST AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiffs, Robert Hunter ("Hunter"), Elmer Irwin ("Irwin"), Doug Merrin ("Merrin") (together, the "Individual Plaintiffs") and The Second Amendment Foundation ("SAF"), by and through their attorneys, Bochner PLLC, bring this action against Defendants Cortland Housing Authority ("CHA") and Ella M. Diiorio, personally and in her official capacity as Executive Director of CHA ("Diiorio"), and allege as follows:

**INTRODUCTION**

1.      CHA, a New York State public housing authority that receives federal funding, ***categorically bans*** the possession of "any firearms (operable or inoperable) or other weapons as defined by the laws and courts of the State of New York anywhere on the property of CHA," where CHA's public housing tenants, including the Individual Plaintiffs, reside (the "Firearms Ban" or the "Ban"). The Ban, specified in CHA's uniform Residential Lease Agreement (the "RLA"), and enforced on pain of eviction, lease termination, and loss of subsidy and housing benefits, covers, most notably, all handguns (the term "handguns" hereinafter includes and refers to pistols and

1

revolvers), and also other types of firearms. This is a flagrant violation of the public housing tenants' fundamental right to keep and bear arms in their homes under the Second Amendment to the United States Constitution, which provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

> U.S. CONST. amend. II.

2.      Incorporated against the states through the Due Process Clause of the Fourteenth Amendment (U.S. CONST. amend. XIV, § 1), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Second Amendment guarantees "an individual right to keep and bear arms," *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). It is "a fundamental constitutional right guaranteed to the people," *id.*, which is and has always been key to "our scheme of ordered liberty." *McDonald*, 561 U.S. at 767-68.

3.      "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 (2022) (citing *Heller*, 554 U.S. 570). Consistent with this demand, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19.

4.      As set forth in greater detail below, because of the Firearms Ban, CHA's tenants, including the Individual Plaintiffs, are completely barred from exercising their fundamental right to keep and bear arms, including handguns, in their "*home*, where the need for defense of self, family, and property is *most acute*." *Heller*, 554 U.S. at 628 (emphases added).

5.      This is not a close case. Rather, CHA has blatantly thumbed its nose at the Supreme Court of the United States, and will continue to do so absent court intervention. A governmental entity simply may not impose a wholesale ban on the possession of handguns and other firearms

in the home, *full stop*. *See Heller*, 554 U.S. at 576, 635-636 (holding that the District of Columbia's "total ban on handguns, as well as its requirement that firearms in the *home* be kept nonfunctional even when necessary for self-defense" violated the Second Amendment) (emphasis added); *Id*. at 627 ("As we have said, the law totally bans handgun possession in the *home*.") (emphasis added).

6.      It is beyond cavil that there is *no* historical tradition of banning firearms possession and ownership in American homes, including handguns.

7.      In fact, as Defendants readily conceded after Plaintiffs commenced this action, "[t]he guarantees of the Second Amendment are at their *zenith* within the home." (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff Second Amendment Foundation's Complaint and in Opposition to Plaintiffs' Application for Injunctive Relief, ECF 17-8 at p. 16). (Emphasis added).

8.      The Firearms Ban is not only unconstitutional as applied to the Individual Plaintiffs; the Ban is unconstitutional on its face. Accordingly, Plaintiffs bring this action to enjoin enforcement of the Ban and to obtain a declaration that the Ban is facially unconstitutional.

9.      Moreover, Defendants have not confined their frightening overreach to trampling on the Second Amendment; they've also violated the First Amendment. As set forth below, when Hunter posted a comment on CHA's official Facebook page (the "CHA Facebook Page" or the "Page") on February 15, 2023 expressing his disagreement with the Firearms Ban, Defendants promptly deleted his message because they disapproved of Hunter's viewpoint and sought to silence him; Defendants then banned him from access to the CHA Facebook Page, again because of their disapproval of his viewpoint and desire to silence him (the "Firearms Censorship" or the "Censorship"). Hunter remains banned from access at the present time. Accordingly, Hunter also brings this action to enjoin the Censorship and to obtain a declaration that the Censorship is

unconstitutional under the First Amendment.

10.     Finally, the Firearms Ban violates the Individual Plaintiffs' right to equal protection of the law secured by the Equal Protection Clause of the Fourteenth Amendment, as the Ban denies them their individual rights of firearms ownership and possession as secured by the Second Amendment, due to their age, financial disadvantage, circumstances of residing in public housing, and disability. Accordingly, the Individual Plaintiffs also bring this action to enjoin this violation of the right to equal protection and to obtain a declaration that this violation of the right to equal protection is unconstitutional under the Equal Protection Clause.

## **PARTIES**

11.     Plaintiff Hunter is a 51-year-old natural person and a citizen of the state of New York, residing as a CHA tenant in Unit #B4 at the CHA senior public housing apartments located at 37 Galatia Street, Marathon, New York (the "Galatia Apartments"). Unit #B4 is Hunter's full-time home and only residence. Hunter duly executed the RLA prior to his assumption of residency at Galatia Apartments. Hunter is a peaceable, law-abiding citizen who is not disqualified in any way from ownership, possession, and use of firearms, including handguns. But for the Firearms Ban, Hunter would own and possess firearms for self-defense and other lawful purposes in his home, including and especially handguns.

12.     Plaintiff Irwin is a 57-year-old natural person and a citizen of the state of New York, residing as a CHA tenant in Unit #B3 at the Galatia Apartments. Unit #B3 is Irwin's full-time home and only residence. Irwin duly executed the RLA prior to his assumption of residency at Galatia Apartments. Irwin is a peaceable, law-abiding citizen who is not disqualified in any way from ownership, possession, and use of firearms, including handguns. But for the Firearms Ban, Irwin would own and possess firearms for self-defense and other lawful purposes in his home,

including and especially handguns.

13.     Plaintiff Merrin is a 71-year-old natural person and a citizen of the state of New York, residing as a CHA tenant in Unit #A2 at the Galatia Apartments. Unit #A2 is Merrin's full-time home and only residence. Merrin duly executed the RLA prior to his assumption of residency at Galatia Apartments. Merrin is a peaceable, law-abiding citizen who is not disqualified in any way from ownership, possession, and use of firearms, including handguns. But for the Firearms Ban, Merrin would own and possess firearms for self-defense and other lawful purposes in his home, including and especially handguns.

14.     Plaintiff SAF is a 501(c)(3) nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutional right to keep and bear arms, to possess firearms and firearms ammunition, and the consequences of gun control. SAF has over 720,000 members and supporters nationwide, including thousands of members in New York, among them all three Individual Plaintiffs. SAF brings this action on behalf of those members, including the Individual Plaintiffs. These members of SAF, including the Individual Plaintiffs, are adversely and directly harmed by Defendants' enforcement of the Firearms Ban.

15.     Defendant CHA is a governmental entity created by the State of New York, funded primarily by the United States Department of Housing and Urban Development ("HUD"), and self-administered. Specifically, CHA is a municipal housing authority existing under the laws of the State of New York, created by N.Y. Pub. Hous. Law § 447, which provides, in pertinent part: "A municipal housing authority, to be known as the Cortland Housing Authority, is hereby created and established for the city of Cortland in the county of Cortland . . . . It shall have all the powers

and duties now or hereafter conferred by this chapter upon municipal housing authorities." As set forth on CHA's website, CHA, being a public (municipal) housing authority (PHA), participates in the federal Public Housing program "designed to house eligible persons in affordable, decent, safe and sanitary apartments that are owned by the [CHA]." As also provided on CHA's website, HUD "contracts with [CHA] to administer" public housing "in accordance with HUD regulations and provides an operating subsidy to [CHA]", which "must create written policies that are consistent with HUD regulations." CHA administers multiple public housing properties in Cortland County. As provided on the "NY Connects" website maintained by the State: "[CHA] has 380 units for Federally-subsidized Public Housing located throughout Cortland County. All of the public housing properties administered by CHA are held by a Declaration of Trust with HUD as the named trustee. CHA housing units for seniors and disabled individuals are located in the City of Cortland, the Villages of Homer, McGraw and Marathon, and the Towns of Cincinnatus and Truxton. Among these housing units are the Galatia Apartments at which the Individual Plaintiffs reside, which consist of sixteen one-bedroom senior apartments available only those individuals who are at least 62 years of age or disabled.

16.     Defendant Diiorio, sued in her official capacity, is the Executive Director of CHA, and in that capacity, directs, implements, and supervises the policies and rules of CHA, including the Firearms Ban and the Firearms Censorship.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

18.     This action, based on violations of Plaintiffs' constitutional rights, is brought under

42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

19.     This Court has personal jurisdiction over the Defendants since they are situated within the Northern District of New York.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because Defendants are residents of the state of New York, where the Northern District of New York is located; or, alternatively, under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

**I.     The Public Benefits Received by CHA Tenants and Their Reservation of All Constitutional Rights Upon Receipt of These Benefits**

21.     Eligibility for most of CHA's housing units, including the Galatia Apartments, is means-based and available only to individuals with an annual income at or below certain federally-mandated thresholds.

22.     The Individual Plaintiffs and other CHA tenants receive two public benefits from Defendants, in the following order: first, CHA partially covers the cost of CHA public housing through a subsidy to the individual tenant; and, second, CHA provides residency in CHA public housing to the tenant.

23.     Thus, upon providing the housing subsidy to an individual, CHA must then enter into a lease with that individual, giving rise to a subsequent property interest and tenancy in a CHA housing unit.

24.     The RLA is the uniform lease that CHA requires the Individual Plaintiffs and all other CHA tenants to execute before they assume residency in a CHA public housing unit. (A true

and accurate copy of the RLA is attached hereto as **Exhibit A**).

25.    When Defendant offers and provides the benefits of subsidy and residency to CHA tenants, including the Individual Plaintiffs, Defendants cannot seek forfeiture or waiver of the tenants' rights under the Constitution in exchange for either of these benefits. Although Defendants have no obligation to offer these benefits to any specific individual in the first instance, once Defendants *do* undertake to offer and provide the benefits of subsidy and residency to a specific individual, Defendants do so knowing that tenants reserve *all* of their rights under the Constitution. Indeed, prior to instituting the Firearms Ban and then again after they received complaints from Plaintiff Hunter about the Ban (as set forth below), Defendants knew or should have known that under the unconstitutional conditions doctrine, they cannot place a condition (such as giving up the right to keep and bear arms) on the receipt of a benefit or subsidy that infringes on their tenants' constitutionally protected rights. This is true even if CHA has no obligation to offer the benefit or subsidy in the first place. *See, e.g., Alliance for Open Soc'y Int'l v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 231 (2d Cir. 2011) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

26.    As a corollary to Defendants' obligation to refrain from violation of the unconstitutional conditions doctrine, when CHA tenants, including the Individual Plaintiffs, accept and receive the benefits of subsidy and residency, they reserve *all* of their rights under the Constitution. CHA tenants do not forfeit or waive any of these rights, including the right to keep and bear arms, the right to freedom of speech, the right to petition for redress of grievances, and the right to equal protection under the law.

## II.    The Firearms Ban

27.    In violation of the Second and Fourteenth Amendments, and contrary to the unconstitutional conditions doctrine, all CHA tenants who receive the benefits of subsidy and

residency, including the Individual Plaintiffs, must abide by the Firearms Ban, on pain of eviction, lease termination, and loss of subsidy and housing benefits.

28.     The Firearms Ban is set forth in "Tenant's Obligations" in Article IX of their RLAs. Article IX, section (p), the Ban, provides that the "**Tenant shall be obligated: (p) Not to <u>display, use, or possess</u> or allow members of Tenant's household or guest to display, use or possess <u>any firearms (operable or inoperable) or other weapons</u> as defined by the laws and courts of the State of New York <u>anywhere</u> on the property of CHA**." (Emphasis added).

29.     Since "the property of CHA" is home for all CHA tenants, including the Individual Plaintiffs, the Ban categorically prevents them from possessing any firearms in their homes. This in turn eviscerates their core Second Amendment rights—the right to own legal firearms of their choice (including and especially handguns), to possess those firearms in the home, and the right to armed self-defense.

### III.     The Demise of Similar Bans

30.     The circumstances of this action are distinctly similar to those of *Guy Montag Doe* v. *San Francisco Housing Authority* ("SFHA"), No. CV-08-03112, 2009 WL 86381 (N.D. Cal.).

31.     In *Guy Montag*, the SFHA, just like CHA, imposed a firearms ban on its public housing tenants through the lease agreement. Specifically, in 2005, "[SFHA] formally amended its Model Lease Agreement to prohibit the possession of firearms and ammunition in the home by residents of public housing in the City and County of San Francisco." 2009 WL 86381.

32.     Pursuant to settlement of the matter, the parties stipulated, *inter alia*, that "Defendant SFHA shall not at any time enforce the provisions of [the Model Lease Agreement] relating to the lawful possession of ammunition" and "Defendant SFHA shall not at any time enforce the provisions of [the Model Lease Agreement] relating to the lawful possession of

firearms and other arms or weapons." 2009 WL 86381.

33.     The circumstances of this action are also distinctly similar to those of *N. Doe* v. *East St. Louis Housing Authority* ("ESLHA"), No. 3:18-cv-545 (S.D. Ill.), an action commenced on March 7, 2018.

34.     In *N. Doe*, the ESLHA, just like SFHA and CHA, imposed a firearms ban on its public housing tenants through the lease agreement. The ban provided, *inter alia*, that tenants were not permitted to "display, use, or possess or allow members of [DOE's] household or guests to display, use, or possess any firearms, (operable or inoperable) . . . anywhere in the unit or elsewhere on the property of the Authority."

35.     On April 3, 2019, the parties in *N. Doe* entered into a "Stipulation to Entry of Final Judgment and Permanent Injunction," whereby the parties stipulated "that the Court shall issue an Order . . . enjoining Defendants . . . from enforcing" the sections of the East St. Louis Housing lease agreement that banned firearms for "residents who are permitted under Illinois law to possess a firearm, to possess functional firearms that are legal in their jurisdiction for self-defense and defense of others in their residences, provided they are otherwise-qualified to do so." That same day, the parties filed an "Agreed Motion for Entry of Final Judgment and Permanent Injunction" requesting that the Court enter final judgment and a permanent injunction in accordance with the Stipulation.

36.     On April 11, 2019, the Court entered an "Order of Final Judgment and Permanent Injunction" permanently enjoining enforcement of the offending lease provisions, and required the defendants to "take the necessary steps to strike or amend the challenged sections of the ESLHA Lease, such that the ESLHA will no longer prohibit Plaintiffs, and other ESLHA residents who are otherwise qualified under Illinois law to possess firearms, to possess functional firearms, that

10

are legal in their jurisdiction, in their residences."

37.     The Second Amendment requires the same result in this action as in *Guy Montag* and *N. Doe*.

**IV.     The Firearms Censorship**

38.     Social media—including Facebook—has become a crucial venue for governmental agencies and officials to disseminate news and information, and an equally crucial venue for the public to express their thoughts and opinions in response to such news and information, to criticize or object to governmental agencies and officials, to criticize or object to governmental laws and policies, and to seek redress of grievances with agencies and officials. As the Supreme Court has observed, social media platforms provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). These platforms are at the leading edge of a technological "revolution" due to their ability to increase civic engagement with agencies and officials through rapid and direct communication opportunities. *Id.* at 105-06. Social media now serves as a more convenient conduit for acts of speech and petition than physical gatherings, such as town hall meetings, because online platforms enable an individual "to become a town crier with a voice that resonates farther than it could from any soapbox." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997).

39.     Facebook is a social media platform with approximately 2,000,000,000 monthly users worldwide, including well over 200,000,000 users in the United States and Canada. The platform allows users to post messages and photos, to respond to or share others' messages or photos, and to interact with other Facebook users in relation to those posts.

40.     Users have the ability to ban, or block, others from access to their page, or to delete posts made by other users on that page. When a user is banned from a page, they lose their ability

to publish to that page, react to posts on that page, or comment on the posts on that page.

41.     Defendants maintain and control the CHA Facebook Page, which is a significant source of news and information for CHA tenants, as well as a popular forum for speech and petition by, to, and about Defendants.

42.     The CHA Facebook Page is a public forum under the First Amendment. The Page is accessible to the public generally and in particular to CHA tenants; it is accessible to all Facebook users.

43.     On February 15, 2023, Hunter, concerned about the Firearms Ban, decided to voice his concerns on the CHA Facebook Page.

44.     On, prior to, and since February 15, 2023, Defendants permitted members of the public, including CHA tenants, to post comments in response to forums or subtopics created by Defendants within the CHA Facebook Page.

45.     Since this was Hunter's first time using the CHA Facebook Page and there was no readily apparent specific forum or subtopic within the Page for tenants to comment on Defendants' policies relating to firearms or otherwise, he understandably decided to voice his concerns by posting a comment in response to the first subtopic that he saw—a February 2, 2023 CHA post commemorating Groundhog Day.

46.     Hunter's comment was brief and civil; he merely desired to voice his viewpoint that the Firearms Ban was unconstitutional.

47.     Hunter's comment, in sum and substance, was that CHA tenants should be allowed to have firearms in their private dwellings as long as they are law-abiding citizens, that the lease provision (the Firearms Ban) is unconstitutional, and that the *N. Doe* case supports his argument.

48.     That same day, Defendants deleted Hunter's comment and banned him from access

to the CHA Facebook Page because he expressed his viewpoint about Defendants' violation of the Constitution. Because Defendants deleted Hunter's comment and took away his access so quickly, he was not able to retain a screenshot of the comment.

49.     Hunter remains banned from access to the CHA Facebook page as of the present time.

50.     Although censored by Defendants, on April 10, 2023, Hunter wrote an email to CHA complaining about the Firearms Ban, writing:

> First up tenants are allowed to have firearms in their private dwelking [sic], as long as the [sic] are law abiding citizens. At the time of writing this and prior to writing this, what your lease states is unconstitutional. If it isn't removed, I will have no other choice but to take legal action against the housing authority. I've spoke too [sic] and am ready to move forward with a lawsuit if the policy is not changed. I also research HUDs position, federal and state laws, I can't find one that allows for a firearm ban, making your firearm covenant unconstitutional and discriminatory against poor people. N DOE V East St Louis Housing authority court decision decided it was an unconstitutional provision in the lease, no different than the lease you made every tenant here sign. The lease you had me and every other tenant sign was from 2008, and not the updated guidelines of 2020, which believe it or not say nothing about firearms. This is a strict violation of the constitution and it has been proven in courts over and over and I am not sure why Cortland housing authority funds [sic] it ok to ignite the constitution, or discriminate based upon a person being poor.

> I will also file a full grievance regarding the issue, I will also be looking at litigation as ignorance of law is not a defense. The ignorance of the housing authority is discrimination, blatant discrimination.

51.     On May 1, 2023, CHA's attorney emailed Hunter's attorney and advised regarding the Firearms Ban: "Unconstitutional lease provision regarding firearms. We will not be changing our stated position or lease provision on this matter."

52.     Also, at an in-person tenant meeting with Diiorio about various issues on June 30, 2023, Hunter again complained that the Firearms Ban was unconstitutional but was told CHA would not change its firearms policies.

53.     Hunter's social media comment, email, and meeting complaint unequivocally

demonstrate that Defendants were on notice that the Firearms Ban was (and still is) unconstitutional long before Plaintiffs commenced this action, yet arrogantly took no steps to remedy this violation of the Constitution and to bring the RLA into compliance with the Supreme Court's commands.

54.     Defendants' reactions to Hunter's social media comment and email are also telling; by deleting his comment, banning him from access to the CHA Facebook Page, and then informing him that that CHA would not be changing its firearms policy, CHA's leadership, from the top down, betrayed their rogue attitude that CHA is above the law and that CHA's leadership is free to run the agency like a sealed-off hermit kingdom without any regard for the Constitution.

## CLAIMS FOR RELIEF

55.     As to all claims for relief set forth below, Plaintiffs repeat, reallege, and incorporate by reference each and every allegation of the foregoing paragraphs as if fully set forth in each claim for relief.

### COUNT ONE
**Violation of the United States Constitution**
**Second & Fourteenth Amendments**
**(42 U.S.C. § 1983)**
**As-Applied to the Individual Plaintiffs and Facial**
**(All Plaintiffs v. All Defendants)**

56.     The Second Amendment to the Constitution provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. CONST. amend. II.

57.     Incorporated against the states through the Due Process Clause of the Fourteenth Amendment, *McDonald*, 561 U.S. 742, the Second Amendment guarantees "an individual right to keep and bear arms," *Heller*, 554 U.S. at 595. It is "a fundamental constitutional right guaranteed

to the people," *id*., which is and has always been key to "our scheme of ordered liberty." *McDonald*, 561 U.S. at 767-68.

58. Here, as a threshold matter, CHA is unquestionably a governmental entity and Diiorio is unquestionably a governmental actor, both subject to the Second Amendment. They concede as much, agreeing that the RLAs executed by the Individual Plaintiffs, and thus, the Firearms Ban itself, are "within the scope of the Second Amendment and presumptively protected conduct of owning a firearm for self-defense in one's hearth and home." (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff Second Amendment Foundation's Complaint and in Opposition to Plaintiffs' Application for Injunctive Relief, ECF 17-8 at 16) (emphasis added).

59. Therefore, since Defendants are subject to the Second Amendment, the only other question is whether the Firearms Ban violates the Second Amendment. Applying the historical and textual test that *Heller* and *Bruen* require, the answer to this question is undoubtedly yes, the Ban blatantly violates the Second Amendment.

60. "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19 (citing *Heller*, 554 U.S. 570). Consistent with this demand, and because "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms," *Heller*, 554 U.S. at 582, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.

61. Here, CHA's tenants, including the Individual Plaintiffs, are completely barred from exercising their fundamental right to keep and bear arms in their "*home*, where the need for defense of self, family, and property is *most acute*." *Heller*, 554 U.S. at 628 (emphasis added).

15

62.     A governmental entity simply may not impose a wholesale ban on the possession of firearms, including handguns, in the home. *Heller*, 554 U.S. at 576 (holding that the District of Columbia's "total ban on handguns, as well as its requirement that firearms in the *home* be kept nonfunctional even when necessary for self-defense" violated the Second Amendment) (emphasis added); *id.* at 627 ("As we have said, the law totally bans handgun possession in the *home*.") (emphasis added).

63.     Indeed, the Second Amendment "takes certain policy choices off the table [including] the absolute prohibition of *handguns* held and used for self-defense in the home." *Heller*, 554 U.S. at 636. (Emphasis added). As Defendants should know, "the American people have considered the handgun to be the quintessential self-defense weapon" and "handguns are the most popular weapon chosen by Americans for self-defense in the home" *Id*. at 629.

64.     New York State can't ban possession of handguns and other firearms in the home and neither can Defendants.

65.     When it comes to the home, banning firearms generally is a policy choice that is "off the table," and banning handguns in particular is also "off the table."

66.     It is beyond cavil that there is *no* historical tradition of banning possession of firearms, including handguns, in American homes. Therefore, CHA cannot make an affirmative showing that the Firearms Ban is part of any historical tradition of firearms regulation.

67.     Moreover, because "the Second Amendment extends, prima facie, *to all instruments that constitute bearable arms*," *Heller*, 554 U.S. at 582, the Firearms Ban is unconstitutional both because it bans the possession of firearms *and* because it bans the possession of other legal non-firearm weapons, such as knives. The Individual Plaintiffs have a fundamental right not only to possess firearms in their homes at the Galatia Apartments, but also to possess

non-firearm weapons for self-defense and other lawful purposes.

68.     The Firearms Ban is a *wholesale* ban on firearms possession *and ownership*, including handguns, since CHA's tenants, including the Individual Plaintiffs, are uniformly individuals of extremely limited economic means and have no other homes or residences at which to maintain or store firearms including handguns. There can be no firearms ownership without firearms possession, and since the Ban precludes possession of handguns and other firearms, it also cuts off the fundamental right to *ownership* of handguns and other firearms.

69.     The Firearms Ban also deprives the Individual Plaintiffs and all other CHA tenants from exercising their fundamental right to armed self-defense in the home, since there can be no armed self-defense in the home without lawfully-possessed handguns or other firearms, or non-firearm weapons.

70.     The Firearms Ban lacks any constitutional, statutory, or regulatory basis. The Ban is nothing more than Defendants' ideological policy preference.

71.     Defendants have adopted and maintained the Firearms Ban acting under color of state law. Therefore, intentionally and acting under color of state law, Defendants have deprived and continue to deprive the Individual Plaintiffs and all other tenants at CHA properties of their fundamental constitutional right to keep and bear arms in their homes, entirely inconsistent with any historic tradition of firearms regulation, and Plaintiffs have consequently been damaged and will be irreparably harmed each day that the Firearms Ban is allowed to stand.

72.     The Firearms Ban inflicts irreparable harm on the Individual Plaintiffs, all other CHA tenants, SAF and its other members affected by the Ban, and all other individuals who would possess and own firearms and non-firearm weapons in their homes at CHA properties, but for the Ban. Plaintiffs have a substantial likelihood of success on the merits of their claims under the

17

Second and Fourteenth Amendments, lack an adequate remedy at law for this infringement on their fundamental right to keep and bear arms, and the harm that Plaintiffs would suffer from denial of an injunction exceeds any legally cognizable harm an injunction may inflict upon Defendants. The public interest favors enjoining enforcement of the Firearms Ban.

73.     As a direct and proximate result of the above violation of Plaintiffs' rights protected under the Second and Fourteenth Amendments, the Individual Plaintiffs, SAF and its other members, and all other similarly situated individuals, have suffered an unlawful deprivation of their fundamental constitutional right to keep and bear arms, and they will continue to suffer such an injury until granted the relief sought herein.

74.     Accordingly, Plaintiffs are entitled to injunctive relief in the form of a temporary restraining order, preliminary injunction, and ultimately a permanent injunction, enjoining Defendants from enforcing the Firearms Ban and requiring Defendants to strike the Firearms Ban from the CHA RLA in order to protect against the irreparable harm of ongoing deprivation of Second and Fourteenth Amendment rights.

75.     Plaintiffs are also entitled to a declaration that the Firearms Ban violates the Second and Fourteenth Amendment rights of the Individual Plaintiffs, SAF and its other members, and all other CHA tenants; and further, that the Firearms Ban is unconstitutional as applied to the Individual Plaintiffs and on its face.

76.     In addition to injunctive and declaratory relief, Plaintiffs are entitled to compensatory (or nominal) and punitive damages for Defendants' violation of their clearly established rights under the Second and Fourteenth Amendments.

77.     As well, Plaintiffs are entitled to their attorneys' fees and costs associated with this action.

**COUNT TWO**
**Violation of the United States Constitution**
**First & Fourteenth Amendments**
**(42 U.S.C. § 1983)**
**Free Expression**
**(Plaintiff Hunter v. All Defendants)**

78.     The First Amendment to the Constitution, incorporated through the Fourteenth Amendment, provides in pertinent part:

> Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances.

> U.S. CONST. amend. I.

79.     Here, when Hunter posted a comment on the CHA Facebook Page expressing his disagreement with the Firearms Ban and criticism of Defendants, Defendants promptly deleted his message because they disapproved of Hunter's viewpoint and sought to silence him—the Firearms Censorship; and, the Censorship continued when Defendants banned him from access to the CHA Facebook Page, again because of their disapproval of his viewpoint and desire to silence him. Hunter remains banned from the CHA Facebook Page at the present time.

80.     The Firearms Censorship violates Hunter's right to freedom of expression under the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on his participation in a public forum.

81.     Defendants caused and maintained the Firearms Censorship acting under color of state law. Therefore, intentionally and acting under color of state law, Defendants have deprived and continue to deprive Hunter of his fundamental constitutional right to freedom of expression, and Hunter has consequently been damaged and will be irreparably harmed each day that the Censorship is allowed to stand.

82.     Accordingly, Hunter is entitled to a permanent injunction requiring Defendants to cease their unconstitutional practice of censoring Hunter's comments on CHA's Facebook page—the Firearms Censorship—and to restore his messages, to restore his full posting privileges, and to refrain from unlawfully censoring CHA tenants' messages on the basis of viewpoint.

83.     Hunter is also entitled to a declaration that Defendants' viewpoint-based censorship of Hunter from CHA's official Facebook page—the Firearms Censorship—is unconstitutional.

84.     In addition to injunctive and declaratory relief, Hunter is entitled to compensatory (or nominal) and punitive damages for Defendants' violation of his clearly established rights under the First and Fourteenth Amendments.

85.     As well, Plaintiffs are entitled to their attorneys' fees and costs associated with this action.

**COUNT THREE**
**Violation of the United States Constitution**
**First & Fourteenth Amendments**
**(42 U.S.C. § 1983)**
**Right to Petition**
**(Plaintiff Hunter v. All Defendants)**

86.     The First Amendment to the Constitution, incorporated through the Fourteenth Amendment, provides in pertinent part:

> Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances.

> U.S. CONST. amend. I.

87.     Here, when Hunter posted a comment on the CHA Facebook Page expressing his disagreement with the Firearms Ban, Defendants promptly deleted his message because they disapproved of Hunter's viewpoint and sought to silence him—the Firearms Censorship; and, the

Censorship continued when Defendants banned him from access to the Page, again because of their disapproval of his viewpoint and desire to silence him. Hunter remains banned from the Page at the present time.

88.     The Firearms Censorship violates Hunter's right to petition for redress of grievances under the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on his participation in a public forum and nullified his ability to petition.

89.     Defendants caused and maintained the Firearms Censorship acting under color of state law. Therefore, intentionally and acting under color of state law, Defendants have deprived and continue to deprive Hunter of his fundamental constitutional right to petition for redress of grievances, and Hunter has consequently been damaged and will be irreparably harmed each day that the Censorship is allowed to stand.

90.     Accordingly, Hunter is entitled to a permanent injunction requiring Defendants to cease their unconstitutional practice of censoring Hunter's comments on CHA's Facebook page— the Firearms Censorship—and to restore his messages, to restore his full posting privileges, and to refrain from unlawfully censoring CHA tenants' messages on the basis of viewpoint.

91.     Hunter is also entitled to a declaration that Defendants' viewpoint-based censorship of Hunter from CHA's official Facebook page—the Firearms Censorship—is unconstitutional.

92.     In addition to injunctive and declaratory relief, Hunter is entitled to compensatory (or nominal) and punitive damages for Defendants' violation of his clearly established rights under the First and Fourteenth Amendments.

93.     As well, Plaintiffs are entitled to their attorneys' fees and costs associated with this action.

**COUNT FOUR**
**Violation of the United States Constitution**
**Fourteenth Amendment**
**(42 U.S.C. § 1983)**
**Equal Protection**
**(Individual Plaintiffs v. All Defendants)**

94.     The Fourteenth Amendment to the Constitution provides in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; not deny to any person within its jurisdiction the *equal protection of the laws*." U.S. CONST. amend. XIV.

95.     "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

96.     Here, Defendants' Firearms Ban, which denies lawful persons their individual rights of firearms ownership and possession as secured by the Second Amendment, due to their age, financial disadvantage, circumstances of residing in public housing, and disability, violates the Individual Plaintiffs' right to equal protection of the law, as secured by the Fourteenth Amendment.

97.     Accordingly, the Individual Plaintiffs are entitled to a permanent injunction enjoining Defendants from enforcing the Firearms Ban and requiring Defendants to strike the Firearms Ban from the CHA RLA in order to protect against the ongoing deprivation of the Individual Plaintiffs' Fourteenth Amendment equal protection rights.

98.     The Individual Plaintiffs are also entitled to a declaration that the Firearms Ban violates the Fourteenth Amendment equal protection rights of the Individual Plaintiffs.

99.     In addition to injunctive and declaratory relief, the Individual Plaintiffs are entitled to compensatory (or nominal) and punitive damages for Defendants' violation of their clearly established rights under the Fourteenth Amendment.

100.    As well, Plaintiffs are entitled to their attorneys' fees and costs associated with this action.

## JURY DEMAND

101.   Plaintiffs hereby demand trial by jury.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

(a)     On Count One, a temporary restraining order, preliminary injunction, and ultimately a permanent injunction, enjoining Defendants from enforcing the Firearms Ban and requiring Defendants to strike the Firearms Ban from the CHA RLA in order to protect against the irreparable harm of ongoing deprivation of Second and Fourteenth Amendment rights; and

(b)     On Count One, a declaration that the Firearms Ban violates the Second and Fourteenth Amendment rights of the Individual Plaintiffs, SAF and its other members, and all other CHA tenants; and further, that the Firearms Ban is unconstitutional as applied to the Individual Plaintiffs and on its face; and

(c)     On Counts Two and Three, a permanent injunction requiring Defendants to cease their unconstitutional practice of censoring Hunter's comments on CHA's Facebook page—the Firearms Censorship—and to restore his messages, to restore his full posting privileges, and to refrain from unlawfully censoring CHA tenants' messages on the basis of viewpoint; and

(d)     On Counts Two and Three, a declaration that Defendants' viewpoint-based

23

censorship of Hunter from CHA's official Facebook page—the Firearms Censorship—is unconstitutional; and

(e)     On Count Four, a permanent injunction enjoining Defendants from enforcing the Firearms Ban and requiring Defendants to strike the Firearms Ban from the CHA RLA in order to protect against the ongoing deprivation of the Individual Plaintiffs' Fourteenth Amendment equal protection rights; and

(f)     On Count Four, a declaration that the Firearms Ban violates the Fourteenth Amendment equal protection rights of the Individual Plaintiffs; and

(g)     On Counts One, Two, Three, and Four, compensatory (or nominal) and punitive damages in amounts to be determined upon trial of this action; and

(h)     On Counts One, Two, Three, and Four, Plaintiffs' attorneys' fees and costs associated with this action pursuant to 42 U.S.C. § 1988; and

(i)     Any other and further relief as the Court deems just and proper.


Dated: January 11, 2024
        New York, NY                          Respectfully submitted,

                                              **BOCHNER PLLC**

                                              By: */s/ Edward Andrew Paltzik*
                                              Edward Andrew Paltzik, Esq.
                                              Serge Krimnus, Esq.
                                              1040 Avenue of the Americas, 15th Floor
                                              New York, NY 10018
                                              (516) 526-0341
                                              edward@bochner.law

                                              *Attorneys for Plaintiffs*

24