# EXHIBIT A

**PART I:        RESIDENTIAL LEASE AGREEMENT: TERMS AND CONDITIONS**

**THIS LEASE AGREEMENT** (called the "Lease") is between the Cortland Housing Authority, (called "CHA") and Tenant named in Part II of this lease (called "Tenant").  [966.4(a)]

**I.        Description of the Parties and Premises: [966.4 (a)]**

   (a)     CHA, using data provided by Tenant about income, family composition, and needs, leases to Tenant, the property (called "premises" or "dwelling unit") described in Part II of this Lease Agreement, subject to the terms and conditions contained in this lease. [966.4 (a)]

   (b)     Premises must be used as the only private residence of the Tenant and the family members named on Part II of the Lease.  The CHA may, by prior written approval, consent to Tenant's use of the unit for legal profit-making activities subject to the CHA's policy on such activities. [966.4 (d) (1&2)]

   (c)     Any additions to the household members named on the lease, including Live-In Aides and foster children, but excluding natural births, adoptions, and court awarded custody require the advance written approval of CHA.  Such approval will be granted only if the new family members pass CHA's screening criteria and a unit of the appropriate size is available.  Permission to add Live-in Aides and foster children shall not be unreasonable refused. [966.4 (a)(2)&(d)(3)(i)]
Tenant agrees to wait for CHA's approval before allowing additional persons to move into the Premises.  Failure on the part of Tenant to comply with this provision is a serious violation of the material terms of the lease, for which CHA may terminate the lease in accordance with Section XVI. [966.4(f) (3)]

   (d)     Tenant shall report deletions (for any reason) from the household members named on the lease to the CHA in writing, within 10 days of the occurrence [966.4( c)(1)&(2) & (f)(3)]

**II.        Lease and Amount of Rent**

   (a)     Unless otherwise modified or terminated in accordance with Section XIV, this Lease shall automatically be renewed for successive terms of twelve months. [966.4(a) (1)]

         The rent amount is stated in Part II of this Lease.  Rent shall remain in effect unless adjusted by the CHA in accordance with Section VII herein. [966.4(c )]

         The amount of the Total Tenant Payment and Tenant Rent shall be determined by the CHA in compliance with HUD regulations and requirements and in accordance with CHA's Admissions and Occupancy Policy. [966.4(c )]

   (b)     Rent is DUE and PAYABLE in advance on the first day of each month and shall be considered delinquent after the fifth calendar day of the month.  Rent may include utilities as described in Section III below, and includes all maintenance services due to normal wear and tear. [966.4 (e)(1)(3)]

         When CHA makes any change in the amount of Total Tenant Payment or Tenant Rent, CHA shall give written notice to Tenant.  The notice shall state the new amount, and the date from which the new amount is applicable.  Rent determinations are subject to the Administrative Grievance Procedure.  The notice shall also state that Tenant may ask for an explanation of how the amount is computed by CHA. If Tenant asks for an explanation, CHA shall respond in a reasonable time [966.4(c )(4)].

**III.        Other Charges**: In addition to rent, Tenant is responsible for the payment of certain other charges specified in this lease.  The type(s) and amount of other charges are specified in Part II of this Lease Agreement.  Other charges can include: [966.4(b)(2)]

   (a)     Maintenance charges – The cost for services or repairs due to intentional or negligent damage to the dwelling unit, common areas or grounds beyond normal wear and tear, caused by Tenant, household members or by guests.  When CHA determines that needed maintenance is not caused by normal wear and tear, Tenant shall be charged for the cost of such service, either in accordance with the Schedule of Maintenance Charges posted by CHA or (for work not listed on the Schedule of Maintenance Charges) based on the actual cost to the CHA for the labor and materials needed to complete the work.  [966.4(b)(2)]

Effective 5/1/08

(b)  Excess Utility Charges – At developments where utilities are provided by CHA, a charge shall be assessed for excess utility consumption due to the operation of major tenant-supplied appliances. This charge does not apply to Tenants who pay their utilities directly to a utility supplier. [966.4(b)(2)]

(c)  Installation charges for tenant-supplied air conditioners.

The Housing Authority shall provide written notice of the amount of any charge in addition to Tenant Rent, and the date when the charge is due.  Charges in addition to Tenant Rent are due no sooner than two weeks after the Resident receives written notice of this charge. [966.4(b)(4)]

**IV.**  **Payment Location**: Rent and other charges can be paid at the Main Office located at 42 Church Street or 51 Port Watson Street, Cortland, New York 13045. Rent payment may only be made by personal check, cashier's check or money order. CHA will only accept cash for maintenance charges.  Tenants who have submitted a check that is returned for insufficient funds may be required to make all future payments by cashier's check or money order.

**V.**  **Security Deposit**

(a)  Tenant Responsibilities: Tenant agrees to pay a Security Deposit in accordance with the following schedule: $350 for 2, 3, 4 and 5 bedroom apartments and $150 for efficiency and one bedroom apartments.  The appropriate dollar amount of the security deposit is noted on Part II of this Residential Lease. [966.4(b)(5)]

(b)  CHA's Responsibilities: CHA will use the Security Deposit at the termination of the Lease:
  (1) To pay the cost of any rent or any other charges owed by Tenant at the termination of this lease.
  (2) To reimburse the cost of repairing any intentional or negligent damages to the dwelling unit caused by Tenant, household members or guests.

The Security Deposit may not be used to pay rent or other charges while Tenant occupies the dwelling unit.  No refund of the Security Deposit will be made until Tenant has vacated, and CHA has inspected the dwelling unit.

The return of a security deposit shall occur within 60 days after Tenant moves out.  CHA agrees to return the Security Deposit, if any, to Tenant when he/she vacates, less any deductions for any costs indicated above, so long as Tenant furnishes CHA with a forwarding address.  If any deductions are made, CHA will furnish Tenant with a written statement of any such costs for damages and/or other charges deducted from the Security Deposit.

**VI.**  **Utilities and Appliances** [966.4(b)(1)]
As part of the tenant rent, the CHA will supply cooking range and refrigerator.

(a)  CHA Supplied Utilities: The CHA will supply utilities such as electricity, natural gas, heating fuel, water, sewer service, trash collection as indicated on the agreement Part II of the Lease Agreement Contract.  CHA will not be liable for the failure to supply utility service for any cause whatsoever beyond its control**.**

Other major electrical appliances, air conditioners, freezers, extra refrigerators, washers, dryers, etc., may be installed and operated only with the written approval of CHA.  A monthly service charge may be payable by Tenant for the electricity used in the operation of such appliances, as shown on the Schedule posted in the Administrative Office. [966.4(b)(2)]

(b)  Tenant-paid Utilities:  If Tenant resides in a development where CHA does not supply electricity, natural gas, heating fuel, water, sewer service or trash collection, an Allowance for Utilities shall be established, appropriate for the size and type of dwelling unit, for utilities Tenant pays directly to the utility supplier.  The Total Tenant Payment less the Allowance for Utilities equals Tenant Rent.  If the Allowance for Utilities exceeds the Total Tenant Payment, CHA will pay a Utility Reimbursement each month. [5.632]

CHA may change the Allowance at any time during the term of the lease, and shall give Tenant 60 days written notice of the revised Allowance along with any resultant changes in Tenant Rent or Utility Reimbursement. [965.473(c)]

If Tenant's actual utility bill exceeds the Allowance for Utilities, Tenant shall be responsible for paying the <u>actual</u> bill to the supplier.  If Tenant's actual utility bill is LESS than the Allowance for Utilities, Tenant shall receive the benefit of such savings.

( c )   Tenant Responsibilities:  Tenant agrees not to waste the utilities provided by CHA and to comply with any applicable law, regulation, or guideline of any governmental entity regulating utilities or fuels.  [966.4(f)(8)]

Tenant also agrees to abide by any local ordinance or CHA restriction prohibiting the use of space heaters in multi-dwelling units.

**VII.   Terms and Conditions**:  The following terms and conditions of occupancy are made a part of the Lease.

(a)   Use and Occupancy of Dwelling: Tenant shall have the right to exclusive use and occupancy of the dwelling unit for Tenant and other household members listed on the lease.  With the prior written consent of CHA, members of the household may engage in legal profit making activities in the dwelling unit. [966.4(d)(1)&(2)]

This provision permits reasonable accommodation of Tenant's guests or visitors for a period not exceeding fourteen (14) calendar days each year.  Permission may be granted, upon written request to the Executive Director, for an extension of this provision. [966.4(d)(1)]

(b)   Ability to comply with Lease terms:  If, during the term of this Lease, Tenant, by reason of physical or mental impairment is no longer able to comply with the material provisions of this lease, and cannot make arrangements for someone to aid him/her in complying with the lease, and CHA cannot make any reasonable accommodation that would enable Tenant to comply with the lease THEN: CHA will assist Tenant, or designated member(s) of the Tenant's family, to find more suitable housing and move Tenant from the dwelling unit.  If there are no family members who can or will take responsibility for moving Tenant, CHA will work with appropriate agencies to secure suitable housing and will terminate the Lease. [8.3]

At the time of admission, all Tenants must identify family member(s) to be contacted if they become unable to comply with lease terms.

(c )   Redetermination of Rent, Dwelling Size, and Eligibility.  The rent amount as fixed in Part II of the Lease Agreement is due each month until changed as described below.

The status of each family is to be re-examined at least once a year.  At the annual recertification Tenant shall certify to compliance with the 8 hour per month community service requirement, if applicable.  [960.209]

Tenant promises to supply CHA, when requested, with accurate information about: family composition, age of family members, income and source of income of all family members, assets, community service activities, and related information necessary to determine eligibility, annual income, adjusted income, and rent. [966.4(c )(2)]

Failure to supply such information when requested is a serious violation of the terms of the lease and CHA may terminate the lease.

All information must be verified.  Tenant agrees to comply with CHA requests for verification by signing releases for third-party sources, presenting documentations for review, or providing other suitable forms of verification. [966.4(c ) (2)]

CHA shall give Tenant reasonable notice of what actions Tenant must take, and of the date by which any such action must be taken for compliance under this section.  This information will be used by CHA to decide whether the amount of the rent shall be changed, and whether the dwelling size is still appropriate for Tenant's needs.

This determination will be made in accordance with the Admissions and Continued Occupancy Policy, which is publicly posted in the Administrative Office.  A copy of the policies can be furnished on request at the expense of the person making the request.

Rent will change during the period between regular re-examinations based on the following policies:

### (a) Interim Reexamination Policy

Participants are to report to the CHA all changes in their family circumstances that may result in an increase to their rent. Required changes must be reported in writing no more that **ten** days after they occur. Failure to report within the ten days may result in a retroactive rent charge.

The CHA will conduct interim reexaminations when families report a change in circumstances.

The following interim changes must be reported and may result in an increase in rent:

*Any changes in income or addition of any income that applies to a participating household. (This can include employment wages-new job, change of jobs, salary increases; Social Security; Social Services (DSS); unemployment; pensions; disability or death benefits and other similar periodic receipts, including a lump sum amount or prospective monthly amounts for the delayed start of a periodic payment.)

*An increase in income due to a person with income who joins the household.

*Decreases in participant's child care expenses.

If any of these reported change result in an increase of $75 dollars or more in monthly adjusted income, the Authority will process an interim change with proper notification to tenant of the new rent amount. Rent increases (except those due to misrepresentation) require 30 days notice.

### (b) Decreases in Income and Rent Adjustments

Residents may report a decrease in income and other changes, such as an increase in allowances or deductions which would reduce the amount of the Total Tenant Payment.

The CHA will process the rent adjustment unless the CHA confirms that the decrease in income will last less than 30 calendar days.

The CHA will not reduce the public housing Tenant Rent for families whose TANF grant is reduced because Tenant committed welfare fraud, failed to comply with a welfare department Economic Self-Sufficiency requirement or non-compliance with a work activities requirement.

However, the CHA will reduce the Tenant Rent if the welfare assistance reduction is a result of:

The expiration of a lifetime time limit on receiving benefits; or

A situation where the family has complied with welfare program requirements but cannot or has not obtained employment, such as:

The family has complied with welfare program requirements, but the overall time limit, such as a cap on the length of time a family can receive benefits, causes the family to lose their welfare benefits.

(a) If it is found that Tenant has misrepresented the facts upon which the rent is based so that the rent Tenant is paying is less than the rent that he/she should have been charged. CHA then may apply an increase in rent retroactive to the first of the month following the month in which the misrepresentation occurred.

(b) Rent formulas or procedures are changed by Federal law or regulation.

(c) Rent Adjustments: Tenant will be notified in writing of any rent adjustment due to the situations described above: All notices will state the effective date of the rent adjustment.

1. In the case of a rent decrease, the adjustment will become effective on the first day of the month following the reported change in circumstances, provided Tenant reported the change in a timely manner, as specified above.
2. In the case of a rent increase, the increase will become effective the first day of the 2nd month following the month in which the change was reported.
3. In the case of a rent increase due to misrepresentation, failure to report a change in family composition, or failure to report an increase in income, CHA shall apply the increase in rent retroactive to the first of the month following the month in which the misrepresentation occurred.

Effective 5/1/08

(d)     Transfers [966.4(c )(3)]

    1.     Tenant agrees that if CHA determines that the size or design of the dwelling unit is no longer appropriate to Tenant's needs, CHA shall send Tenant written notice.  Tenant further agrees to accept a new lease for a different dwelling unit of the appropriate size or design.

    2.     CHA may move a Tenant into another unit if it is determined necessary to rehabilitate or demolish Tenant's unit.

    3.     If a Tenant makes a written request for special unit features in support of a documented disability, CHA shall modify Tenant's existing unit.  If the cost and extent of the modifications needed are tantamount to those required for a fully accessible unit, CHA may transfer Tenant to another unit with the features requested at CHA's expense.

    4.     A tenant without disabilities that is housed in a unit with special features must transfer to a unit without such features should a Tenant with disabilities need the unit.

    5.     In the case of involuntary transfers, Tenant shall be required to move into the dwelling unit made available by CHA.  Tenant shall be given 15 days time in which to move following delivery of a transfer notice.  If Tenant refuses to move, CHA may terminate the Lease. [966.4(c )(3)]

    6.     Involuntary transfers are subject to the Grievance Procedure, and no such transfers may be made until either the time to request a Grievance has expired or the procedure has been completed. [966.4(c )(4)]

    7.     CHA will consider any Tenant requests for transfers in accordance with the transfer priorities established in the Admissions and Occupancy Policies.

**(1)**     All changes in family composition must be reported to the Housing Authority within 10 days of the occurrence.  Failure to report within the 10 days may result in a retroactive rent charge. [966.4( c)(2)]

This Lease will NOT be revised to permit a change of family composition resulting from a request to allow adult children to move back into the unit unless it is determined that the move is essential for the mental or physical health of Tenant AND it does not disqualify the family for size unit it is currently occupying.

**VIII.     CHA Obligations** [966.4(e)] CHA shall be obligated:

(a)     To maintain the dwelling unit and the project in decent, safe and sanitary conditions; [966.4(e)(1)]

(b)     To comply with the requirements of applicable building codes, housing codes, and HUD regulations materially affecting health and safety; [966.4(e)(2)]

(c)     To make necessary repairs in the dwelling unit; [966.4(e)(3)]

(d)     To keep project building, facilities, and common areas, not otherwise assigned to Tenant for maintenance and upkeep, in a clean and safe condition; [966.4(e)(4)]

(e)     To maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating, and other facilities and appliances, including elevators supplied or required to be supplied with CHA; [966.4(e)(5)]

(f)     To provide and maintain appropriate receptacles and facilities (except container for the exclusive use of an individual tenant family) for the deposit of garbage, rubbish and other waste removal from the premise by Tenant as required by this Lease; [966.4(e)(6)]

(g)     To supply running water and reasonable amounts of hot water and reasonable amount of heat at appropriate times of the year according to local custom and usage; EXCEPT where the building that includes the dwelling unit is not required to be equipped for that purpose, or where heat or hot water is generated by an installation within the exclusive control of Tenant and supplied by a direct utility connection; [966.4(e)(7)]

(h)     To notify Tenant of the specific grounds for any proposed adverse action by CHA.  (Such adverse action includes, but is not limited to: a proposed lease termination, transfer of Tenant to another unit, change in amount of rent, or imposition of charges for maintenance and repair, or for excess consumption of utilities.)  When CHA is required to afford Tenant the opportunity for a hearing under the CHA grievance procedure for a grievance concerning a proposed adverse action:

    1.     The Notice of the proposed adverse action shall inform Tenant of the right to request such hearing.  In the case of lease termination, a notice of lease termination that complies with 966.4(l)(3) shall constitute adequate notice of proposed adverse action.

    2.     In the case of a proposed adverse action other than a proposed lease termination, CHA shall not take the proposed action until time to request such a hearing has expired or (if hearing was timely requested) the grievance process has been completed. [966.4(e)(8)]

**IX.**     **Tenant's Obligations**:  Tenant shall be obligated:

(a) Not to assign the Lease, nor sublease the dwelling unit. [966.4(f)(1)]

(b) 1.     Not to give accommodation to boarders or lodgers. [966.4(f)(2)]

2.     Not to give accommodation to long term guests (in excess of 14 days in a calendar year) without the advance written consent of CHA.

(c) To use the dwelling unit solely as a private dwelling for Tenant and Tenant's household as identified in Part II of the Lease, and not to use or permit its use for any other purpose. [966.4(f)(3)] This provision does not exclude the care of foster children or live-in care of a member of Tenant's family, provided the accommodation of such persons conforms to CHA's Occupancy standards, and so long as CHA has granted prior written approval for the foster child(ren), or live-in aide to reside in the unit. [966.4(d)(3)(i)]

(d) To abide by necessary and reasonable regulations promulgated by CHA for the benefit and well-being of the housing project and Tenants.  These regulations shall be posted in a conspicuous manner in the project office and incorporated by reference in this Lease.  Violation of such regulations constitutes a violation of the Lease. [966.4(f)(5)]

(e) To comply with the requirements of applicable state and local building or housing codes, materially affecting health and/or safety of Tenant and household. [966.4(f)(5)]

(f) To keep the dwelling unit and other such areas as may be assigned to Tenant for exclusive use in a clean and safe condition. [966.4(f)(6)]  This includes keeping front and rear entrances and walkways for the exclusive use of Tenant, free from hazards and trash and keeping the yard free of debris and litter.  Exceptions to this requirement may be made for Tenants who have no household members able to perform such tasks because of age or disability. [966.4(g)]

(g) To dispose of all garbage, rubbish, and other waste from the dwelling unit in a sanitary and safe manner only in containers approved or provided by CHA.  [966.4(f)(7)]  To refrain from, and cause members of Tenant's household or guest to refrain from, littering or leaving trash and debris in common areas.

(h) To use only in reasonable manner all electrical, sanitary, heating, ventilating, air-conditioning,   and other facilities and appurtenances including elevators. [966.4(f)(8)]

(i) To refrain from, and to cause household and guests to refrain from destroying, defacing, damaging, or removing any part of dwelling unit or project. [966.4(f)(9)]

(j) To pay reasonable charges (other than for wear and tear) for the repair of damages to the dwelling unit, project buildings, facilities, or common areas caused by Tenant, household members or guests. [966.4(f)(10)]

(k) To act, and cause household members or guests to act in a manner that will:

1.     Not disturb other residents' peaceful enjoyment of their accommodations; and

2.     Be conductive to maintaining all CHA projects in a decent, safe, and sanitary condition.  [966.4(f)(11)]

(l) To assure that Tenant, any member of the household, a guest, or another person under Tenant's control, shall not engage in:

1.     Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of CHA's public housing premises by other residents or employees of CHA, or by persons residing in the immediate vicinity of the premises, or;

2.     Any drug-related criminal activity on or off the premises.  Any criminal activity in violation of the preceding sentence shall be cause for termination of tenancy, and for eviction from the unit.  (For the purposes of this lease, the term drug-related criminal activity means the illegal possession, manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use, of a controlled substance as defined in Section 102 of the Controlled Substances Act.) [966.4(f)(12)]

3.     Any abuse or pattern of abuse of alcohol engaged in by any household member that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents or employees of CHA.

(m) To make no alterations or repairs or redecorations to the interior of the dwelling unit or to the equipment, nor to install additional equipment or major appliances without written consent of CHA.  To make no changes to locks or install new locks on interior or exterior doors without CHA's written approval.  To use no nails, tacks, screws, brackets, or fasteners on any part of the dwelling unit (a reasonable number of picture hangers accepted) without authorization by CHA.

(n) To give prompt prior notice to CHA, in accordance with Section XIII hereof, or Tenant's leaving dwelling unit unoccupied for any period exceeding one calendar week.

(o) To act in a cooperative manner with neighbors and CHA staff.  To refrain from and cause members of Tenant's household or guests to refrain from acting or speaking in an abusive or threatening manner toward neighbors and CHA staff.

Effective 5/1/08

(p) Not to display, use, or possess or allow members of Tenant's household or guest to display, use or possess any firearms (operable or inoperable) or other weapons as defined by the laws and courts of the State of New York anywhere on the property of CHA.

(q) To take reasonable precautions to prevent fires and to refrain from storing or keeping highly volatile or flammable materials upon the premises.

(r) To avoid obstructing sidewalks, areaways, galleries, passages, elevators, or stairs, and to avoid using these for purposes other than going in and out of the dwelling unit.

(s) To refrain from erecting or hanging radio or television antennas or satellite dishes on or from any part of the dwelling unit. Satellite dishes may be installed under the following conditions: 1)Tenants must receive written permission in advance of installation from the CHA; 2) Tenants must pay in full a $100 damage deposit prior to installation. And 3) Satellite Dish installations must be installed in accordance with CHA installation standards.  All satellite dishes that have been installed prior to the adoption date of this lease by the Board of Directors are grandfathered into this lease agreement.

(t) To refrain from placing signs of any type in or about the dwelling except those allowed under applicable zoning ordinances and then only after having received written permission of CHA.

(u) To refrain from, and cause members of Tenant's household to refrain from keeping, maintaining, harboring, or boarding any animal of any nature in the dwelling unit except in accordance with the CHA's pet policy, unless a verified disability warrants the possession of a service animal or companion animal.

(v) To remove from CHA property any vehicles without valid registration and inspection stickers. To refrain from parking any vehicles in any right-of-way or fire lane designated and marked by CHA.  Any inoperable or unlicensed vehicle as described above may be removed from CHA property at Tenant's expense.  Automobile repairs are not permitted on any CHA project site.

(w) To remove any personal property left on CHA property when Tenant leaves, abandons or surrenders the dwelling unit.  Property left for more than 30 days shall be considered abandoned and will be disposed of by CHA.  Costs for storage and disposal shall be assessed against the former tenant.

(x) To use reasonable care to keep his dwelling unit in such condition as to ensure proper health and sanitation standards for Tenant, household members and neighbors.  TENANT SHALL NOTIFY THE AUTHORITY PROMPTLY OF KNOWN NEED FOR REPAIRS TO THE DWELLING UNIT, and of known unsafe or unsanitary conditions in the dwelling unit or in common areas and grounds of the project.  Tenant's failure to report the need for repairs in a timely manner shall be considered to contribute to any damage that occurs.

(y) 1.  Not to commit any fraud in connection with any Federal housing assistance program, and
2.  Not to receive assistance for occupancy of any other unit assisted under any Federal housing assistance program during the term of the lease.

(z) To pay promptly any utility bills for utilities supplied to Tenant by a direct connection to the utility company, and to avoid disconnection of utility service for such utilities.

(aa) For each adult in the Tenant household to perform at least 8 hours per month of qualifying community service (as specified by the CHA) unless the requirement is waived due to age, disability, or the fact that an adult is excused from this requirement because he/she is working, attending an educational institution, or participating in some other qualified training program.

**X.    Defects Hazardous to Life, Health or Safety**:  In the event that the dwelling unit is damaged to the extent that conditions are created that are hazardous to the life, health, or safety of the occupants: [966.4(h)]

CHA Responsibilities:

(a)    CHA shall be responsible for repair of the unit within a reasonable period of time after receiving notice from Tenant, provided, if the damage was caused by Tenant, household members, or guests, the reasonable cost of the repairs shall be charged to Tenant. [966.4(h)(2)]

(b)    CHA shall offer Tenant a replacement dwelling unit, if applicable, if necessary repairs cannot be made within a reasonable time.  CHA is not required to offer Tenant a replacement unit if Tenant, household members, or guests caused the hazardous condition. [966.4(h)(3)]

(c)    Tenant shall accept any replacement unit offered by CHA.

(d)    In the event CHA, as described above cannot make repairs, and alternative accommodations are unavailable, then rent shall abate in proportion to the seriousness of the damage and loss in value as a dwelling.  No abatement of rent shall occur if Tenant rejects alternative accommodations or if Tenant, household members, or guests caused the damage. [966.4(h)(4)]

(e)     If CHA determines that the dwelling unit is untenantable because of imminent danger to the life, health, and safety of Tenant, and Tenant refuses alternative accommodations, this Lease shall be terminated, and any rent paid will be refunded to Tenant.

Tenant Responsibilities:

(a)     Tenant shall immediately notify the Housing Authority of the damage and intent to Abate  rent, when the damage is or becomes sufficiently severe that Tenant believes he/she is justified in abating rent. [966.4(h)(1)]

(b)     Tenant agrees to continue to pay full rent, less the abated portion agreed upon by CHA, during the time in which the defect remains uncorrected.

## XI.     Move-in and Move-out Inspections

(a)     Move-in Inspection:   CHA and Tenant or representative shall inspect the dwelling unit prior to occupancy by Tenant.  CHA will give Tenant a written statement of the condition of the dwelling unit, both inside and outside, and note any equipment provided with the unit.  The statement shall be signed by CHA and Tenant and a copy of the statement retained in Tenant's folder. [966.4(i)]  CHA will correct any deficiencies noted on the inspection report, at no charge to Tenant.

(b)     Move-out Inspection – CHA will inspect the unit at the time Tenant vacates and give Tenant a written statement of the charges, if any, for which Tenant is responsible. Tenant and/or representative may join in such inspection, unless Tenant vacates without notice to CHA. [966.4(i)]

## XII.     Entry of Premises During Tenancy

(a)     Tenant Responsibilities:

1.     Tenant agrees that the duly authorized agent, employee, or contractor of CHA will be permitted to enter Tenant's dwelling during reasonable hours (8:00 a.m. to 4:30 p.m.) for the purpose of performing routine maintenance, making improvements or repairs, inspecting the unit, or showing the unit for releasing. [966.4(j)(1)]

2.     When Tenant calls to request maintenance on the unit, CHA shall attempt to provide such maintenance at a time convenient to Tenant.  If Tenant is absent from the dwelling unit when CHA comes to perform maintenance, Tenant's request for maintenance shall constitute permission to enter.

(b)     CHA Responsibilities:

1.     CHA shall give Tenant at least 24 hours written notice that CHA intends to enter the unit.  CHA may enter only at reasonable times. [966.4(j)(1)]

2.     CHA may enter Tenant's dwelling unit at any time without advance notification when there is reasonable cause to believe that an emergency exists. [966.4(j)(2)]

3.     If Tenant and all adult members of the household are absent from the dwelling unit at the time of entry, CHA shall leave in the dwelling unit a written statement specifying the date, time and purpose of entry prior to leaving the dwelling unit. [966.4(j)(3)]

## XIII.     Notice Procedures

(a)     Tenant Responsibility – Any notice to CHA must be in writing, delivered to the Occupancy Office or to CHA's central office, or sent by prepaid first-class mail, properly addressed. [966.4(k)(1)(ii)]

(b)     CHA Responsibility – Notice to Tenant must be in writing, delivered to Tenant or to any adult member of the household residing in the dwelling unit, or sent by first-class mail addressed to Tenant. [966.4(k)(1)(i)]

(c)     Unopened, cancelled, first class mail returned by the Post Office shall be sufficient evidence that notice was given.

(d)     If Tenant is visually impaired, all notices must be in an accessible format. [966.4(k)(2)]

## XIV.     Termination of the Lease: In terminating the Lease, the following procedures shall be followed by CHA and Tenant:

(a)     This Lease may be terminated only for serious or repeated violations of material terms of the Lease, such as failure to make payments due under the lease or to fulfill Tenant obligations set forth in Section IX above, or for other good cause. [966.4(l)(2)]

Effective 5/1/08

Such serious or repeated violation of terms shall include but not be limited to:

1. The failure to pay rent or other payments when due; [966.4(l)(2)]
2. Repeated late payment, which shall be defined as failure to pay the amount of rent or other charges due by the fifth of the month.  Four such late payments within a 12 month period shall constitute a repeated late payment; [966.4(l)(2)]
3. Failure to pay utility bills when Tenant is responsible for paying such bills directly to the supplier of utilities; [966.4(l)(2)]
4. Misrepresentation of family income, assets, or composition; [966.4(c)(2)]
5. Failure to supply, in a timely fashion, any certification, release, information, or documentation on Family income or composition needed to process annual reexaminations or interim redeterminations. [966.4(c)(2)]
6. Serious or repeated damage to the dwelling unit, creation of physical hazards in the unit, common areas, grounds, or parking areas of any project site; [966.4(l)(2)]
7. Criminal activity by Tenant, household member, guest, or other person under Tenant's control, including criminal activity that threatens the health, safety or right to peaceful enjoyment of CHA's public housing premises by other residents, CHA staff or others residing in the immediate vicinity of  the premises or any drug-related criminal activity on or off the premises. [966.4(l)(2)]
8. Offensive weapons or illegal drug seized in a CHA unit by a law enforcement officer; [966.4(l)(2)]
9. Any fire on CHA premises caused by carelessness or unattended cooking. [966.4(l)(2)]
10. Failure of a family member to comply with community service requirement provision  of part 960 subpart F as grounds only for non-renewal of the lease and termination of tenancy at the end of the twelve month lease term [966.4(l)(2)]
11. Failure to accept the CHA's offer of a new lease revision to a new lease [966.4(l)(2)]

(b) CHA shall give written notice of the proposed termination of the Lease of:

1. 14 days in the case of failure to pay rent;
2. A reasonable time, but not to exceed thirty days, considering the seriousness of the situation (but not to exceed 30 days) when the health or safety of other tenants or CHA staff is threatened;
3. 30 days in any other case [966.4(1)(3)(i)(A), (B)&(C)]

(c ) The notice of termination:

1. The notice of termination to Tenant shall state specific reasons for the termination, shall inform Tenant of his/her right to make such reply as he/she may wish, and Tenant's right to examine CHA documents directly relevant to the termination or eviction. [966.4(l)(3)(ii)]
2. When CHA is required to offer Tenant the opportunity for a grievance hearing, the notice shall also inform Tenant of the right to request such a hearing in accordance with CHA's grievance procedures. [966.4(l)(3)(ii)]
3. Any notice to vacate (or quit) that is required by State or local law may be combined with, or run concurrently with the notice of lease termination under this section. [966.4(l)(3)(iii)]  The Notice to Vacate must be in writing, and specify that if Tenant fails to quit the premises within the applicable statutory period, appropriate action will be brought against Tenant, and Tenant may be required to pay the costs of court and attorney's fees.
4. When CHA is required to offer Tenant the opportunity for a grievance hearing concerning the lease termination under CHA's grievance procedure, the tenancy shall not terminate (even if any Notice to Vacate under State or local laws has expired) until the period to request a hearing has expired, or (if a hearing is requested) the grievance process has been completed. [966.4(l)(3)(iv)]
5. When CHA is not required to offer Tenant the opportunity for a hearing under the grievance procedure and CHA has decided to exclude such grievance for CHA grievance procedure, the notice of lease termination shall (a) state that Tenant is not entitled to a grievance hearing on the termination; (b) specify the judicial eviction procedure to be used by CHA for eviction and state that HUD has determined that this eviction procedure provides the opportunity for a hearing in a court that contains the basic elements of due process as defined in HUD regulations; and (c) state whether the eviction is for a criminal activity that threatens health or safety of residents or staff or for drug-related criminal activity. [966.4(l)(3)(v)]
6. CHA may evict Tenant from the unit only by bringing a court action. [966.4(l)(4)]

| (d) | Tenant may terminate this Lease at any time by giving thirty days written notice as described in Section XIII, above. |
|---|---|
| (e) | In deciding to evict for criminal activity, CHA shall have discretion to consider (or not to consider) all of the circumstances of the case, including the seriousness of the offense, the extent of participation by or awareness of family members, and the effects that the eviction would have both on family members not involved in the proscribed activity and on the family's neighbors. |
| (f) | When a CHA evicts a Tenant from a dwelling unit for criminal activity CHA shall notify the local post office serving that dwelling unit that such individual or family is no longer residing in the unit so the post office will stop mail delivery for such persons and they will have no reason to return to the unit. [966.4(l)(5)(ii)] |

**XV.**     **Waiver**: No delay or failure by CHA in exercising any right under this lease agreement, and no partial or single exercise of any such right shall constitute a waiver (post or prospective) of that or any other right, unless otherwise expressly provided herein.

**XVI.**     **Housekeeping Standards**: In an effort to improve the livability and conditions of the apartments owned and managed by CHA, uniform standards for resident housekeeping have been developed for all tenant families.

**(a) <u>CHA Responsibility:</u>** The standards that follow will be applied fairly and uniformly to all Tenants. CHA will inspect each unit at least annually, to determine compliance with the standards. Upon completion of an inspection CHA will notify Tenant in writing if he/she fails to comply with the standards. CHA will advise Tenant of the specific correction(s) required establishing compliance, and indicating that training is available. Within a reasonable period of time, CHA will schedule a second inspection. Failure of a second inspection will constitute a violation of the lease terms.

Training will be available at no cost to any Tenant requesting or needing assistance in complying with the Housekeeping Standards.

**(b) <u>Tenant responsibility:</u>** Tenant is required to abide by the standards set forth below. Failure to abide by the Housekeeping Standards that result in the creation or maintenance of a threat to health or safety is a violation of the lease terms and can result in eviction.

**(c) <u>Housekeeping Standards: Inside the Apartment</u>**

General

| (1) | Walls: should be clean, free of dirt, grease, holes, cobwebs, and fingerprints. |
|---|---|
| (2) | Floors: should be clean, clear, dry and free of hazards. |
| (3) | Ceilings: should be clean and free of cobwebs. |
| (4) | Windows: should be clean and not nailed shut. Shades, blinds and screens should be intact. |
| (5) | Woodwork: should be clean, free of dust, gouges, or scratches. |
| (6) | Doors: should be clean, free of grease and fingerprints. Doorstops should be present. Locks should work. |
| (7) | Heating units: should be dusted and access uncluttered. |
| (8) | Trash: shall be disposed of properly and not left in the unit. |
| (9) | Entire unit should be free of rodent or insect infestation. |
| (10) | Hallways, stairwells and landings should be free of obstruction. |
| (11) | Windows and doorways should not be blocked for egress from the apartment |

Kitchen –

| (1) | Stove: should be clean and free of food and grease. |
|---|---|
| (2) | Refrigerator: should be clean. Freezer door should close properly and freezer have no more than one inch of ice. |
| (3) | Cabinets: should be clean and neat. Cabinet surfaces and countertop should be free of grease and spilled food. Cabinets should not be overloaded. Storage under the sink should be limited to small or lightweight items to permit access for repairs. Heavy pots and pans should not be stored under the sink. |
| (4) | Exhaust Fan: should be free of grease and dust. |
| (5) | Sink: should be clean, free of grease and garbage. Dirty dishes should be washed and put away in a timely manner. |
| (6) | Food storage areas: should be neat and clean without spilled food. |

Effective 5/1/08

(7)      Trash/garbage: should be stored in a covered container until removed to the disposal area.
(8)      Floors: should be clean, and dry.

Bathroom –
(1)      Toilet and tank: should be clean and odor free.
(2)      Tub and shower: should be clean and free of excessive mildew and mold.  Where applicable, shower curtains should be in place, and of adequate length.
(3)      Lavatory: should be clean.
(4)      Exhaust fans: should be free of dust.
(5)      Floor should be clean and dry.

Storage Areas –
(1)      Linen closet: should be neat and clean.
(2)      Other closets: should be neat and clean.  No highly volatile or flammable materials should be stored in the unit.
(3)      Other storage areas: should be clean, neat and free of hazards.

Basements (if applicable)
(1)      Washer/Dryer hookups must be maintained to the CHA's standards
(2)      Remove lint from dryers after use.
(3)      Must be clean, neat, organized, free of trash and have no indication of use as living space

(d) <u>Housekeeping Standards: Outside the Apartment</u>

The following standards apply to family and scattered site development only; some standards apply only when the area noted is for the exclusive use of Tenant:
(1)      Yards: should be free of debris, trash, and abandoned cars.  Exterior walls should be free of graffiti.
(2)      Porches (front and rear): should be clean and free of hazards.  Any items stored on the porch shall not impede access to the unit.
(3)      Steps (front and rear): should be clean, and free of hazards.
(4)      Sidewalks: should be clean and free of hazards.
(5)      Storm doors: should be clean, with glass or screens intact.
(6)      Parking lot: should be free of abandoned cars.  There should be no car repairs in the lots.
(7)      Hallways: should be clean and free of hazards.
(8)      Stairwells: should be clean and uncluttered.
(9)      Laundry areas: should be clean and neat.  Remove lint from dryers after use.
(10)      Utility room: should be free of debris, motor vehicle parts, and flammable materials.

The following standards apply to the high-rise developments only:

(1)      Parking lot: should be free of abandoned cars.  There should be no car repairs in the lots.
(2)      Hallways: should be free of hazards.
(3)      Laundry areas: should be clean and neat.  Remove lint from dryers after use.

TENANT AGREES THAT ALL THE PROVISIONS OF THIS LEASE HAVE BEEN READ AND ARE UNDERSTOOD AND FURTHER AGREES TO BE BOUND BY ITS PROVISIONS AND CONDITIONS AS WRITTEN.  (SIGNATURE REQUIRED ON PART II OF THE LEASE.)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Office Address/Phone Number:      42 Church Street, Cortland, NY 13045      607-753-1771
Emergency/Maintenance Number:      607-753-1771

Hours of Operation:      8:30 a.m. to 4:30 p.m. Monday through Friday
                     (closed for lunch 12 noon – 1:00 p.m.)

P/CHA Lease May 08

Effective 5/1/08