

Respond to:
The Towne Law Firm, P.C.
500 New Karner Road
PO Box 15072
Albany, NY 12212

April 17, 2024

**<u>Via ECF</u>**
Hon. Miroslav Lovric
Magistrate Judge
United States District Court
Northern District of New York
Federal Building and U.S. Courthouse
15 Henry Street
Binghamton, New York 13901

   Re: Robert Hunter et al v. Cortland Housing Authority et al.
     NDNY Case No.: 5:23-cv-01540 (GTS/ML)

Dear Magistrate Lovric:

  Our office represents Defendants, Cortland Housing Authority (hereinafter individually referred to as "CHA" or the "Housing Authority") and Ella M. Diiorio (hereinafter individually referred to as "Ms. Diiorio"), in the above-referenced action. In accordance with Local Rule 7.1 and this Court's procedures, the parties met and conferred on March 20, 2024, to discuss Defendants' objections to Plaintiffs' discovery demands. Plaintiffs at the March 20th conference only wanted to discuss the present issue of the discovery of background checks conducted of tenants of the CHA as part of the admission process. Defendants reaffirmed at the conference that they objected to the production of this material in any form under N.Y. Pub. Hous. Law § 159 and its relevancy to Plaintiffs' claims set forth in their Amended Complaint. (Dkt. #20).

  Defendants respectfully submit that Plaintiffs' present motion to compel and spoilation must be denied as a matter of law and that a protective order should be issued limiting Plaintiffs from seeking information concerning the criminal backgrounds of CHA's tenant from Defendants and third parties that may have knowledge of such information.

## PRELIMINARY STATEMENT

  Before this Court is a motion by Plaintiffs seeking an order to permit them to invade the privacy of CHA's past and present tenants. Discovery should never be weaponized to cause embarrassment or to harass a party. Plaintiffs in their moving papers have not articulated a reasoned argument for why they must have this information with respect to this action. Plaintiffs have brought four causes of action for alleged constitutional violations stemming from CHA's firearms

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

Hon. Miroslav Lovric
April 17, 2024
Page 2

policy. They failed to present any persuasive argument that the past histories of CHA's tenants would help them prepare their case for trial.

They do attempt to justify their demands through flimsy argument. First arguing that they have pled a need to own weapons for "self-dense" and then to rehabilitate Plaintiff-Hunter's credibility. These present specious arguments regarding the relevancy of the information which collapses under the question of how the invasion of CHA's tenants' privacy is proportional to their need. They also seek to utilize a New York statute intended to protect this information to compel production from Defendants. While their argument has some superficially attractive, they lack validity and reasoning when examined in depth.

In recognition of the weakness of their arguments, they present a "red herring" to the Court in a spoilation argument. Plaintiffs without any evidence argue that this Court should sanction Defendants. Their arguments are a distraction from the weakness of their motion to compel. Nevertheless, they failed to demonstrate any of the necessary elements to seek sanctions under Rule 37.

For these reasons, the Court must deny Plaintiffs' instant motion for an order compelling the production of information regarding the criminal background checks of applicants to the CHA and for spoilation.

### RELEVANT BACKGROUND AND PROCEDURAL HISTORY

On December 7, 2023, Plaintiffs commenced this action against Defendants for equitable and monetary relief. (*See generally,* Dkt. #1). They asserted that Defendants had violated their Second Amendment right to bear arms based upon a provision found in their lease that they contended prohibited plaintiffs from owning or possessing firearms on CHA property (referred by Plaintiffs as the "Firearms Ban") while they were tenants of the CHA. (*See generally, Id.*). Defendants answered Plaintiffs' Complaint and opposed Plaintiffs' application for a temporary restraining order and preliminary injunction. (Dkt. Nos. 14, 15, 17).

In response to a motion to dismiss, Plaintiffs amended their complaint on January 20, 2024. (Dkt. #20). Plaintiffs expanded their complaint to now have four counts against Defendants. (*Id.*) Plaintiffs collectively brought Counts One and Four against Defendants based upon their theory that the Firearms Ban violated their Second Amendment.[1] (Dkt. #20, ¶¶ 56-77, 94-100). Plaintiff-

---

[1] Count One is brought under 42 U.S.C. § 1983 for violation of Plaintiffs' Second Amendment Rights as applicable to the States through the Fourteenth Amendment. Count Four parallels Plaintiffs theory in Count One but is brought under Equal Protection Clause of the Fourteenth Amendment.

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

Hunter in Counts Two and Three alleges violations of his First Amendment Rights because of the removal of a Facebook post. (*Id.*, ¶¶ 78-93).

On January 28, 2024, this Court granted Plaintiffs a temporary restraining order enjoining Defendants from enforcing or requiring anyone to comply with the Firearms Ban. (Dkt. #28).

On February 6, 2024, the parties conferred in accordance with Fed. R. Civ. P 25(f) to discuss a discovery and trial timelines as well as other matters.

On February 14, 2024, Plaintiffs served on the CHA their Requests for Admissions, First Set of Interrogatories, and Requests for Production (Ex. A, B, and C, respectively). Relevant to the instant motion, Plaintiffs requested that CHA produce "[a]ll background checks of current or past CHA tenants which reveal criminal history of any kind, including arrests, convictions, youthful offender adjudications, deferred prosecutions, adjournments in contemplation of dismissal, or any other disposition." (Ex C, Req. #17)

Then on February 15, 2024, Plaintiffs served on Ms. Diiorio their Requests for Admissions, First Set of Interrogatories, and Requests for Production from her. (Ex. D, E, and F, respectively.). Relevant to this instant motion, Plaintiffs requested Ms. Diiorio "[i]dentify all efforts to investigate tenants' criminal backgrounds personally undertaken or overseen by you from 2005 to the present, including a description of the individual responsible for investigation and any result obtained." (Ex. E, Interr. #9).

After receiving the requests, the parties did speak on the issue of the production of information pertaining to other CHA tenants which was then brought to this Court's attention at the Rule 16 conference held on March 7, 2024.

Defendants served Plaintiffs with their responses to the Requests for Admissions and Interrogatories and sought additional time to respond to the demands to produce documents. (Ex. G, H). Ms. Diiorio in response to Interrogatory #9 stated:

> Ms. Diiorio objects to Interrogatory No. 9 as an overly broad fishing expedition for irrelevant information that seeks information that is not relevant to the four (4) causes of action set forth in the operative complaint. Subject to and without waiving said objection, it is the policy and requirement of the CHA to conduct a criminal background check for every applicant to ensure an applicant's eligibility for public assistance. Applicants are required to submit to a background check by providing a fingerprint which is securely sent to an independent third party that conducts the search. A secured email is then sent back to the executive director of CHA with a link containing the results which are then printed out and provided to the CHA occupancy staff to review and verify the applicant's criminal history does not disqualify the applicant for assistance. The paper document is then destroyed

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

Hon. Miroslav Lovric
April 17, 2024
Page 4

and the secured linked terminated with a certain amount of time after it is sent. At the time relevant to Plaintiff Hunter's application, Heather Wasley reviewed criminal backgrounds of applicants. (Ex. H, Interr. #9)

In their cover letter, Defendants again objected to Plaintiffs attempts to invade the privacy of CHA's other tenants.

In accordance with this Court's procedures, the parties conferred again on March 20, 2024, to discuss Defendants' objections to Plaintiffs' discovery demands.[2] Plaintiffs at the March 20th conference only wanted to discuss the present issue of the discovery of background checks conducted on the tenants of the CHA. Defendants reaffirmed at the conference that they objected to the production of this material in any form under N.Y. Pub. Hous. Law § 159 and its relevancy to Plaintiffs' claims set forth in their Amended Complaint. (Dkt. #20). Three dates were chosen for argument.

At the March 20th conference, it was relayed to Plaintiffs that the CHA employees a third-party contractor to conduct the criminal background investigation for public housing applicants. As stated in Defendants responses to Plaintiffs' discovery demands, the CHA takes a fingerprint of the applicant. (Ex. H, Interr. #9). It then sends the fingerprint and other personal information to its third-party contractor which conducts the search. (*Id.*) The results of the search are then emailed to the CHA through a secure system. (*Id.*) The email link does not stay valid for an indefinite period. (*Id.*) In order not to lose any data before the link stops working, a paper copy of the results is printed out and provided to the appropriate housing coordinator. (*Id.*) The coordinator reviews to ensure the applicant is eligible for public housing and then destroys the hardcopy to protect the applicant's information. (*Id.*)

Since the March 20th conference and the issuance of this Court's April 10th Order, Ms. Diiorio has been in contact with CHA's vendor, National Credit Reporting. (Decl. of Ms. Diiorio, ¶5). As part of the background check, the vendor utilizes the FBI's NCIC database. (*Id.*) The FBI requires the vendor to purge all criminal record reports within twenty-four (24) hours of the CHA reviewing it. (*Id.*) Similarly, HUD guidance requires CHA to purge the records after a decision is made on whether to accept or deny an applicant. (*Id.*, ¶10).

---

[2] Although Defendants had objected to several other topic areas covered in Plaintiffs requests, Plaintiffs limited the discussion only to the production of CHA's tenants' criminal background checks.

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

## LEGAL STANDARD

### A. Motion to Compel Discovery

"[I]t is the discovering party who 'has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action.'" *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, No. 1:20-CV-01025, 2024 U.S. Dist. LEXIS 53302, at *2-3 (NDNY Mar. 26, 2024)(*quoting*, *Russell v. Scott*, 2022 U.S. Dist. LEXIS 137485, 2022 WL 3084339, at *7 [D. Vt. Aug. 3, 2022][*further citation omitted*]). "The party opposing discovery on the grounds of relevancy also has a burden: to demonstrate that 'the requested documents either do not come within the broad scope of relevance defined pursuant to [Rule] 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure.'" *Id.* (*quoting Du Grenier v. Encompass Ins. Co.*, 2:16-cv-281 2018 U.S. Dist. LEXIS 239028, 2018 WL 4692354, at *4 [D. Vt May 11, 2018][*further citations omitted*]).

Further, a party resisting discovery by asserting a privilege bears the burden of establishing the existence of the asserted privilege. *State Farm Mut. Auto. Ins. Co. v. E. Med., P.C.*, No. 05 CV 3804 (ENV) (RML), 2008 U.S. Dist. LEXIS 59891, at *5-6 (EDNY Aug. 5, 2008)(*quoting and citing*, *Allen v. W. Point-Pepperell, Inc.,* 848 F.Supp. 423, 426-27 [SDNY 1994]; *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 U.S. Dist. LEXIS 90970, 2006 WL 3771010, at *4 [SDNY Dec. 15, 2006]). In cases arising under federal law, federal courts generally will apply federal privilege rules. *Id.*, State Farm Mut. Auto. Ins. Co. v. E. Med., P.C., No. 05 CV 3804 (ENV) (RML), 2008 U.S. Dist. LEXIS 59891, at *6. However, "federal courts recognize that state privilege rules 'may illustrate important privacy interests, and 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Id.* (*quoting*, *Komlosi v. N.Y. State Office of Mental Retardation & Dev. Disabilities*, 88 Civ 1792 (JFK), 1992 U.S. Dist. LEXIS 4172, 1992 WL 77544, at *2 [SDNY Apr. 3, 1992][*further citations omitted*]) Therefore, instead of simply applying a state privilege law to a federal claim, a court should "balance the interests favoring and opposing" invocation of the privilege. *King,* 121 FRD at 187. Factors to consider include the privileged material's relevancy and importance to a party's case and the importance of full disclosure to the public interest. *See id.* at 194-95.

### B. Spoliation Sanctions

To establish a violation of Rule 37(e)(2), the moving party must demonstrate that nonmoving "party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.'" *Minnie Rose, LLC v. Anna Yu*, No. 15-cv-1923 (ER), 2023 U.S. Dist. LEXIS 200784, at *14-16 (SDNY Nov. 8, 2023)(*quoting*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 FRD. 474, 494 [SDNY 2022][*further citations omitted*]). The rule mirrors the common-law obligation to preserve documents in the anticipation of litigation. *Id.*(*citing*, FRCP 37[e] Advisory Committee's Note to 2015

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

Amendment). "The obligation arises when 'the party having control over the evidence' has 'notice that the evidence is relevant to litigation.'". *Id.* (*quoting*, *Kronisch v. United States*, 150 F3d 112, 126 [2d Cir. 1998]; *citing*, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-cv-2581 (PKC), 2021 U.S. Dist. LEXIS 174989, 2021 WL 4190628, at *15 [SDNY Aug. 18, 2021])

After establishing the control and notice elements, the moving party must also demonstrate that the lost evidence cannot "be restored or replaced through additional discovery." *Id.* (*quoting*, FRCP 37[e]). There can be no sanction if the evidence may be provided from another source with or without the nonmoving party's assistance. *Id.* (*citing*, *Rosario v. City of New York*, No. 18-cv-4023 [LGS]), 2022 U.S. Dist. LEXIS 137251, 2022 WL 2965953, at *2 [SDNY July 27, 2022]; *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. 18-cv-1997 [JS], 2021 U.S. Dist. LEXIS 124711, 2021 WL 2788432, at *15 [EDNY July 2, 2021]).

Finally, after making the first two showing, the moving party must then demonstrate "the party acted with the intent to deprive another party of the information's use in the litigation." *Id.* (*quoting*, FRCP 37[e][2]; *citing Keurig*, 341 FRD. at 496). This a stringent and specific standard and the proof submitted must demonstrate an "'intent to deprive' the other party of evidence, not an intent to destroy the evidence for some other reason, such as to destroy outdated documents." *Id.* (*quoting, Leidig v. Buzzfeed, Inc.*, No. 16-cv-542 [VM][GWG]), 2017 U.S. Dist. LEXIS 208756, 2017 WL 6512353, at *7 [SDNY Dec. 19, 2017]; *citing*, *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 FRD 47, 66 [SDNY 2020]).

## ARGUMENT

Rule 26 of the Fed. R. Civ. P. governs the scope of and limits of discovery in federal proceedings. *Frasers Grp. PLC v. Stanely*, 95 F4th 54 (2d Cir. 2024). While Rule 26 provides broad guidelines, the discovery process in federal courts is not boundless. *Id.* (quoting, FRCP 26[b][2][c][i]). The specific causes of action in a proceeding play a crucial role in shaping the scope and limitation of discovery in that proceeding. *See*, *Jones v. McMahon*, No. 5:98-CV-0374 (FJS/GHL), 2007 U.S. Dist. LEXIS 50145, at *55-56 (NDNY July 11, 2007)(*quoting*, *Hill v. Motel 6*, 205 FRD 490, 492 [SD Ohio 2001]; *citing*, 8 Wright & Miller. Fed. Prac. and Proced. § 2008 [Supp. 2004]; Advisory Committee Notes to 2000 Amendments to FRCP 26, *reprinted in* 192 FRD 389). Discovery requests must be tailored to obtain evidence relevant to these specific claims. *Id.* A plaintiff cannot use discovery to pursue information unrelated to the causes of action or engage in fishing expeditions. *Florence v. N.Y. State Dep't of Env't Conservation*, No. 1:20-CV-00106 (LEK/CFH), 2024 U.S. Dist. LEXIS 44867, at *12-13 (NDNY Mar. 14, 2024)(*quoting*, *Kozak v. Off. Depot Inc.*, No. 1:16-CV-943 [LJV/JJM], 2020 U.S. Dist. LEXIS 261828, 2020 WL 12957618, at *1 [WDNY June 22, 2020])

Here, Plaintiffs failed to demonstrate the relevancy of the criminal background checks of all of CHA tenants to their causes of action. There is no logical nexus between CHA's tenants criminal background checks and their allegations that Defendants violated their Second

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

Hon. Miroslav Lovric
April 17, 2024
Page 7

Amendment right or Mr. Hunter's First Amendment rights. They simply contend that because they have alleged the need for self-defense in their Amended Complaint that they can invade the privacy of other tenants. They also present an implausible argument that because Defendants in opposition to Plaintiffs application for a TRO questioned Plaintiff-Hunter's rationale for commencing this action that they now may review the personal and private information of other tenant's to rehabilitate Plaintiff-Hutner's credibility. However, they fail to demonstrate to the Court that their demands are proportional to the needs of the case against the invasion of other tenant's privacy. Furthermore, they failed to show any of the necessary elements to establish spoilation under Rule 37.

Hence, their present motion must be denied as a matter of law given that they failed to establish the relevancy of their demand to their claims or that it is proportional to this case given sensitive and confidential nature of this information as recognized by Section 159 of N.Y. Pub. Hous. Law and that a protective order is warranted to prevent Plaintiffs from seeking this information through other sources.

## POINT I

### PLAINTIFFS FAILED TO ESTABLISH THE RELEVANCY OF THE CHA'S TENANTS' CRIMINAL BACKGROUND CHECKS TO THEIR CAUSES OF ACTION

Rule 26(b)(1) recognizes that "[i]nformation is discoverable. . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." *Mohegan Lake Motors v. Thomas Maoli & Celebrity Auto of Mohegan Lake*, No. 16CV6717 (NSR)(LMS), 2018 U.S. Dist. LEXIS 239448, at *6 (SDNY Apr. 6, 2018)(*quoting*, Rule 26 Advisory Committee Notes to 2015 Amendments). In determining proportionality, the court considers "'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Beverley v. N.Y.C. Health*, No. 18-cv-08486 (ER), 2024 U.S. Dist. LEXIS 60077, at *17 (SDNY Mar. 29, 2024)(*quoting,* FRCP 26[b][1]); *Elmore v. Atieh*, No. 5:23-cv-0508 (GTL/TWD), 2024 US Dist. LEXIS 31907, at *7 (NDNY Feb. 26, 2024)(*citing*, FRCP 26[b][1])(" [T]he scope of discovery depends on the existence [of] a party's viable claims.").

Plaintiffs make two specious arguments that they are entitled to invade the privacy of their fellow tenants by virtue of their pleadings and a mischaracterized statement made by Ms. Diiorio in opposition to the prior TRO motion. (Dkt. #43, pg. 2). However, they make no argument that the criminal histories of the CHA's tenants, past and present, are relevant to their causes of action

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

or acknowledge that Plaintiff-Hunter has less intrusive means to rehabilitate his perceived credibility issue.[3]

Turning first to Plaintiffs' argument that they have alleged a need for home self-defense purposes to justify the invasion of CHA's tenants' privacy is disingenuous at best. They make no claims in their Amended Complaint pertaining to any criminal activity at or near their homes. (*See*, Dkt. #20). While they do assert firearms are needed for self-defense, most of the paragraphs in which self-defense is noted in the Amended Complaint are mere recitations of case law. (*Id.*, ¶¶ 4, 5, 29, 35, 58, 61, 62, 63, 67, 69). In the context of this action, the individual Plaintiffs only discuss their individual need for firearms for self-defense in three boilerplate statements that read: "[b]ut for the Firearms Ban, [individual plaintiff] would own and possess firearms for self-defense and other lawful purposes in his home, including and especially handguns." (*Id.*, ¶¶, 11, 12, 13). These conclusory statements cannot justify Plaintiffs' violation of CHA's tenants' privacy by reviewing the criminal histories of each tenant.

Plaintiffs' argument loses further credibility in the context of this action. This Court (Hon. G. Suddaby) in considering irreparable harm rejected the idea that individual Plaintiffs would have to "demonstrate some special need for self-protection distinguishable from that of the general community" in order demonstrate irreparable harm. (Dkt. #28, pg. 27)(*citing*, *New York State Rifle & Pistol Ass'n Inc. v. Bruen*. 597 US 1 [2022]). Plaintiffs' arguments on this first point continue to become less plausible in light of this Court's prior statement and a lack of discussion of how their invasion of other tenant's privacy is proportional to their needs as plaintiffs.

Similarly, Plaintiffs assertion that the statement of Ms. Diiorio has opened the door to permit Plaintiffs to invade the privacy of their neighbors is without merit. They premise their argument on a characterization of Ms. Diiorio's prior statement. (Decl. of Ms. Diiorio, ¶19). Ms. Diiorio in her declaration in opposition to Plaintiffs challenged the rationale behind Plaintiff-Hunter's motives for commencing this instant action given that he has engaged in a series of retaliatory legal actions after CHA sought to evict him for his failure to disclose additional sources of income to the CHA and non-payment of back rent owed after the CHA adjusted monthly rental rate. (Dkt. #16-1, ¶¶16-17; Decl. of Ella Diiorio, ¶13). Specifically, Ms. Diiorio previously stated:

> 16. Similarly, Mr. Hunter has never informed CHA that he sought to have a firearm or other weapon in his apartment until this last summer. Mr. Hunter only began objecting to the firearm restriction in April of 2023 after CHA failed to

---

[3] The elements of 42 U.S.C. § 1983 are well known. *Boykin v. City of N.Y.*, 2023 US App. LEXIS 29744, *2-3 (2d Cir. Nov. 8, 2023)(*citing*, 42 U.S.C. § 1983). Plaintiffs bear the burden of establishing: (1) Defendants' actions were taken under color of state law; (2) that said action deprived Plaintiffs of their constitutional or federal rights; (3) causation; and (4) damages. In cases involving a municipality or municipal entity, such as CHA, Plaintiffs must also establish that: (1) CHA had an official policy, custom or practice; (2) that caused the alleged the Plaintiffs to be subjected to; (3) the deprivation of a constitutional right. *Id.* (*quoting*, *Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 97 [2d Cir. 2020]).

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

evict Mr. Hunter for his non-payment of the correct amount of rent. *Exhibits 5 &6*. The Cortland County Department of Social Services paid CHA the balance of Mr. Hunter's arrears. After the eviction proceeding concluded, Mr. Hunter began making multiple complaints to CHA about various issues which included the firearms restriction. *Id.* He has filed multiple complaints with the New York State's Division of Human Rights and Attorney General's Office.

17. With respect to his recent objection to the firearms restrictions, Mr. Hunter informed CHA that he desired to possess a firearm for his safety. *Exhibit 6.* He has made complaints about other tenants at 37 Galatia. *Id.* In particular, Mr. Hunter had concerns over one tenant who had African American and/or Black visitors, which he and other tenants, assumed participated in drug trafficking.

While Plaintiffs frame this statement as a challenge to the soundness of Plaintiff-Hunter's credibility in his perception of criminal activity, the statement was made to challenge Plaintiff-Hutner's motives for pursing this action given he has a history of lodging complaints against the CHA after it attempted to evict him.

Nevertheless, Plaintiffs are silent on the proportionality of his need to have evidence to rehabilitate his perceived impeached credibility against the invasion of privacy of CHA's tenants. They are silent because it is not proportional to the needs of this case. Plaintiffs ignore the fact that if they wanted to prove any present-day criminality, they could easily review local law enforcement and court records of recent criminal proceedings that would be far more dispositive on Plaintiff-Hutner's assertions than attempting to utilize tenants prior criminal histories to establish present criminal activities. The idea smacks of criminal record discrimination. Furthermore, there is some degree of irony in Plaintiffs' demand. Plaintiff-Hunter has objected to criminal background checks in the past, believing them to be discriminatory. (Ex. I; Decl. of Ms. Diiorio, ¶16).

It is respectfully submitted that Plaintiffs' motion should be denied, and a protective order put in place to prevent further attempts by Plaintiffs to inquire into CHA's tenant's files given that their demands are not proportional to the needs of this case.

## POINT II

### A PUBLIC HOUSING TENANT'S PERSONAL INFORMATION MUST BE HELD IN THE STRICTEST OF CONFIDENCES

While the language of a statute is ordinarily regarded as conclusive, it cannot prevail over strong contrary indications of legislative intent. *Canisius College v. United States*, 799 F2d 18, 24 (2d Cir. 1986)(*quoting*, *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 US 102, 108 [1980]); *Lange v. United States,* 443 F2d 720, 722-23 (DC Cir. 1971). The interpretation of a statute must construed so that it does not lead to anomalous or unreasonable results. *Carlin v.*

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

*Davidson Fink LLP*, 852 F3d 207, 214 (2d Cir. 2017)(*quoting*, *Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F3d 324, 327 [2d Cir. 2007]).

Section 159 of New York's Public Housing Law provides that information acquired from tenants of public housing shall not be open to the public nor be used in any court action or proceeding. *Matter of Thomas v. City of N.Y. Dept. of Hous. Preserv. & Dev.*, 12 Misc3d 547, 551, 817 NYS2d 864, 867 (Sup. Ct. N.Y. Cnty Mar. 27, 2006)(*citing*, PHL § 159). In applying for public housing an applicant is required to reveal very detailed financial and other sensitive information that should be protected from disclosure. *People v. Jones*, 160 Misc2d 246, 247, 608 NYS2d 795, 796 (Crim. Ct. Kings Cnty 1994). The intent of Section 159 is to protect this information from unnecessary exposure. *30 Gray Prop. Llc v. Haynes*, 2021 NYLJ LEXIS 1174, *6 (Cty. Ct. Westchester Cnty Oct. 21, 2021)(*quoting*, 1941 NY Laws Chapter 294, Bill Jacket p. 18). Hence, "[t]enants and applicants rightfully expect personal information to be held in strict confidence, and authorities must zealously respect such confidence as contemplated by section 159 of the Public Housing Law." 9 NYCRR § 1625-3.3 (Lexis Advance through April 5, 2024).

Plaintiffs' reading of Section 159 is too broad and results in an absurd result. It's clear that New York's legislature intended to protect a public housing applicant's information from unnecessary exposure. *30 Gray Prop. Llc v. Haynes*, 2021 NYLJ LEXIS 1174, at *6; *Jones*, 160 Misc2d at 249. Although Section 159 of the PHL provides for the release of records when a PHA is a party to an action or proceeding, Plaintiffs' reading stretches the interpretation of the exception to such an extent that it undermines the original intent of the statute which is to protect applicants' private information. It could not have been the intent of the legislature to allow Plaintiffs to invade the privacy of other tenants merely by naming the CHA in this action. It follows from Plaintiffs logic that their own files could be reviewed by any party of an action in which the CHA is a named party. This is an absurd result given the private and confidential nature of these records and the degree of protection they should be afforded as recognized at the federal and state level. (Decl. of Ms. Diiorio, ¶¶9-12). Rather, a more reasoned reading of the exception is to permit Plaintiffs to review their own records so that the CHA is not in a position to utilize information gained form their own application process against them in this proceeding.

## POINT III

### PLAINTIFFS ARE NOT ENTITLED SANCTIONS FOR DEFENDANTS' ALLEGED SPOILATION

Plaintiff present specious arguments regarding spoilation and inaccurately reflect the facts of this case. "'The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence will be relevant to the future litigation.'" *Dataflow, Inc. v. Peerless Ins. Co.*, Civil Action No. 3:11-CV-1127 (LEK/DEP), 2013 U.S. Dist. LEXIS 183398, at *16 (NDNY June 6, 2013)(*quoting*, *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 [2d Cir. 2001][*further citations omitted*]).

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

Plaintiffs' initial argument on this point is that a duty to preserve attached to the Defendants on December 12, 2023, when their initial Complaint was served on Defendants. However, they fail to explain to the Court how the Defendants would have known of their relevance at that time. The initial complaint, like the Amended Complaint, just utilized boilerplate statements regarding self-defense. (Dkt. #1). Similarly, Plaintiffs motion for a temporary restraining order and preliminary injunction did not inform Defendants that Plaintiffs would be seeking these records as part of their case; rather, Plaintiffs argument indicated that their position that they did not need to justify a reason for ownership of firearms besides that it was their right to do so. (Dkt. #2-1, pg. 11). Defendants could not have anticipated that Plaintiffs would seek to review these records.

Plaintiffs having to failed articulate a convincing argument next argue that January 3, 2024, as the date of notice of the relevancy of this information. However, as discussed above and in the accompanying declaration of Ms. Diiorio, the Plaintiffs are mischaracterizing Ms. Diiorio's prior statement. (Decl. of Ms. Diiorio, ¶19). Ms. Diiorio's statement challenge Plaintiff-Hutner's rationale in pursuing this action based upon his prior course of lodging complaints and legal actions against the CHA after his eviction proceedings. (*Id.*, ¶20; Ex. I). Nevertheless, they still have not demonstrated notice on the part of Defendants.

On the second element, Plaintiffs again failed to demonstrate that lost evidence cannot be restored or replaced through additional discovery. *Minnie Rose, LLC*, No. 15-cv-1923 (ER), 2023 U.S. Dist. LEXIS 200784, at *14-16. They do not even attempt to discuss this element in their moving papers. As set forth in Ms. Diiorio's declaration, Defendants have contacted their vendor to inquire on the availability of these records. (Decl. of Ms. Diiorio, ¶5). The vendor informed CHA that the FBI requires the vendor to purge its files within twenty-four (24) hours of the CHA's review. (*Id.*) However, the vendor indicated that it could likely recreate parts of the file at significant cost. (*Id.*, ¶6). The fact that the information may be replaced cuts against Plaintiffs motion.

Finally, Plaintiffs have again failed to demonstrate the third element to establish spoilation under Rule 37 – an intent to deprive. *Id.* ("This a stringent and specific standard and the proof submitted must demonstrate an "'intent to deprive' the other party of evidence, not an intent to destroy the evidence for some other reason, such as to destroy outdated documents.")(*quoting*, FRCP 37[e][2]; *Leidig v. Buzzfeed, Inc.*, No. 16-cv-542 [VM][GWG]), 2017 U.S. Dist. LEXIS 208756, 2017 WL 6512353, at *7; *citing Keurig*, 341 FRD. at 496). The CHA in accordance with HUD guidance only retains the results of criminal background checks for thirty (30) days or less, the time it takes to confirm eligibility for public housing. As stated by Ms. Diiorio, after that time the CHA destroys the paper record and CHA's vendor shuts down the link in accordance with HUD guidance and the vendor does the same pursuant to FBI requirements. (Decl. of Ms. Diiorio, ¶¶5, 9-12). Plaintiffs failed to inform this Court that it was explained that the relevant records are purged once the CHA decides on an applicant's eligibility and vendor's email link is extinguished. The purge occurs as part of regulated process to insure the privacy of applicants' information.

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.

Hon. Miroslav Lovric
April 17, 2024
Page 12

Most of the documents Plaintiffs seek would have been destroyed well before the initiation of this action. (*See*, Decl. of Ms. Diiorio).

      Hence, it is respectfully submitted that Plaintiffs motion for sanction pursuant to Rule 37 must be denied as a matter of law given that they have failed to demonstrate any of the elements to establish spoilation.

## **CONCLUSION**

      Therefore, based upon the foregoing points, it is respectfully submitted that this Court must deny Plaintiffs motion as a matter of law.

      Respectfully Submitted,

      THE TOWNE LAW FIRM, P.C.

By:   *s/Mark T. Houston*_____
      Mark T. Houston, Esq.
      *Admitted to Practice in New York*
      Email: mark.houston@townelaw.com
      Sender's Direct Dial: (518) 941-9845

MTH

Cc:    Counsel of Record (*via ECF*)

**NEW YORK | VERMONT | MASSACHUSETTS | NEW JERSEY**
www.townelaw.com | (518) 452-1800 p | (518) 452-6435 f
Service by fax not accepted.