UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROBERT HUNTER, ELMER IRWIN, DOUG
MERRIN, and THE SECOND AMENDMENT              Case No: 5:23-cv-01540
FOUNDATION,                                                     (GTS/ML)

                                    Plaintiffs,        **DECLARATION**

        - against –

CORTLAND HOUSING AUTHORITY, and ELLA M.
DILORIO, in her official capacity as Executive Director
of CORTLAND HOUSING AUTHORITY,

                                    Defendants.
-------------------------------------------------------------------X

**DECLARATION OF ELLA M. DIIORIO IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF TENANT'S
CRIMINAL BACKGROUND CHECKS AND FOR SANCTIONS**

I, Ella M. Diiorio, declare under penalty of perjury that the following facts are true and correct:

1.    I am the Executive Director of Defendant, Cortland Housing Authority (hereinafter referred to as "CHA"), and as such I am fully familiar with the policies, customs, practices, and legal matters concerning CHA.

2.    I have been made aware that Plaintiffs have moved this Court for an Order directing Defendants to produce CHA's tenants criminal background checks and for sanctions for Defendants destruction of said background checks in compliance with the United States Department of Housing and Urban Development's guidance.

3.    I submit this declaration in opposition to Plaintiffs instant motion.

1

4.      I have also been made aware that this Court on April 10, 2024, directed Defendants to cease deleting and destroying the background checks for public housing applicants and to make reasonable steps to retrieve and recover said criminal background checks.

5.      I have contacted CHA's third-party vendor, National Credit Reporting, regarding this Court's order. Our vendor indicated that it maintains a history of every report it processes which indicates with a criminal report was included with their report. However, the vendor informed me that it utilizes the Federal Bureau of Investigation's ("FBI") National Crime Information Center's (NCIC) database. The FBI requires the vendor to purge the results of the criminal background check within twenty-four (24) hours of the CHA receiving and reviewing the record. The purge also includes the destruction of any hard copies of the report made because of the search.

6.      The vendor has indicated that parts of the report may be obtainable; however, it would not be the same as provided to the CHA given that the vendor no longer has the individual's fingerprints on file which would allow it to utilize the FBI database. This would also come at significant cost to the CHA.

7.      It is my understanding that Plaintiffs have requested criminal background checks for all of CHA's tenants' past and present. I cannot attest to the initial date that the CHA started conducting criminal background checks on tenants. At the latest, I assume it began sometime in 1998 when public housing authorities ("PHAs") were granted permission to conduct checks with the FBI database. I do not have the exact number individuals that have lived in CHA developments since the 1998 law was passed. However, I would estimate that number of criminal background checks would be in the well into the thousands. Many of these individuals also may not even be current tenants of the CHA.

8.     Furthermore, the CHA was established in 1957 by New York's legislature. Plaintiffs request arguably would require the CHA to locate and review thousands of prior tenants' record for responsive documents for tenants that are not present and living in any CHA developments.

## TENANTS' CRIMINAL BACKGROUND CHECKS

9.     Section 578 of the Quality Housing and Work Responsibility Act ("QHWRA") of 1998 and 24 C.F.R. § 5.903 authorizes the CHA to obtain criminal background checks from the FBI. The CHA may only obtain and use the criminal records to screen applicants for admission to either public housing or Housing Choice Voucher ("HCV") programs and for lease enforcement. 24 C.F.R. §§ 5.903, 5.960, 5.982.

10.    To receive either public housing or an HCV an applicant must submit to a criminal background check to insure their eligibility for the program. During the application process, the CHA collects certain private and personal information from an applicant. This includes a fingerprint which it sends to a third-party vendor to conduct a criminal background check through the FBI database. After the check is complete, the vendor sends an email link to the CHA to view the results. The report will then be printed out and provided to the appropriate housing coordinator to insure eligibility of the individual. After the eligibility is confirmed the paper copy of the report is destroyed by the CHA. The electronic link also becomes invalid after a time of about thirty (30) days.

11.    This process is done in accordance with the United States Department of Housing and Urban Development's guidance on obtaining criminal background checks. *See*, Notice PIH 2003-11 (HA), Instruction for Obtaining Federal Bureau of Investigation Criminal History Record

Information (HUD Apr. 11, 2003)(*available at*, https://www.hud.gov/program_offices/administration/hudclips/notices/pih/03pihnotices )

12. Under HUD guidance, the CHA is required to establish and maintain a system of record management that requires it to destroy any record received from a law enforcement agency once the purpose for which the records was requested has been accomplished. *Id.*, §11. As noted above, the link provided to CHA only lasts for twenty-four (24) hours. The email link is only sent to the Executive Director. It is the CHA's procedure to print a hard copy of the applicant's report and provide it with the appropriate housing coordinator to review the applicant's eligibility. The physical copy is then destroyed in accordance with HUD guidance.

13. Plaintiffs ignore the sensitivity of this data and the importance of applicants knowing that their information will be kept confidential. The CHA, like other PHAs, relies on applicants being candid during the application and interview process. It is essential that applicants are candid for the CHA to determine their eligibility without having to expend additional time and resources. Applicants, and tenants recertifying their eligibility, will be less inclined to provide the CHA sensitive information if they are aware, it may be exposed later. To that end, the CHA is charged with zealous protection of a tenant's information. *See,* 9 N.Y.C.R.R. § 1625.3-3; PHL § 159.

14. The exposure of CHA's tenants' criminal background checks represents a clearly defined specific and serious injury to non-party tenants. Plaintiffs would hold in their hand information pertaining to an individual applicant's criminal past.

15. It should be known to the Court that Mr. Hunter has in the past objected to the degree of information gathered during a criminal background check to New York's Division of

Human Rights ("DHR") that the submission to a broad criminal background check is discriminatory. (Ex. I). Now, he wants to review the records of every tenant of the CHA.

16. I am particularly concerned with Mr. Hunter or his counsellors being able to review other tenants' criminal history. Firstly, it appears that Plaintiffs are engaging in criminal record discrimination by stating that an individual's past actions may used as evidence of the likelihood that are presently or will again engage in criminal behavior. A point I believe Mr. Hunter has attempted to make in his DHR complaint. (Ex. I). Secondly, I am concerned that Plaintiffs could weaponize this information to harass the other tenants. As indicated in Mr. Hunter's DHR complaint, he has had some confrontations with another tenant in his development that is not the tenant noted in my prior declaration.

17. There is a specific and serious threat faced by the CHA should Plaintiffs be permitted to review other tenants' criminal background checks merely because they alleged the need to own firearms for self-defense or that they want to rehabilitate Mr. Hunter's credibility. Applicants will be less forthcoming during the application process, which at times can be difficult to gain accurate information. There is also the threat that the information may be used against other tenants.

## **SPOILATION**

18. The CHA was not made aware of Plaintiffs' demands for the criminal background checks of all its tenants, past and present, until February of 2024. Until that time, the CHA was not aware of the information that was needed by Plaintiffs for use in the present litigation.

19. Plaintiffs misconstrue my statement concerning Mr. Hunter's complaints made about criminal activity in opposition to their application for a temporary restraining order and

preliminary injunction. As I have previously stated, Mr. Hunter did not begin to make complaints to the CHA about it or his home until after the CHA commenced an eviction proceeding against him. It was discovered by the CHA that Mr. Hunter was receiving additional, undisclosed, income from Cortland County. Mr. Hunter's failure to disclose that income resulted in miscalculation in his apportionment of rent. The CHA advised him of his duties to report, that as a result his rental payment was adjusted, and that he owed back rent. This ultimately resulted in the CHA taking Mr. Hunter to court for non-payment which resulted in a money judgment against Mr. Hunter

20. After which, Mr. Hunter began to find fault in many things associated with living in the CHA's development including filing his DHRs concerning a few issues he perceived as discrimination, including CHA's request for criminal history background checks. (Ex. I). The example of the tenant was just one of the complaints made by Mr. Hunter since the initial eviction proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 17, 2024
Cortland, New York

Ella M. Diiorio