UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT HUNTER; ELMER IRWIN; DOUG
MERRIN; and THE SECOND AMENDMENT
FOUNDATION,

                      Plaintiffs,              5:23-CV-1540
                                                                  (GTS/ML)
v.

CORTLAND HOUSING AUTHORITY; and
ELLA M. DIIORIO, in her official capacity as
Executive Director of Cortland Housing Authority,

                      Defendants.
_____

APPEARANCES:                                             OF COUNSEL:

BOCHNER PLLC                                    EDWARD A. PALTZIK, ESQ.
   Counsel for Plaintiffs                        SERGE KRIMNUS, ESQ.
1040 Avenue of the Americas, 15th Floor
New York, NY 10018

THE TOWNE LAW FIRM, P.C.               JOHN W. LIGUORI, ESQ.
   Counsel for Defendants                    MARK T. HOUSTON, ESQ.
500 New Karner Road
PO BOX 15072
Albany, NY 1221

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

     Currently before the Court, in this civil rights action filed by Robert Hunter, Elmer Irwin, Doug Merrin, and The Second Amendment Foundation ("Plaintiffs") against Cortland Housing Authority and Ella M. Diiorio, in her official capacity as Executive Director thereof ("Defendants"), is Defendants' motion to dismiss as a party to this action Plaintiff Second Amendment Foundation ("Plaintiff SAF") for lack of subject-matter jurisdiction (due to lack of

1

standing) pursuant to Fed. R. Civ. P. 12(b)(1). (Dkt. No. 16.) For the reasons set forth below, Defendants' motion is granted, and the first claim of Plaintiff's Amended Complaint is dismissed without prejudice to the extent it is asserted by Plaintiff SAF.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Amended Complaint

Generally, liberally construed, Plaintiffs' Amended Complaint alleges that Cortland Housing Authority ("CHA"), a New York State public housing authority that receives federal funding and houses tenants, categorically bans CHA tenants (including the three individual Plaintiffs who live in the Galatia Apartments) from possessing firearms and other weapons on CHA premises, by requiring them, as a condition of receiving the benefit of CHA public housing, to enter into a standard Residential Lease Agreement ("RLA"), which provides (in the "Tenant's Obligations" in Article IX, Section [p] of the RLA) that the "Tenant shall be obligated: . . . Not to display, use, or possess or allow members of Tenant's household or guest to display, use or possess any firearms (operable or inoperable) or other weapons as defined by the laws and courts of the State of New York anywhere on the property of CHA" ("Firearms Ban"). (Dkt. No. 20, at ¶¶ 1-55.) Each of the three individual Plaintiffs are members of Plaintiff SAF, which has more than 720,000 members and supporters nationwide, including other members in New York who are adversely and directly harmed by Defendants' enforcement of the Firearms Ban. (*Id*. at ¶ 14.)

Generally, based on these factual allegations, Plaintiffs' Amended Complaint asserts four claims against Defendants: (1) a claim, by all Plaintiffs against all Defendants, that Defendants' Firearms Ban, facially and as applied to Plaintiffs, violates their right to keep and bear arms in their homes under the Second Amendment, as incorporated against the states through the Due

Process Clause of the Fourteenth Amendment; (2) a claim by Plaintiff Hunter against all Defendants, that Defendants' censorship of his protected speech on the CHA Facebook page violates his right of free speech under the First Amendment, as incorporated through the Fourteenth Amendment; (3) a claim by Plaintiff Hunter against all Defendants, that Defendants' deletion of his disagreement with the Firearms Ban on the CHA Facebook page violates his right to petition the government for the redress of grievances under the First Amendment, as incorporated through the Fourteenth Amendment; and (4) a claim, by the individual Plaintiffs against all Defendants, that Defendants' Firearms Ban, facially and as applied to Plaintiffs, violates their right not be impermissibly discriminated against based on their status as elderly, disabled, and financially-disadvantaged individuals who make their homes in public housing facilities, under the Equal Protection Clause of the Fourteenth Amendment.  (*Id*. at ¶¶ 32-54.)

Generally, as relief for these claims, the Amended Complaint seeks injunctive relief, declaratory relief, monetary damages, and attorneys' fees.  (*Id*. at ¶ 101.)

### B. Parties' Briefing on Defendants' Motion

#### 1. Defendants' Memorandum of Law

Generally, in support of their motion, Defendants assert two arguments.  (*See generally* Dkt. No. 16, Attach. 2 [Defs.' Memo. of Law].)   First, Defendants argue that Plaintiff's Amended Complaint does not allege facts plausibly suggesting that Plaintiff SAF has *associational* standing to bring its sole claim (which arises under the Second and Fourteenth Amendments), because the Amended Complaint's conclusory allegation that Plaintiff SAF has "thousands of members in New York" does not plausibly suggest that any of those members are

3

tenants or prospective tenants of CHA other than the three already named individual Plaintiffs. (*Id*. at 14-15.)[1]

Second, Defendants argue that Plaintiff's Amended Complaint does not allege facts plausibly suggesting that Plaintiff SAF has *organizational* standing to bring its Fourteenth Amendment claim, because (a) the Amended Complaint does not allege a direct injury to Plaintiff SAF based upon the alleged firearms ban (e.g., an increase in the difficulty of already ongoing activities), and (b) indeed, in *Antonyuk v. Chiumento*, 89 F.4th 271, 344 (2d Cir. 2023), the Second Circuit expressly rejected the concept that the Second Amendment Foundation has standing due to its claim that it has "been injured by [a] law touching on an issue within the scope of its mission (which the organization itself can define or redefine) so long as it expends resources to oppose that law or regulation." (*Id*. at 15.)

### 2. Plaintiffs' Opposition Memorandum of Law

Generally, in response to Defendants' motion, Plaintiffs argue that Plaintiff SAF has associational standing under *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977), for three reasons. (*See generally* Dkt. No. 33, at 5-8 [Plfs.' Opp'n Memo. of Law].) First, Plaintiffs argue that three of Plaintiff SAF's members (specifically, the individual Plaintiffs) unquestionably have properly alleged standing to sue in their own right (satisfying the first element of the three-part *Hunt* test). (*Id*. at 5-6.)

Second, Plaintiffs argue that the interests that Plaintiff SAF seeks to protect are clearly germane to its purpose (satisfying the second element of the three-part *Hunt* test), because

---

[1]   Page citations in this Decision and Order refer to the screen numbers on the Court's Case Management / Electronic Case Filing ("CM/ECF") System, not to the page numbers stated on the documents contained therein.

Plaintiff SAF's claim would, if successful, reasonably tend to further the general interests that its individual members sought to vindicate in joining the association (specifically, their interest in being protected from a wholesale firearms ban that violates the Second Amendment). (*Id*. at 6-8.)

Third, Plaintiffs argue that the relief requested by the first claim of the Amended Complaint does not require the participation of individual members in the lawsuit (satisfying the third element of the three-part *Hunt* test), because Plaintiff SAF seeks a purely legal ruling (specifically, an injunction requiring Defendants to strike the Firearms Ban from the CHA RLA, affecting all residents subject to Defendants' authority) without requesting that this Court award individualized relief to its members. (*Id*. at 7-8.)

### 3. **Defendants' Reply Memorandum of Law**

Generally in their reply, Defendants assert three arguments. (*See generally* Dkt. No. 37 [Defs.' Reply Memo. of Law].) First, Defendants argue, Plaintiff SAF has conceded that it lacks organizational standing, because (a) in this District, where a non-movant has failed to respond to a Defendant's argument, it is deemed to have "consented" to that argument under Local Rule 7.1(b)(3) of the District's Local Rules of Practice, (b) here, in its opposition, Plaintiff SAF does not oppose Defendants' argument that Plaintiffs' Amended Complaint fails to allege facts plausibly suggesting that Plaintiff SAF possesses organizational standing to maintain the Amended Complaint's first claim, and (c) in any event, even if evidence beyond the pleadings were considered, the Declaration of Adam Kraut (submitted in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction) does not demonstrate a perceptible impairment of Plaintiff SAF's activities (which is necessary to satisfy the "injury in fact"

requirement of standing), especially given that the Declaration states that litigation of Second Amendment rights is one of Plaintiff SAF's activities.  (*Id*. at 6-10.)

Second, Defendants argue, as a threshold matter, Plaintiff SAF lacks associational standing to assert the rights of its members in a claim brought under 42 U.S.C. § 1983 (such as the Amended Complaint's first claim), because (a) an action to enforce a party's Second Amendment right against state and local government (as incorporated by the Due Process Clause of the Fourteenth Amendment) does so only through 42 U.S.C. § 1983, and (b) in *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973), the Second Circuit interpreted the rights secured by 42 U.S.C. § 1983 to be personal to those individuals who have been purportedly injured (and that interpretation has not yet been overruled either by an en banc panel of the Second Circuit or by the Supreme Court).  (*Id*. at 10-11.)

Third, Defendants argue, even if Plaintiff SAF possesses associational standing to assert the rights of its members in a claim brought under 42 U.S.C. § 1983, Plaintiff SAF has failed to meet its burden of establishing associational standing, because (a) to the extent that the first claim of the Amended Complaint seeks to recover monetary damages on behalf of the members of Plaintiff SAF (in the form of compensatory and punitive damages), Plaintiff SAF cannot recover those damages (which are peculiar to the individual member concerned, and would require individualized proof), and (b) to the extent that the first claim of the Amended Complaint seeks prospective relief on behalf of Plaintiff SAF, that prospective requires the participation of individual members of Plaintiff SAF beyond the individual Plaintiffs, and Plaintiff SAF has failed to allege (or provided proof) that its members, other than the individual Plaintiffs, have applied to reside in CHA public housing or have been forced to surrender or have been declined such residency because of the challenged lease provision.  (*Id*. at 11-13.)

## II.     GOVERNING LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of a claim when the federal court "lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A federal district may lack such subject-matter jurisdiction where the plaintiff lacks standing. *See, e.g., Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing."); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.").

Generally, a challenge to standing can be either "facial" (i.e., based solely on the complaint and the documents attached to it) or "fact-based" (i.e., based also on record evidence outside the pleadings). *See Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."). In addition, the standing that is challenged can be either "constitutional" in nature (arising under Article III of the Constitution) or "prudential" in nature. *See Warth v. Seldin*, 422 US 490, 498, 95 S. Ct. 2197 (1975) ("[Standing asks] whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. . . This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.").

Where (as here) a defendant asserts a facial challenge based on lack of constitutional standing, the plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest

7

the plaintiff has standing to sue in federal court. *See Carter*, 822 F.3d at 56 ("When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden. . . . The task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.") (internal quotation marks and citation omitted).

However, when deciding such a challenge, the court must not only accept as true all material factual allegations in a complaint but draw all reasonable inferences in favor of the plaintiff. *See John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) ("When the defendant asserts a 'facial' challenge to standing, therefore, it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor and are to presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal quotation marks omitted); *Carter*, 822 F.3d at 57 ("On appeal, we review the district court's decision on such a facial challenge de novo, . . . accepting as true all material factual allegations of the complaint, . . . , and drawing all reasonable inferences in favor of the plaintiff.") (internal quotation marks and citations omitted); *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("When (as here) a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff."); *Sundown v. Aetna Life Ins. Co.*, 23-CV-1905, 2024 WL 1051165, at *3 (E.D.N.Y. Jan. 16, 2024) ("[W]hile courts typically do not draw inferences in favor of the plaintiff when assessing jurisdiction, when a Rule 12(b)(1) motion is facial, the court does "accept as true all material [factual] allegations of the complaint, and draw all reasonable inferences in favor of the plaintiff."); *cf. Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both

the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").[2]

Generally, an organization can plead standing in two ways. First, it may plead that it suffered an injury "in its own right," including an impairment of its ability to fulfill its mission (called "organizational" standing). *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 & n.19 (1982) ("[O]rganizations are entitled to sue on their own behalf for injuries they have sustained. . . . If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact."); *Warth v. Seldin*, 422 U.S. 490, 511 ( 1975) ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy."). Under this theory, "the organization is just another person–albeit a legal person–seeking to vindicate a right. To qualify, the organization itself must meet the same standing test that applies to individuals." *N.Y.C.L.U. v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (internal quotation marks and citations omitted).

---

[2] Defendants cite case law for the point of law that, when deciding such a motion, a court may not "draw inferences from the complaint favorable to [the] plaintiff." (Dkt. No. 16, Attach. 2, at 11-12.) However, that case law appears inapposite if not supportive of the above-stated point of law. *Cf. J.S. ex rel. N.S. v Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir 2004) (stating that "we are not to draw inferences from the complaint favorable to plaintiffs," but appearing to refer to either the ordinary standard governing a challenge to jurisdiction or the standard on appeal from a district court's order when "[w]e may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue"); *Stevens v City of Oneonta*, 21-CV-1258, 2022 WL 16635301, at *3 (N.D.N.Y. Nov. 1, 2022) (D'Agostino, J.) (stating that the court is "not to draw inferences from the complaint favorable to plaintiffs," but appearing to refer to the standard governing a fact-based challenge and, in any event, later clarifying that, "[i]n considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor").

Second, an organization may "sue on behalf of its members" (called "associational" or "representational" standing). *N.Y.C.L.U.*, 684 F.3d at 294 (citations omitted). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *accord, Riverkeeper, Inc. v. Hudson Wholesalers Rest. Equip.*, 22-CV-0564, 2023 WL 6122850, at *4 (N.D.N.Y. Sept. 19, 2023) (Sannes, C.J.); *see also Antonyuk v. Chiumento*, 89 F.4th 271, 343-44 (2d Cir. 2023) ("Nor have the two organizational Plaintiffs in Hardaway articulated any associational or direct injury sufficient to support the preliminary injunction. To have associational standing, an organization must show, inter alia, that its members would otherwise have standing to sue in their own right.") (internal quotation marks omitted).

### III.   ANALYSIS

The Court begins its analysis by agreeing with Defendants that Plaintiffs have effectively conceded that Plaintiff SAF lacks *organizational* standing to bring the first claim of Plaintiff's Amended Complaint, for the reasons stated by Defendants in their memoranda of law. *See, supra*, Parts I.B.1. and I.B.3. of this Decision and Order.

With regard to whether Plaintiff SAF possesses *associational* (or representational) standing, the Court must also agree with Defendants' threshold argument, in their reply memorandum of law, that (a) more than 50 years ago, the Second Circuit ruled in *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973), that an organization lacks standing to sue under 42 U.S.C. § 1983 for violations of the rights of its members, and (b) that rule has not yet been

overruled either by an *en banc* panel of the Second Circuit or by the Supreme Court. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order. Granted, two years after *Aguayo*, the Supreme Court observed (albeit in dicta) that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members" if its members are harmed. *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (addressing Section 1983 claims). Furthermore, two years later, the Supreme Court cited *Warth* when it formulated a three-part test for this "associational" or "representational" standing. *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (not addressing Section 1983 claims). For this reason, "several of our sister circuits, unburdened by *Aguayo*, have applied the *Hunt* test for representational standing in 1983 cases." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 123 (2d Cir. 2017) (Jacobs, J., dissenting) (collecting cases).

However, as Defendants argue, the Second Circuit has repeatedly reaffirmed its rule that an organization lacks standing to sue under 42 U.S.C. § 1983 for violations of the rights of its members, most-recently in 2021.[3] The fact that the Second Circuit did not recently reject the

---

[3]   *See, e.g., Nat'l Rifle Assoc. of Am. v. Hochul*, No. 20-3187, 2021 WL 5313713, at *2 (2d Cir. 2021) ("The FAC alleges only injuries to the NRA's members. We have held, however, that organizations suing under Section 1983 must, without relying on their members' injuries, assert that their own injuries are sufficient to satisfy Article III's standing requirements.") (internal quotation marks omitted); *Conn. Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439, 447 (2d Cir. 2021) ("Because CCDL brought this case under 42 U.S.C. § 1983, it lacked standing to assert the rights of its members.") (internal quotation marks omitted); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 788 F. App'x 85, 85 (2d Cir. 2019) ("[T]he organizational plaintiffs bringing this appeal do not have standing to assert claims under 42 U.S.C. § 1983 on behalf of their members"); *N.Y. State Citizens' Coalition for Children v. Poole*, 922 F.3d 69, 74–75 (2d Cir. 2019) ("In a string of opinions, this Court has held that organizations suing under Section 1983 must, without relying on their members' injuries, assert that their own injuries are sufficient to satisfy Article III's standing requirements"); *N.Y. State Citizens´ Coal. for Children v. Velez*, 629 Fed. App'x 92, 93-94 (2d Cir. 2015) ("When an organization brings suit under 42 U.S.C. § 1983, however, this Circuit has held that it must do so on its own behalf, rather than that of its members."); *Nnebe v. Daus*, 644 F3d 147, 156 (2d Cir.

Second Amendment Foundation's claim of associational standing in *Antonyuk v. Chiumento* on this ground but did so on another threshold ground (i.e., mootness) does not relieve the Court of its concern that the Second Circuit would treat *Aguayo* as binding law (in the absence of an *en banc* decision overruling it).[4]   As a result, based on this ground, the Court must, and does, dismiss the first claim in Plaintiff's Amended Complaint to the extent it is asserted by Plaintiff SAF.

In any event, even if the Court were to assume for the sake of argument that the Second Circuit's decision in *Aguayo* had been effectively overruled by the Supreme Court in *Hunt* (and *Warth*), the Court would nonetheless grant Defendants' motion.   This is because, to the extent that Plaintiff SAF seeks monetary damages on its claim (*see* Dkt. No. 20, at ¶ 76), the Court agrees with Defendants' alternative argument that Plaintiff SAF cannot recover the compensatory and punitive damages requested: those damages are peculiar to the individual

---

2011) ("It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983 . . . ."); *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir.1984) ("Defendants correctly maintain that the League does not have standing to assert the rights of its members. This Circuit has restricted organizational standing under § 1983 by interpreting the rights it secures to be personal to those purportedly injured.").

[4]   *See Antonyuk v. Chiumento*, 89 F.4th 271, 344 (2d Cir. 2023) ("Plaintiffs Firearms Policy Coalition, Inc. and the Second Amendment Foundation premised their representational standing solely on the two named Plaintiffs, without adding supporting declarations from other members. . . .   Having made no submission about any members other than the named Plaintiffs, the organizational Plaintiffs' associational standing therefore collapses alongside that of Hardaway and Boyd [whose standing had collapsed because of mootness]."); *cf. Conn. Citizens Defense League, Inc. v. Thody*, No. 23-724, 2014 WL 177707, at *3 (2d Cir. Jan. 17, 2024) ("[E]ven assuming arguendo associational standing could be asserted by an organization on behalf of its members in a Section 1983 lawsuit, CCDL's blanket allegations that the police chiefs violated the rights of 'similarly situated CCDL members' are insufficient to confer standing on behalf of members other than the individual plaintiffs [who lack standing because of mootness] and save its current Section 1983 claims for injunctive relief from dismissal due to mootness.").

members concerned, and therefore would require individualized proof.  *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.

More specifically, as relief for its first claim, the Amended Complaint demands (among other things) a judgment awarding all Plaintiffs (including Plaintiff SAF) "compensatory and punitive damages for Defendants' violation of [all Plaintiffs'] clearly established rights under the Second and Fourteenth Amendments."  (Dkt. No. 20, at ¶ 76, and 24, Wherefore Clause "(g).")  However, to the extent that Plaintiff SAF seeks such damages for the violation of the rights of the three individual Plaintiffs, that relief would be duplicative or redundant of the damages already sought by those three members of Plaintiff SAF.[5]  Moreover, to the extent that Plaintiff SAF seeks such damages for the violation of the rights of its *other* members, individualized proof would be required of both the fact and extent of the injuries to those other members.  *See Warth*, 422 U.S. at 515-16 ("[W]hatever the injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof."); *accord*, *Bano v. Union Carbide Corp.*, 361 F3d 696, 714 (2d Cir. 2004); *Civil Serv. Emp. Ass'n v. N.Y. State Dep't of Parks, Rec., & Historic Pres.*, 689 F. Supp. 2d 267, 276 (N.D.N.Y. 2010).  Here, no factual allegations plausibly suggesting the fact and extent of such injuries have been provided.  (*See generally* Dkt. No. 20, at ¶¶ 14, 56-77, and 23, Wherefore Clause "(b).")

---

[5]     *Cf. Bonanini v. Kids Behavioral Health of Montana, Inc.*, 19-CV-0033, 2020 WL 4060263, at *3   (D. Montana June 5, 2020) ("This reading of [29 U.S.C.] § 2104 is consistent with the *Hunt* test for associational standing, which requires an association to show that 'its members would otherwise have standing to sue in their own right.'  . . .  Where those members have already sued in their own right, however, there is no statutory basis for the association to bring the exact same WARN Act claims on their behalf.") (internal citation omitted).

Finally, to the extent that Plaintiff SAF seeks prospective relief on its claim (*see* Dkt. No. 20, at ¶ 76), the Court agrees with Defendants' alternative argument that the declaratory and injunctive relief requested requires the participation of individual members of Plaintiff SAF beyond the individual Plaintiffs; and Plaintiff SAF has failed to allege (or provide proof) that its members, other than the individual Plaintiffs, have applied to reside in CHA public housing or have been forced to surrender or have been declined such residency because of the challenged lease provision. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.

More specifically, as relief for its first claim, the Amended Complaint demands (among other things) a judgment awarding all Plaintiffs (including Plaintiff SAF) the following two forms of prospective relief: (1) declaratory relief resulting from Defendants' violation of the rights of "SAF and its other members, and all other CHA tenants"; and (2) injunctive relief resulting from Defendants' violation of the rights of "SAF and its other members, and all other similarly situated individuals." (Dkt. No. 20, at ¶¶ 73-75 and 23, Wherefore Clauses "(a)" and "(b).") However, to the extent that Plaintiff SAF seeks such prospective relief for the violation of the rights of the three individual Plaintiffs, again, that relief would be duplicative or redundant of the prospective relief already sought by those three members of Plaintiff SAF. Moreover, to the extent that Plaintiff SAF seeks such prospective relief for the violation of the rights of its *other* members, even when liberally construed, Plaintiffs' Amended Complaint fails to allege facts plausibly suggesting that any of the "thousands of [SAF's] members in New York" – other than the three individual Plaintiffs – reside in, have resided in, have applied to reside in, or are

reasonably likely in the near future to apply to reside in, CHA public housing. (Dkt. No. 20, at ¶ 14.)[6]

For each of these alternative reasons, the Court grants Defendants' motion, and dismisses without prejudice the first claim of Plaintiff's Amended Complaint to the extent it is asserted by Plaintiff SAF.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss as a party to this action Plaintiff Second Amendment Foundation for lack of subject-matter jurisdiction (due to lack of standing) pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that and the first claim of Plaintiff's Amended Complaint (Dkt. No. 20) is **DISMISSED without prejudice**[7] to the extent it is asserted by Plaintiff Second Amendment Foundation; and it is further

---

[6] *Cf. Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022) ("Other than the three named plaintiffs who are CBA members – the Diocese, Catholic Charities, and CMA – the CBA has otherwise failed to identify members who have suffered the requisite harm. . . . Accordingly, we hold that the CBA lacks associational standing to sue on behalf of unnamed members."); *A Just Cause v. U.S.*, 45 F. Supp.3d 1258, 1270, n.4 (D. Colo. 2014) ("In order for [A Just Cause] to establish 'associational standing' it must show, among other things, that its members would otherwise have standing in their own right. . . .  But A Just Cause has given me no reason to suspect that its members (other than the six *Banks* defendants themselves) might have standing in their own right to litigate the due process rights of the *Banks* defendants.") (internal citations omitted).

[7] Generally, dismissals for lack of subject-matter jurisdiction due to a lack of Article III standing must be without prejudice. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("One other wrinkle: when a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss [the] case with prejudice. . . . As a result, where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed without prejudice.") (internal quotation marks and citation omitted).

**ORDERED** that the Clerk of Court is directed to **TERMINATE** Plaintiff Second Amendment Foundation as a party to this action.

Dated: May 9, 2024
       Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge