UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
ROBERT HUNTER, ELMER IRWIN, and
DOUG MERRIN,                                        Case No: 5:23-cv-01540
                                                                    (GTS/ML)
                                      Plaintiffs,

          - against –

CORTLAND HOUSING AUTHORITY, and ELLA M.
DIIORIO, in her official capacity as Executive Director
of CORTLAND HOUSING AUTHORITY,

                                      Defendants.
---------------------------------------------------------------------X

---

### DEFENDANTS, CORTLAND HOUSING AUTHORITY AND ELLA M. DIIORIO'S, MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS, ROBERT HUNTER, ELMER IRWIN AND DOUG MERRIN'S, MOTION TO COMPEL AND FOR SPOILATION SANCTIONS

---

Mark T. Houston, Esq.
NDNY Bar Roll No. 519979
The Towne Law Firm, P.C.
Attorneys for Defendants
*Cortland  Housing Authority*
*And Ella M. Diiorio*
500 New Karner Road, PO Box 15072
Albany, New York 12212
P: (518) 452-1800
F: (518) 452-6435
mark.houston@townelaw.com

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

Table of Authorities................................................................................................iii-vii

Preliminary Statement.................................................................................................1

Relevant Background and Procedural History.............................................................2

Legal Standard ...........................................................................................................3

    A.  Motion to Compel Discovery.........................................................................3

    B.  Spoilation Sanctions......................................................................................4

Argument ....................................................................................................................5

    <u>POINT I:</u>

    Defendants Cannot Be Compelled to Produce That
    Which Does Not Exist ...............................................................................7

    <u>POINT II:</u>

    Plaintiffs Have Not Demonstrated The Relevancy of
    The Criminal Background Information To Their
    Claims ......................................................................................................8

    A.  The Criminal Background Information Is
    Irrelevant to Plaintiffs' Claims ................................................................9

        i.        Plaintiffs Pleadings Do Not Establish
                That the Criminal Histories Are Relevant......................................10

        ii.      Plaintiffs Have Not Established the
                Relevancy of Their Demand to Mr.
                Hunter's Prior Complaints to the CHA...........................................11

    B.  The Potential Harm of Disclosing the Criminal
    Histories of CHA's Tenants Outweighs the
    Marginal Relevancy, If Any, Of The Information
    To This Action.........................................................................................13

POINT III:

The Criminal Histories of CHA Tenants Are
Protected Under New York Law .........................................................................................15

POINT IV:

Plaintiffs Are Not Entitled To Sanctions For
Defendants' Alleged Spoilation ..........................................................................................18

   A.  Plaintiffs Have Not Established Notice of The
      Relevance of Criminal Histories .................................................................................19

   B.  Plaintiffs Avoid Discussing That the Purged
      Documents May Be Restored ......................................................................................20

   C.  Plaintiffs Failed to Establish a Culpable State of
      Mind to Justify Sanctions............................................................................................20

Conclusion ........................................................................................................................21

# **TABLE OF AUTHORITIES**

<u>Page No.</u>

**Federal Statutes**

42 U.S.C. § 1983 ................................................................................................ 9, 10


**Rules**

FRCP 26 ...................................................................................................................5
FRCP 26(b)(1) .................................................................................................... 3, 12
FRCP 26[b][2][c][i] ..................................................................................................5
FRCP 37 ......................................................................................................7, 20, 21
FRCP 37(e) ...............................................................................................................5
FRCP 37(e)(2) ................................................................................................... 5, 20
FRE 404(b)(1) ........................................................................................................13


**Supreme Court of the United States Cases**

*Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 US 102 (1980) ..............................15
*New York State Rifle & Pistol Ass'n Inc. v. Bruen*. 597 US 1 (2022) ...................................................11


**Circuit Court Cases**

*Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86 (2d Cir. 2020) ...........................................................9
*Am. Civil Liberties Union, Inc. v. Finch*, 638 F2d 1336 (5th Cit. 1981) ..............................................5
*Boykin v. City of N.Y.*, 2023 US App. LEXIS 29744 (2d Cir. Nov. 8, 2023) .........................................9
*Canisius College v. United States*, 799 F2d 18 (2d Cir. 1986) ...........................................................15
*Carlin v. Davidson Fink LLP*, 852 F3d 207 (2d Cir. 2017) .................................................................15
*Frasers Grp. PLC v. Stanely*, 95 F4th 54 (2d Cir. 2024) ......................................................................5
*Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 [2d Cir. 2001] ...............................................18
*Gibbons v. Bristol-Myers Squibb Co.*, 919 F3d 699 (2d Cir. 2019) ...................................................15
*Kronisch v. United States*, 150 F3d 112 (2d Cir. 1998) .......................................................................4
*Lange v. United States,* 443 F2d 720 (DC Cir. 1971) ..........................................................................15
*Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F3d 324 (2d Cir. 2007) ...........................15


**Federal District Court Cases**

*Allen v. W. Point-Pepperell, Inc.*, 848 F.Supp. 423 (SDNY 1994) .......................................................3
*Blatch v. Hernandez*, 360 F.Supp.2d 595, 625-26 (SDNY 2005) ......................................................17
*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-cv-2581 (PKC), 2021 U.S. Dist. LEXIS
174989, 2021 WL 4190628 (SDNY Aug. 18, 2021) .......................................................................4
*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 FRD 47 (SDNY 2020) ...........................5

*CSI Investment Partners II, L.P. v. Cendant Corp.*, No. 00 Civ. 1422 [DAB][DFE], 2006 WL 1524591 (SDNY May 31, 2006) ..........................................................................................................12

*Dataflow, Inc. v. Peerless Ins. Co.*, Civil Action No. 3:11-CV-1127 (LEK/DEP), 2013 U.S. Dist. LEXIS 183398, at *16 (NDNY June 6, 2013) ...................................................................................18

*Du Grenier v. Encompass Ins. Co.*, 2:16-cv-281 2018 U.S. Dist. LEXIS 239028, 2018 WL 4692354 (D. Vt May 11, 2018) .........................................................................................................................3

*Dzanis v. JPMorgan Chase & Co.*, 2011 US Dist. LEXIS 137356 (SDNY Nov. 30, 2011) .....................12

*Florence v. N.Y. State Dep't of Env't Conservation*, No. 1:20-CV-00106 (LEK/CFH), 2024 U.S. Dist. LEXIS 44867 (NDNY Mar. 14, 2024) .................................................................................6

*Hill v. City of N.Y.*, 92 CIV 9131 (DLC), 1994 US Dist. LEXIS 16911 (SNDY Nov. 28, 1994) ................5

*Hill v. Motel 6*, 205 FRD 490, 492 [SD Ohio 2001]..................................................................................6

*In re Bairnco Corp. Sec. Litig.* ͵148 FRD 91 (SDNY 1993) ....................................................................9

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 FRD. 474 (SDNY 2022) ...........4

*Jones v. McMahon*, No. 5:98-CV-0374 (FJS/GHL), 2007 U.S. Dist. LEXIS 50145 (NDNY July 11, 2007) 6

*King v. Conde*, 121 FRD 180 (EDNY 1988) ...........................................................................................4

*Komlosi v. N.Y. State Office of Mental Retardation & Dev. Disabilities*, 88 Civ 1792 (JFK), 1992 U.S. Dist. LEXIS 4172, 1992 WL 77544 (SDNY Apr. 3, 1992) ....................................................4

*Kozak v. Off. Depot Inc.*, No. 1:16-CV-943 [LJV/JJM], 2020 U.S. Dist. LEXIS 261828, 2020 WL 12957618, at *1 [WDNY June 22, 2020]..........................................................................6

*Leidig v. Buzzfeed, Inc.*, No. 16-cv-542 [VM][GWG]), 2017 U.S. Dist. LEXIS 208756, 2017 WL 6512353 (SDNY Dec. 19, 2017)................................................................................ 5, 20

*Minnie Rose, LLC v. Anna Yu*, No. 15-cv-1923 (ER), 2023 U.S. Dist. LEXIS 200784 (SDNY Nov. 8, 2023) .............................................................................................................................. 4, 5

*Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. 18-cv-1997 [JS], 2021 U.S. Dist. LEXIS 124711, 2021 WL 2788432 (EDNY July 2, 2021) ..........................................................................5

*OnActuate Consulting, Inc. v. Aeon Nexus Corp.*, No. 1:20-CV-508 (LEK/CFH), 2023 U.S. Dist. LEXIS 138446 (NDNY Aug. 8, 2023) ...............................................................................7, 9

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 U.S. Dist. LEXIS 90970, 2006 WL 3771010 (SDNY Dec. 15, 2006)........................................................................................3

*Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, No. 1:20-CV-01025, 2024 U.S. Dist. LEXIS 53302 (NDNY Mar. 26, 2024).............................................................................................3

*Rosario v. City of New York*, No. 18-cv-4023 [LGS]), 2022 U.S. Dist. LEXIS 137251, 2022 WL 2965953, at *2 [SDNY July 27, 2022] ...........................................................................................5

*Russell v. Scott*, 2022 U.S. Dist. LEXIS 137485, 2022 WL 3084339 (D. Vt. Aug. 3, 2022) ...................3

*Safo v. Prabhjot Singh*, No. 19-cv-3779 (VSB)(JW), 2024 US Dist. LEXIS 74625 (SDNY Apr. 5, 2024)...9

*Sheppard v. Beerman*, No. 91 Civ. 1349 [ILG], 1999 U.S. Dist. LEXIS 11361, 1999 WL 551242 (EDNY June 28, 1999) ...................................................................................................................12

*Sidman v. Concord Arena Parking, LLC*, 2021 U.S. Dist. LEXIS 92452, 2021 WL 1940255 (EDNY May 11, 2021) .......................................................................................................................7

*State Farm Mut. Auto. Ins. Co. v. E. Med., P.C.*, No. 05 CV 3804 (ENV) (RML), 2008 U.S. Dist. LEXIS 59891 (EDNY Aug. 5, 2008).............................................................................................3, 4

*Surles v. Air France.* No. 00 Civ. 5004 [RMB] [FM], 2001 US Dist. LEXIS 10048, 2001 WL 815522 (SDNY July 19, 2001) ...................................................................................................12

*Tartaglia v. City of New York*, No. 98 Civ. 5584 [JGK][RLE], 1999 U.S. Dist. LEXIS 3153, 1999 WL 151104, at *2 [SDNY Mar. 19, 1999] .................................................................................13

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, No. 6:09-CV-853 [DNH/TWD], 2012 U.S. Dist. LEXIS 197311, 2012 WL 12896163, at *2 [NDNY Dec. 21, 2012] ............................................9

*Williams v. Herenandez*, 2003 US Dist. LEXIS 12089, *3-4 [SDNY July 11, 2003] ............................17

*Williams v. Hernandez*, 221 FRD 414, 418 (SDNY 2004) ................................................................17

## New York Statutes

PHL § 159 ...............................................................................................................15, 16, 17, 18

## Regulations

9 NYCRR § 1625-3.3 ......................................................................................................16

## NY Trial Court Cases

*30 Gray Prop. Llc v. Haynes*, 2021 NYLJ LEXIS 1174, *6 (Cty. Ct. Westchester Cnty Oct. 21, 2021) ..16, 17, 18

*In re Guardianship of Bell*, 144 Misc.2d 195, 544 NYS.2d 966 (Sur. Ct. 1989) ......................................16

*Matter of Thomas v. City of N.Y. Dept. of Hous. Preserv. & Dev.*, 12 Misc3d 547, 817 NYS2d 864 (Sup. Ct. N.Y. Cnty Mar. 27, 2006) ................................................................................15

*People v. Jones*, 160 Misc.2d 246 (Crim. Ct Kings Cnty Feb. 8, 1994) ..........................................16, 18

## Other Sources

1941 NY Laws Chapter 294, Bill Jacket .................................................................................16

8 Wright & Miller. Fed. Prac. and Proced. § 2008 (Supp. 2004) ..........................................................6

Advisory Committee Notes to 2000 Amendments to FRCP 26 ..............................................................6

FRCP 37(e) Advisory Committee's Note to 2015 Amendment ..............................................................4

Helen Gao, *City to Check Tenants' Pasts: Probes Aimed at Curbing Criminal Activity*, L.A. Daily News, Mar. 28, 2002 .........................................................................................................14

HUD, *Eliminating Barriers That May Unnecessarily Prevent Individuals with Criminal Histories from Participating in HUD Programs* (Apr. 12, 2022) .................................................................14

John J. Ammann, *Criminal Records of the Poor and Their Effects on Eligibility for Affordable Housing*, 9 J. Affordable Housing & Community Dev. L. 222 (2000) ....................................................14

M. Scot Skinner, *You Gotta Be Good To Get Public Housing*, Ariz. Daily Star, Oct. 12, 1998 ..............14

Rebecca Walsh, *Housing Boss Applauds New Crime Policy*, Salt Lake Trib., Mar. 30, 1996 ..............14

## PRELIMINARY STATEMENT

Defendants, Cortland Housing Authority (hereinafter individually referred to as "CHA" or the "Housing Authority") and Ella M. Diiorio (hereinafter individually referred to as "Ms. Diiorio"), by and through their attorneys, respectfully submit this Memorandum of Law in Opposition to Plaintiffs, Robert Hunter, Elmer Irwin, and Doug Merrins', Motion to Compel and for Sanctions.

Discovery is a fact-specific process rather than an abstract idea. Each discovery request should be tailored to the unique circumstances and details of the case at hand. Before this Court is a motion by Plaintiffs seeking an order to permit them to invade the privacy of CHA's past and present tenants. Yet, Plaintiffs fail to articulate how this information applies to their alleged deprivations of their First and Second Amendment rights. They make only the barest of arguments in support of their motion which ignore the facts of the case. Further, they ignore the marginal relevance of the information, if any, to the potential harm that may be caused by the disclosure. Plaintiffs on the instant motion failed to carry their burden in establishing the relevancy of the information requested from the CHA.

Similarly, the imposition of sanctions is a fact-specific process that is tailored to the unique circumstances and details of the case at hand. Plaintiffs again fail to meet their burden of establishing with fact and not abstract arguments that sanctions are warranted in this case. They again ignore the facts of this case to justify the present motion.

For these reasons, the Court must deny Plaintiffs' instant motion for an order compelling the production of information regarding the criminal background checks of applicants to the CHA and for spoilation.

1

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The CHA conducts background checks of all prospective tenants. (Dkt. #45-10, ¶¶9-10; Supp. Decl. of Ms. Diiorio, ¶7). A part of the background includes utilizing a third-party contractor with access to the FBI's NCIC database to review an applicant's criminal history. (*Id.*, ¶5; Supp. Decl. of Ms. Diiorio, ¶7). This is a requirement for all applicants and done in accordance with HUD guidance which the CHA utilizes in its own record retention policies. (*Id.*, ¶¶10-12). Under both HUD and FBI's guidance, the information is purged from the CHA's records no later than thirty (30) days after a determination on eligibility is made by the CHA. (*Id.*, ¶¶5, 12; Supp. Decl. of Ms. Diiorio, ¶¶7, 8). The thirty (30) days represents the outer limit of retention. (Supp. Decl. of Ms. Diiorio, ¶8). The records of applicants that are accepted into public housing may be purged even earlier than thirty (30) days. (*Id.*, ¶9). The reason the CHA holds some records for thirty (30) days is to preserve the information should the applicant choose to challenge its decision. (*Id.*, ¶8).

The CHA oversees multiple public housing developments within the County of Cortland, New York. (Dkt. #17-1, ¶5). In total, the CHA offers three hundred and eighty (380) apartments to qualifying individuals. (*Id.*, ¶¶ 6, 7, 12). One of those developments is known as the "Galatia Apartments" or "37 Galatia" and is the development Plaintiffs live in. (*Id.*, ¶¶6, 14).

On December 12, 2023, the Defendants were served *inter alia* the summons in this action. (Dkt. Nos. 8 & 9). The last tenant to move into the Galatia Apartments before the commencement of this action was on December 1, 2023. (Supp. Decl. of Ms. Diiorio, ¶9). This tenant's application would have been processed, reviewed, and accepted in November of 2023 with the criminal history being purged by December 1, 2023, or shortly thereafter. (*Id.*) The other tenants in 37 Galatia were already established by the time of commencement and their criminal histories would have been

purged well before the commencement of this action as recognized although ignored by Plaintiffs. (Dkt. #43, pg. 2; Supp. Decl. of Ms. Diiorio, ¶9).

## LEGAL STANDARD

### A. Motion to Compel Discovery

"[I]t is the discovering party who 'has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action.'" *Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, No. 1:20-CV-01025, 2024 U.S. Dist. LEXIS 53302, at *2-3 (NDNY Mar. 26, 2024) (quoting, *Russell v. Scott*, 2022 U.S. Dist. LEXIS 137485, 2022 WL 3084339, at *7 [D. Vt. Aug. 3, 2022][*further citation omitted*]). "The party opposing discovery on the grounds of relevancy also has a burden: to demonstrate that 'the requested documents either do not come within the broad scope of relevance defined pursuant to [Rule] 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure.'" *Id.* (quoting, *Du Grenier v. Encompass Ins. Co.*, 2:16-cv-281 2018 U.S. Dist. LEXIS 239028, 2018 WL 4692354, at *4 [D. Vt May 11, 2018] [*further citations omitted*]).

Further, a party resisting discovery by asserting a privilege bears the burden of establishing the existence of the asserted privilege. *State Farm Mut. Auto. Ins. Co. v. E. Med., P.C.*, No. 05 CV 3804 (ENV) (RML), 2008 U.S. Dist. LEXIS 59891, at *5-6 (EDNY Aug. 5, 2008)(quoting and citing, *Allen v. W. Point-Pepperell, Inc.*, 848 F.Supp. 423, 426-27 [SDNY 1994]; *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 U.S. Dist. LEXIS 90970, 2006 WL 3771010, at *4 [SDNY Dec. 15, 2006]). In cases arising under federal law, federal courts will apply federal privilege rules. *Id.*, 2008 U.S. Dist. LEXIS 59891, at *6. However, "federal courts recognize that

3

state privilege rules 'may illustrate important privacy interests, and 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.''" *Id.* (quoting, *Komlosi v. N.Y. State Office of Mental Retardation & Dev. Disabilities*, 88 Civ 1792 (JFK), 1992 U.S. Dist. LEXIS 4172, 1992 WL 77544, at *2 [SDNY Apr. 3, 1992][further citations omitted]) Therefore, instead of simply applying a state privilege law to a federal claim, a court should "balance the interests favoring and opposing" invocation of the privilege. *King v. Conde*, 121 FRD 180, 187 (EDNY 1988). Factors to consider include the privileged material's relevancy and importance to a party's case and the importance of full disclosure to the public interest. See *id.* 121 FRD at 194-95.

### B.  Spoliation Sanctions

To establish a violation of Rule 37(e)(2), the moving party must demonstrate that the nonmoving "party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.'" *Minnie Rose, LLC v. Anna Yu*, No. 15-cv-1923 (ER), 2023 U.S. Dist. LEXIS 200784, at *14-16 (SDNY Nov. 8, 2023) (quoting, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 FRD. 474, 494 [SDNY 2022] [further citations omitted]). The rule mirrors the common-law obligation to preserve documents in the anticipation of litigation. *Id. (citing*, FRCP 37[e] Advisory Committee's Note to 2015 Amendment).  "The obligation arises when 'the party having control over the evidence' has 'notice that the evidence is relevant to litigation.'" *Id. (*quoting, *Kronisch v. United States*, 150 F3d 112, 126 [2d Cir. 1998]; citing, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-cv-2581 (PKC), 2021 U.S. Dist. LEXIS 174989, 2021 WL 4190628, at *15 [SDNY Aug. 18, 2021])

After establishing the control and notice elements, the moving party must also demonstrate that the lost evidence cannot "be restored or replaced through additional discovery." *Id.* (quoting, FRCP 37[e]). There can be no sanction if the evidence may be provided from another source with or without the nonmoving party's assistance. *Id.* (citing, *Rosario v. City of New York*, No. 18-cv-4023 [LGS]), 2022 U.S. Dist. LEXIS 137251, 2022 WL 2965953, at *2 [SDNY July 27, 2022]; *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. 18-cv-1997 [JS], 2021 U.S. Dist. LEXIS 124711, 2021 WL 2788432, at *15 [EDNY July 2, 2021]).

Finally, after making the first two showings, the moving party must then demonstrate "the party acted with the intent to deprive another party of the information's use in the litigation." *Id.* (quoting, FRCP 37[e][2]; citing *Keurig*, 341 FRD. at 496). This a stringent and specific standard and the proof submitted must demonstrate an "'intent to deprive' the other party of evidence, not an intent to destroy the evidence for some other reason, such as to destroy outdated documents." *Id.* (quoting, *Leidig v. Buzzfeed, Inc.*, No. 16-cv-542 [VM][GWG]), 2017 U.S. Dist. LEXIS 208756, 2017 WL 6512353, at *7 [SDNY Dec. 19, 2017]; citing, *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 FRD 47, 66 [SDNY 2020]).

## ARGUMENT

Rule 26 of the Fed. R. Civ. P. governs the scope of and limits of discovery in federal proceedings. *Frasers Grp. PLC v. Stanely*, 95 F4th 54 (2d Cir. 2024). While Rule 26 provides broad discovery, it does not provide a party with boundless limits to discovery. *Id.* (quoting, FRCP 26[b][2][c][i]); *Hill v. City of N.Y.*, 92 CIV 9131 (DLC), 1994 US Dist. LEXIS 16911, *20-21 (SNDY Nov. 28, 1994) (citing inter alia, *Am. Civil Liberties Union, Inc. v. Finch*, 638 F2d 1336 [5th Cit. 1981]). The specific causes of action in a proceeding play a crucial role in shaping the scope and limitation of discovery. See, *Jones v. McMahon*, No. 5:98-CV-0374 (FJS/GHL), 2007

U.S. Dist. LEXIS 50145, at *55-56 (NDNY July 11, 2007) (*quoting*, *Hill v. Motel 6*, 205 FRD 490 (SD Ohio 2001); *citing*, 8 Wright & Miller. Fed. Prac. and Proced. § 2008 [Supp. 2004]; Advisory Committee Notes to 2000 Amendments to FRCP 26, *reprinted in* 192 FRD 389). Discovery requests must be tailored to obtain evidence relevant to these specific claims or defenses. *Id.* A plaintiff cannot use discovery to pursue information unrelated to the causes of action or engage in fishing expeditions. *Florence v. N.Y. State Dep't of Env't Conservation*, No. 1:20-CV-00106 (LEK/CFH), 2024 U.S. Dist. LEXIS 44867, at *12-13 (NDNY Mar. 14, 2024) (quoting, *Kozak v. Off. Depot Inc.*, No. 1:16-CV-943 [LJV/JJM], 2020 U.S. Dist. LEXIS 261828, 2020 WL 12957618, at *1 [WDNY June 22, 2020]).

The instant motion concerns Plaintiffs' demand for information pertaining to the criminal backgrounds of CHA's tenants, both past and present. The demand encompasses the information of two (2) groups of individuals. The first group, or "Existing Tenants", are those individuals that have been or were living in CHA's developments prior to the commencement of this action. These are the individuals whose presence would have compelled Plaintiffs to "feel the need to keep firearms in their homes for self-defense purposes." (Dkt. #47-1, pg. 12). The second group, or the "New Tenants", are those individuals that have been accepted and moved into CHA's developments after the commencement of this action. This differentiation is important to demonstrate the absurdity of Plaintiffs arguments on this motion, in particularly the present motion for sanctions.

In either case, Plaintiffs failed to demonstrate the relevancy of either group's criminal background information to their current case. There is no logical nexus between either the Existing Tenants or New Tenants criminal background information and Plaintiffs claims that the CHA's "Firearms Ban" disenfranchised them from their Second Amendment right to bear arms or Mr.

Hunter's First Amendment rights.  Plaintiffs merely contend that because they have alleged the need for self-defense in their Amended Complaint that they can invade the privacy of other tenants. They also present an implausible argument that the information is needed to rehabilitate Mr. Hunter's credibility. However, they fail to demonstrate to the Court that their demands are proportional to the needs of the case against the invasion of other tenants' privacy. Furthermore, they failed to show any of the necessary elements to establish spoilation under Rule 37.

Hence, their present motion must be denied as a matter of law given that they failed to establish the relevancy of their demand to their claims or that it is proportional to this case given sensitive and confidential nature of this information as recognized by Section 159 of N.Y. Pub. Hous. Law and that a protective order is warranted to prevent Plaintiffs from seeking this information through other sources.

## POINT I

### DEFENDANTS CANNOT BE COMPELLED TO PRODUCE THAT WHICH DOES NOT EXIST

It is axiomatic that discovery cannot be had where the item or information demanded does not exist. *OnActuate Consulting, Inc. v. Aeon Nexus Corp.*, No. 1:20-CV-508 (LEK/CFH), 2023 U.S. Dist. LEXIS 138446, at *22 (NDNY Aug. 8, 2023) (citing, *Sidman v. Concord Arena Parking, LLC*, 2021 U.S. Dist. LEXIS 92452, 2021 WL 1940255, at *2 [EDNY May 11, 2021]). From the onset of this motion, Plaintiffs ignored the simple fact that information they primarily seek was purged from CHA records well before the commencement of their action. Instead of acknowledging this fact, Plaintiffs continue to cast baseless aspersions on Defendants. (Dkt. #43, pg. 2).

Plaintiffs assert they need the information contained in the criminal background checks of CHA's tenants for two reasons. One is to support their claim that in their Amended Complaint "they feel the need to keep firearms in their homes for self-defense purposes." The second being a need to rehabilitate Mr. Hunter's impugned credibility. With either reason, the information they seek pertains to Existing Tenants at the time of commencement. These are the tenants who were living in their community that would have made Plaintiffs feel the need to protect themselves or were the tenant Mr. Hunter complained of to the CHA. This information was purged from the CHA files, as well as its contractor, before the commencement of this action. (Dkt. #45-10, ¶¶5, 10; Supp. Decl. of Ms. Diiorio, ¶9). Specifically, the CHA purges the criminal histories within thirty (30) days of notice to the applicant of a decision. (*Id.*, ¶10). This is the outer limit of time for information retention in case of a legal challenge. The information for accepted tenants is often purged earlier than thirty (30) days from notice. With respect to Plaintiffs' development, the last tenant of the Existing Tenant group moved into Plaintiffs' development on December 1, 2023. This tenant's criminal history, along with all the other Existing Tenants, in Plaintiffs' development would have been purged by the CHA before the commencement of this action or the service of the pleadings.

Hence, the CHA cannot be compelled to produce the criminal histories of the Existing Tenants when that information was purged before Plaintiffs commenced the instant action.

## POINT II

### PLAINTIFFS HAVE NOT DEMONSTRATED THE RELEVANCY OF THE CRIMINAL BACKGROUND INFORMATION TO THEIR CLAIMS

Plaintiffs, in their papers, inadequately address the relevancy of their demand to their claims. (Dkt. #47-1, pgs. 12-13). Plaintiffs present two sparse arguments to justify their invasion

of the privacy of CHA's other tenants. First, the information is relevant given their pleadings. Second, the information is relevant to Mr. Hunter's credibility. With either case, Plaintiffs arguments fail.

### A. The Criminal Background Information Is Irrelevant to Plaintiffs' Claims.

The relevancy of the demanded criminal background information is determined by the claims asserted in this action. *Onactuate Consulting, Inc.*, No. 1:20-CV-508 (LEK/CFH), 2022 U.S. Dist. LEXIS 52525, at *13 (quoting, *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, No. 6:09-CV-853 [DNH/TWD], 2012 U.S. Dist. LEXIS 197311, 2012 WL 12896163, at *2 [NDNY Dec. 21, 2012]); *Safo v. Prabhjot Singh*, No. 19-cv-3779 (VSB)(JW), 2024 US Dist. LEXIS 74625, *3 (SDNY Apr. 5, 2024)(quoting, *In re Bairnco Corp. Sec. Litig.¸* 148 FRD 91, 96 [SDNY 1993]). Hence, the relevancy of the CHA's tenants' criminal backgrounds, either the Existing or New Tenants, is viewed from the perspective of Plaintiffs' claims which are brought under 42 U.S.C. § 1983.

To prevail under 42 U.S.C. § 1983, Plaintiffs are required to "show that there has been a denial of a right, privilege or immunity secured by the Constitution or laws of the United States and that the deprivation of such right, privilege or immunity occurred under color of state law. *Boykin v. City of N.Y.*, 2023 US App. LEXIS 29744, *2-3 (2d Cir. Nov. 8, 2023) (citing, 42 U.S.C. § 1983). When plaintiffs seek to hold a municipal entity or public corporation, such as the CHA, liable for an alleged violation of § 1983, they must also establish that: (1) CHA had an official policy, custom or practice; (2) that caused the alleged the Plaintiffs to be subjected to; (3) the deprivation of a constitutional right. *Id.* (quoting, *Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 97 [2d Cir. 2020]). Pertinent to this case, Plaintiffs will have to demonstrate the foregoing elements with respect to the alleged violation of their Second Amendment right to bear arms. Plaintiffs have

not demonstrated that the criminal background information of the Existing or New Tenants is relevant to any of the elements that they must prove before a jury. (Dkt. #47-1, pg. 12).

    **i.**   **Plaintiffs' Pleadings Do Not Establish That The Criminal Histories Are Relevant.**

Initially, Plaintiffs make a fleeting argument that because they have alleged that "they feel the need to keep firearms in their homes for self-defense purposes" the information is relevant (*Id.*) However, even a brief review of the Amended Complaint does not support their position. (*See*, Dkt. #20). While they do assert firearms are needed for self-defense, most of those paragraphs in which self-defense is noted in the Amended Complaint are mere recitations of case law. (*Id.,* ¶¶ 4, 5, 29, 35, 58, 61, 62, 63, 67, 69). In the context of this action, the Plaintiffs only discuss their individual need for firearms for self-defense in three boilerplate statements that read: "[b]ut for the Firearms Ban, [individual plaintiff] would own and possess firearms for self-defense and other lawful purposes in his home, including and especially handguns." (*Id.*, ¶¶, 11, 12, 13). Plaintiffs parrot this statement several times in their declarations in support of their application for a TRO and in their reply papers. (Dkt Nos., 2-5, ¶4; 2-6, ¶4; 2-8, ¶4, 19-1, ¶7, 19-2, ¶7, 19-3, ¶7). However, these formulaic statements do not establish that Plaintiffs allege that they feel the need to keep firearms in their homes. It is a considerable effort to read into the Amended Complaint any safety concerns on the part of Plaintiffs.

Even if this Court's accepts Plaintiffs' argument that they have pled that "they feel the need to keep firearms in their homes for self-defense purposes", they have yet to credibly articulate the relevancy between their Section 1983 claims and the criminal background information. There is no nexus between the information contained in the criminal background checks of the Existing or New Tenants and Plaintiffs Section 1983 claims. Certainly, there is no relevancy as it pertains to

the New Tenants. It would be illogical for Plaintiffs to argue they felt the need to protect themselves from individuals that were not even tenants at the time they made their statements.

Furthermore, Plaintiffs' prior arguments undercut their credibility on this point. They now argue that they need to justify a reason to own or possess a firearm. However, Plaintiffs' counsel at the time the TRO was argued:

> [a]nd although possibly not incredibly relevant, I would just like to note, of course, your Honor, there are many reasons why individuals decide that they would like to acquire a firearm. Perhaps they've decided that they feel uncomfortable and they would like to have a means of self-defense; perhaps they have taken a up a means of self-defense; perhaps they have taken up an interest in going to the shooting range; perhaps they would like to go hunting. But they're free to decide that whenever they want. They can have a change in their philosophy, a change in their lifestyle, anything. So that's not relevant. (Dkt. #27, pgs. 24:18/25:2).

Plaintiffs' prior argument to this Court they did not need to prove a reason for their desire to own a firearm, just that they wanted to have one. Similarly, this Court (Hon. G. Suddaby) in considering irreparable harm rejected the idea that individual Plaintiffs would have to "demonstrate some special need for self-protection distinguishable from that of the general community" in order demonstrate irreparable harm. (Dkt. #28, pg. 27) (*citing*, *New York State Rifle & Pistol Ass'n Inc. v. Bruen*. 597 US 1 [2022]).

Plaintiffs' argument that they now need the criminal background information of CHA's tenants lacks credibility based upon their prior arguments and this Court's own opinion.

### ii.     Plaintiffs Have Not Established the Relevancy of Their Demand to Mr. Hunter's Prior Complaints to the CHA.

Next, Plaintiffs argue that they need the information contained in the criminal background checks to rehabilitate Mr. Hunter's credibility. This is equally without merit. They premise their argument on a characterization of Ms. Diiorio's prior statement during the TRO application. (Dkt. #45-10, ¶19). Ms. Diiorio in her declaration in opposition to Plaintiffs TRO challenged the

11

rationale behind Mr. Hunter's motives for commencing this instant action as being part of a series of retaliatory legal actions after CHA sought to evict him for his failure to disclose additional sources of income. (Dkt. #16-1, ¶¶16-17; Dkt. #45-10, ¶13). While Plaintiffs frame this statement as a challenge to the soundness of Mr. Hunter's credibility in his perception of criminal activity, the statement was made to challenge Plaintiff-Hutner's motives for pursuing this action. Furthermore, Mr. Hunter's prior statement further erodes their current argument. Mr. Hunter in response to Ms. Diiorio initially characterized the statement as a "thinly-veiled accusation of racism". (Dkt. #19-1, ¶11). Further, he also acknowledged to the Court that Ms. Diiorio's statement impugning his credibility was nullified by her later acknowledgement that that CHA tenants may, and some do, have criminal histories. (*Id.*).

While Plaintiffs are permitted a good deal of latitude to seek discovery on any "matter that is relevant to any party's claim or defense", they must establish "good cause" where the discovery is sought solely to unearth potential impeachment material. *Dzanis v. JPMorgan Chase & Co.*, 2011 US Dist. LEXIS 137356, *17-18 (SDNY Nov. 30, 2011)(quoting, FRCP 26[b][1]; citing, *CSI Investment Partners II, L.P. v. Cendant Corp.*, No. 00 Civ. 1422 [DAB][DFE], 2006 WL 1524591, at *2 [SDNY May 31, 2006]). Furthermore, the courts have not found such "good cause" exists were the request is merely speculative. *Id.* (citing, *Surles v. Air France*. No. 00 Civ. 5004 [RMB] [FM], 2001 US Dist. LEXIS 10048, 2001 WL 815522, at *4 [SDNY July 19, 2001][no good cause for discovery where request is based on "nothing more than speculative hope that useful impeachment material will be unearthed"]; *Sheppard v. Beerman*, No. 91 Civ. 1349 [ILG], 1999 U.S. Dist. LEXIS 11361, 1999 WL 551242, at *1 [EDNY June 28, 1999][evidence that may impeach "does not, without more, mean that such evidence is discoverable"]; *Tartaglia v. City of New York*, No. 98 Civ. 5584 [JGK][RLE], 1999 U.S. Dist. LEXIS 3153, 1999 WL 151104, at *2

[SDNY Mar. 19, 1999]["Evidence which may be useful for impeachment purposes is not relevant to the subject matter of the litigation, but involves collateral issues of credibility."]).

Here, Plaintiffs failed to demonstrate that there is "good cause" to permit them to invade the privacy of CHA's other tenants to fish for impeachment material or the relevancy of such information to their claims. There is no credible argument that can be made to consider the criminal background history of any New Tenant to rehabilitate on this point. Similarly, Plaintiffs failed and cannot argue the relevancy of the criminal histories of those Existing Tenants living in other developments.

They have also failed to demonstrate any "good cause" to discover the criminal histories of Existing Tenants at the Galatia Apartments. Plaintiffs' rationale for their demand is a practice in speculation. Plaintiffs seek to utilize the criminal histories of Existing Tenants to establish then-present-day actions. Outside of being highly discriminatory, it is also highly speculative. Society in general recognizes that past criminal acts are not dispositive in demonstrating of a person's character or that on a particular day the person acted in accordance with that character. *See,* FRE 404(b)(1). Plaintiffs wish to fish around the criminal histories of CHA's Existing Tenants in the hopes of finding some information to demonstrate the credibility of Mr. Hunter or otherwise impeach Ms. Diiorio. However, they have not established in their papers that good cause exists given Mr. Hunter's prior statements to this Court and that there are other means Plaintiffs can seek information to rehabilitate Mr. Hunter's credibility which does not involve invading the privacy of other tenants.

**B.  The Potential Harm of Disclosing the Criminal Histories of CHA's Tenants Outweighs the Marginal Relevancy, If Any, Of The Information To This Action.**

There exists a tangible risk of harm in the release of the criminal background information of CHA's tenants. (Supp. Decl. of Ms. Diiorio, ¶¶10-14). The wholesale release of the criminal

background information as sought by Plaintiffs has the potential to create a chilling effect on applications to public housing. (*Id.*, ¶11). The fact that PHAs screen applicants' backgrounds is not new, PHAs began to enhance their criminal background checks and procedures in the 1990's.[1] The United States Department of Housing and Urban Development ("HUD") recently began reviewing PHAs' policies on criminal background checks and their effect acting as a barrier to housing. *See*, HUD, *Eliminating Barriers That May Unnecessarily Prevent Individuals with Criminal Histories from Participating in HUD Programs* (Apr. 12, 2022)(*available at* https://www.hud.gov/sites/dfiles/Main_/documents/Memo_on_ Criminal_Records.pdf*); Supp. Decl. of Ms. Diiorio, ¶11. The release of the criminal histories of CHA's tenants has the potential to deter individuals that need housing from applying based on the potential that their record could be disclosed at some future time. (Supp. Decl. of Ms. Diiorio, ¶¶10-14)

There is also the potential for harm to CHA's current tenants. (*Id.*). The exposure of tenants' criminal histories could cause stigmatization or isolation by other tenants in the community. (*Id.*) Plaintiffs' justification of the need to establish the likelihood of criminal activity occurring in their development based on past criminal history smacks of criminal record discrimination. (*Id.*, ¶¶10-15). It is not an unforeseeable outcome that should the criminal histories be disclosed individuals would chastise and be pushed to leave Plaintiffs development. (*Id.*, ¶¶12-14). There is also a degree

---

[1] *See* John J. Ammann, *Criminal Records of the Poor and Their Effects on Eligibility for Affordable Housing*, 9 J. Affordable Housing & Community Dev. L. 222, 224 (2000) ("Federal policy makers have joined the effort by requiring more careful scrutiny of the backgrounds of applicants for public and subsidized housing."); Helen Gao, *City to Check Tenants' Pasts: Probes Aimed at Curbing Criminal Activity*, L.A. Daily News, Mar. 28, 2002, at N3 (reporting that Department of Housing and Urban Development had ordered background checks in 2001 as part of Quality Housing and Work Responsibility Act); M. Scot Skinner, *You Gotta Be Good To Get Public Housing*, Ariz. Daily Star, Oct. 12, 1998, at 1A (reporting that Tucson was conducting stricter background checks under federal "One Strike, You're Out" policy); Rebecca Walsh, *Housing Boss Applauds New Crime Policy*, Salt Lake Trib., Mar. 30, 1996, at D2 (noting that Salt Lake City Housing Authority began screening criminal records in 1990, six years before "One Strike, You're Out" policy).

of irony in Plaintiffs seeking this information as Mr. Hunter has objected to criminal background checks in the past, believing them to be discriminatory. (Dkt. Nos. 45-9, pgs. 4; 45-10, ¶16).

Additionally, Plaintiffs ignore the fact that if they wanted to prove any present-day criminality, they could easily review local law enforcement and court records of recent criminal proceedings that would be far more dispositive on Mr. Hunter's assertions than attempting to utilize tenants' prior criminal histories to establish present criminal activities.

It is respectfully submitted that Plaintiffs' motion should be denied, and a protective order put in place to prevent further attempts by Plaintiffs to inquire into CHA's tenants' files given that their demands are not proportional to the needs of this case.

## POINT III

### THE CRIMINAL HISTORIES OF CHA TENANTS ARE PROTECTED UNDER NEW YORK LAW

While the language of a statute is ordinarily regarded as conclusive, it cannot prevail over strong contrary indications of legislative intent. *Canisius College v. United States*, 799 F2d 18, 24 (2d Cir. 1986) (*quoting*, *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 US 102, 108 [1980]); *Lange v. United States,* 443 F2d 720, 722-23 (DC Cir. 1971). The interpretation of a statute must be construed so that it does not lead to anomalous or unreasonable results. *Carlin v. Davidson Fink LLP*, 852 F3d 207, 214 (2d Cir. 2017) (*quoting*, *Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F3d 324, 327 [2d Cir. 2007]); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F3d 699 (2d Cir. 2019)(*further citations omitted*).

Section 159 of New York's Public Housing Law provides that information acquired from tenants of public housing shall not be open to the public nor be used in any court action or proceeding. *Matter of Thomas v. City of N.Y. Dept. of Hous. Preserv. & Dev.*, 12 Misc3d 547, 551, 817 NYS2d 864, 867 (Sup. Ct. N.Y. Cnty Mar. 27, 2006) (*citing*, PHL § 159). In applying for

public housing an applicant is required to reveal detailed financial and other sensitive information that should be protected from disclosure. *People v. Jones*, 160 Misc2d 246, 247, 608 NYS2d 795, 796 (Crim. Ct. Kings Cnty 1994). The intent of Section 159 is to protect this information from unnecessary exposure. *30 Gray Prop. Llc v. Haynes*, 2021 NYLJ LEXIS 1174, *6 (Cty. Ct. Westchester Cnty Oct. 21, 2021) (*quoting*, 1941 NY Laws Chapter 294, Bill Jacket p. 18). Hence, the intent of the New York Legislature was to keep the information gained from applicants to public housing and Section 8 housing private and confidential. *Id.*; 9 NYCRR § 1625-3.3 (Lexis Advance through April 5, 2024).

The legislature included one exception to this privilege which occurs when a PHA is a party in an action or proceeding. PHL § 159. Plaintiffs read this exception so broadly to obliviate the intent of the legislature to keep this information gained from an applicant from the public. They base their reading on two cases that are distinguishable from the case at bar.

In *People v. Jones*, *160 Misc.2d 246 (Crim. Ct Kings Cnty Feb. 8, 1994)*, the Department of Parole served a judicial subpoena duces tecum upon the New York City Housing Authority seeking a change of address information for a tenant of the NYCHA. *Id.*, 160 Misc.2d at 247. The NYCHA resisted the subpoena arguing *inter alia* Section 159 protected the information from disclosure. *Id.* 160 Misc.3d at 249. The court rejected the arguments finding that an address is not the type of information given by a tenant to the NYCHA and would not fall in the statute's purview. *Id.* Furthermore, the court rejected the NYCHA's broad reading of the statute because it resulted in an absurdity of allowing criminal fugitives to reside beyond the reach of the law in public housing – which the legislature could not have intended as a result. *Id.*, 160 Misc.2d at 250.

Similarly, *In re Guardianship of Bell, 144 Misc.2d 195, 544 NYS.2d 966 (Sur. Ct. 1989)* does not support Plaintiffs' reading of the statute. *Id.*, 144 Misc.2d at 196-97, 544 NYS.2d at 967

(the records of the PHA are not subject to disclosure in guardianship hearing when the PHA is not a party to the hearing).

Plaintiffs fail to inform the Court that there are no cases that are analogous to the issue at bar. They are correct in stating that the exception has been recognized by the courts of New York and this Circuit. *See e.g.*, *30 Gray Prop. Llc*, 2021 NYLJ LEXIS 1174, *6 (quashing a subpoena served on PHA for documents pertaining to income and assets of Section 8 tenant to challenge tenants Hardship Declaration during the Covid-19 pandemic given *inter alia* the PHA was not a party to the non-payment proceeding); *Blatch v. Hernandez*, 360 F.Supp.2d 595, 625-26 (SDNY 2005)(recognizing the exception found in Section 159 is applicable to a tenant's mental disability status during a non-payment proceeding given the fact that the proceeding was brought by the NYCHA). However, the application of the exception has been limited to information about a party in the action or proceeding). *See*, *Blatch*, 360 F.Supp.2d at 625-26; *Williams v. Hernandez*¸221 FRD 414, 418 (SDNY 2004)(citing, PHL § 159; *Williams v. Herenandez*, 2003 US Dist. LEXIS 12089, *3-4 [SDNY July 11, 2003])(finding PHL § 159 does not protect plaintiff-tenant's file from disclosure when the PHA is a party to the action). The only cases directing disclosure, or opining on the applicability of the exception, deal with a situation where the tenant whose information is held by the PHA would be disadvantaged in their defense or prosecution. *See, Blatch*, 360 F.Supp.2d at 625-26. As much as Plaintiffs assert that the Defendants have not provided any authority to support resisting disclosure, so to do the Plaintiffs.

The difference between the two readings is Plaintiffs' results in absurdity while Defendants follows the intent of the statute. According to Plaintiffs, so long as CHA is named in an action, as either plaintiff or defendant, the personal and confidential information held by it is subject to boundless disclosure. In Plaintiffs reading, they are entitled to invade the privacy of CHA's tenants

17

merely because the CHA is named as a party in their action. This reading conflicts with the clear intent of New York's legislature to protect a public housing applicant's information from unnecessary exposure. *30 Gray Prop. Llc,* 2021 NYLJ LEXIS 1174, at \*6; *Jones*, 160 Misc2d at 249.

Although Section 159 of the PHL provides for the release of records when the CHA is a party to an action or proceeding, Plaintiffs' reading of the exception undermines the original intent of the statute which is to protect applicants' confidential information. It could not have been the intent of the legislature to allow Plaintiffs to invade the privacy of other tenants merely by naming the CHA in this action. It follows from Plaintiffs' logic that their own files could be reviewed by any party of an action in which the CHA is a named party. This is an absurd result given the private and confidential nature of these records and the degree of protection they should be afforded as recognized at the federal and state level. (Dkt. #45-10, ¶¶9-12). Rather, a more reasoned reading of the exception is to permit Plaintiffs to review their own records so that the CHA is not able to utilize information gained from their own application process against them in this proceeding.

## POINT IV

### PLAINTIFFS ARE NOT ENTITLED TO SANCTIONS FOR DEFENDANTS' ALLEGED SPOILATION

Plaintiffs' specious arguments regarding spoilation inaccurately reflect the facts of this case. "'The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence will be relevant to the future litigation.'" *Dataflow, Inc. v. Peerless Ins. Co.*, Civil Action No. 3:11-CV-1127 (LEK/DEP), 2013 U.S. Dist. LEXIS 183398, at \*16 (NDNY June 6, 2013) (*quoting, Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 [2d Cir. 2001][*further citations omitted]*).

**A.  Plaintiffs Have Not Established Notice of The Relevance of Criminal Histories.**

As discussed in Point I, Plaintiffs completely ignore the bulk of the information demanded was purged well before they commenced this action. Nevertheless, Plaintiffs' initial argument on this point is that a duty to preserve attached to the Defendants on December 12, 2023, when their initial Complaint was served on Defendants. However, they fail to explain to the Court how the Defendants would have known of their relevance at that time. As discussed *supra*, there is at best a tenuous relationship between the criminal histories and Plaintiffs claims.  The initial complaint, like the Amended Complaint, just utilized boilerplate statements regarding self-defense. (Dkt. #1). Similarly, Plaintiffs motion for a temporary restraining order and preliminary injunction did not inform Defendants that Plaintiffs would be seeking these records as part of their case; rather, Plaintiffs argument indicated that their position that they did not need to justify a reason for ownership of firearms besides that it was their right to do so. (Dkt. #2-1, pg. 11). Defendants could not have anticipated that Plaintiffs would seek to review these records.

Plaintiffs having failed to articulate a convincing argument next argue that January 3, 2024, as the date of notice of the relevancy of this information. However, as discussed above and in the accompanying declaration of Ms. Diiorio, the Plaintiffs are mischaracterizing Ms. Diiorio's prior statement. (Dkt. #45-10, ¶19). Ms. Diiorio's statement challenges Mr. Hunter's rationale in pursuing this action based upon his prior course of lodging complaints and legal actions against the CHA after his eviction proceedings. (*Id.*., ¶20; Dkt. #45-9).  Nevertheless, they still have not demonstrated notice on the part of Defendants. Furthermore, Plaintiffs failed to establish how the criminal background checks are relevant to their causes of action.

**B.  Plaintiffs Avoid Discussing That the Purged Documents May Be Restored.**

On the second element, Plaintiffs again failed to demonstrate that the purged records after the commencement of this action cannot be restored or replaced through additional discovery. *Minnie Rose, LLC*, No. 15-cv-1923 (ER), 2023 U.S. Dist. LEXIS 200784, at *14-16. They do not even attempt to discuss this element in their moving papers. As set forth in Ms. Diiorio's declaration, Defendants have contacted their vendor to inquire on the availability of these records. (Dkt. #45-10, ¶5). The vendor informed CHA that the FBI requires the vendor to purge its files within twenty-four (24) hours of the CHA's review. (*Id.*) However, the vendor indicated that it could recreate parts of the file at significant cost. (*Id.*, ¶6). The fact that the information may be replaced cuts against Plaintiffs motion.

### C.  Plaintiffs Failed to Establish a Culpable State of Mind to Justify Sanctions.

Finally, Plaintiffs have again failed to demonstrate the third element to establish spoliation under Rule 37 – an intent to deprive. *Minnie Rose, LLC*, No. 15-cv-1923 (ER), 2023 U.S. Dist. LEXIS 200784, at *14-16 ("This a stringent and specific standard and the proof submitted must demonstrate an "'intent to deprive' the other party of evidence, not an intent to destroy the evidence for some other reason, such as to destroy outdated documents.")(quoting, FRCP 37[e][2]; *Leidig v. Buzzfeed, Inc.*, No. 16-cv-542 [VM][GWG]), 2017 U.S. Dist. LEXIS 208756, 2017 WL 6512353, at *7; citing *Keurig*, 341 FRD. at 496). The CHA in accordance with HUD guidance only retains the results of criminal background checks for thirty (30) days or less, the time it takes to confirm eligibility for public housing. (Supp. Decl. of Ms. Diiorio, ¶8). As stated by Ms. Diiorio, after that time the CHA destroys the paper record and CHA's vendor shuts down the link in accordance with HUD guidance and the vendor does the same pursuant to FBI requirements. (*Id.;* Dkt. #45-10, ¶¶5, 9-12). Plaintiffs failed to inform this Court that it was explained that the relevant records are purged once the CHA decides on an applicant's eligibility and vendor's email link is

extinguished. The purge occurs as part of a regulated process to insure the privacy of applicants' information.  Most of the documents Plaintiffs seek were purged well before the initiation of this action. (See, Decl. of Ms. Diiorio, ¶9).

Hence, it is respectfully submitted that Plaintiffs' motion for sanction pursuant to Rule 37 must be denied as a matter of law given that they have failed to demonstrate any of the elements to establish spoilation.

## **CONCLUSION**

In view of the foregoing points, and supporting documents, it is respectfully submitted that the Plaintiffs have failed to demonstrate their entitlement to the information contained in the criminal background histories of the Cortland Housing Authority's tenant and have failed to demonstration their entitlement to spoilation sanctions against Defendants.

**DATED:**     May 24, 2024
                    Albany, New York

                                        Respectfully submitted,

                            By: ___*s/ Mark T. Houston*_____
                                  Mark T. Houston, Esq.
                                  NDNY Bar Roll No. 519979
                                  The Towne Law Firm, P.C.
                                  Attorneys for Defendants
                                  500 New Karner Road, PO Box 15072
                                  Albany, New York 12212
                                  P: (518) 452-1800

Cc:  Counsel of Record (*via ECF*)