UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT HUNTER, ELMER IRWIN, and DOUG
MERRIN,                                                    Case No: 5:23-cv-01540
                                       Plaintiffs,                    (GTS/ML)

               - against –                              **ATTORNEY**
                                                        **DECLARATION OF**
CORTLAND HOUSING AUTHORITY, and ELLA M.                 **MARK T. HOUSTON IN**
DIIORIO, in her official capacity as Executive Director **OPPOSITION TO**
of CORTLAND HOUSING AUTHORITY,                          **PLAINTIFFS' MOTION TO**
                                                        **COMPEL AND FOR**
                                       Defendants.      **SANCTIONS**
-----------------------------------------------------------------X

        MARK T. HOUSTON, Esq., an attorney duly admitted to practice law in the State of New

York and within the jurisdictional district of this Court, declares that the following statements are

true and correct under penalty of perjury.

        1.      I am an attorney at law admitted to practice before this Court.

        2.      I am a partner at The Towne Law Firm, P.C., attorneys for Defendants, Cortland

Housing Authority and Ella Diiorio (hereinafter collectively referred to as the "Defendants").

        3.      I submit this declaration in opposition of Plaintiffs, Robert Hunter, Elmer Irwin,

and Doug Merrin's, motion to compel pursuant Fed. R. Civ. P. 26 and for spoilation sanctions

pursuant to Fed. R. Civ. P. 37.

        4.      Pursuant to Local Rule 37.1, Defendants will rely on discovery documents

previously filed with this Court in relation to the instant motion and will refer to said documents

by their ECF filing document number.

        5.      In addition, Defendants submit in opposition to Plaintiffs' instant motion the

Supplemental Declaration of Ella M. Diiorio.

1

## RELEVANT PROCEDURAL HISTORY

6.      On December 7, 2023, Plaintiffs commenced this action against Defendants for equitable and monetary relief. (*See generally,* Dkt. #1). They asserted that Defendants had violated their Second Amendment right to bear arms based upon a provision found in their lease that they contended prohibited plaintiffs from owning or possessing firearms on CHA property (referred by Plaintiffs as the "Firearms Ban") while they were tenants of the CHA. (*See generally, Id.*). Defendants answered Plaintiffs' Complaint and opposed Plaintiffs' application for a temporary restraining order and preliminary injunction. (Dkt. Nos. 14, 15, 17).

7.      In response to a motion to dismiss, Plaintiffs amended their complaint on January 20, 2024. (Dkt. #20). Plaintiffs expanded their complaint to now have four counts against Defendants. (*Id.*) Plaintiffs collectively brought Counts One and Four against Defendants based upon their theory that the Firearms Ban violated their Second Amendment.[1] (Dkt. #20, ¶¶ 56-77, 94-100). Plaintiff-Hunter in Counts Two and Three alleges violations of his First Amendment Rights because of the removal of a Facebook post. (*Id.,* ¶¶ 78-93).

8.      On January 28, 2024, this Court granted Plaintiffs a temporary restraining order enjoining Defendants from enforcing or requiring anyone to comply with the Firearms Ban. (Dkt. #28).

9.      On February 6, 2024, the parties conferred in accordance with Fed. R. Civ. P 25(f) to discuss a discovery and trial timelines as well as other matters.

10.      On February 14, 2024, Plaintiffs served on the CHA their Requests for Admissions, First Set of Interrogatories, and Requests for Production (Dkt. Nos. 45-1, 45-2, 45-3, respectively).

---

[1] Count One is brought under 42 U.S.C. § 1983 for violation of Plaintiffs' Second Amendment Rights as applicable to the States through the Fourteenth Amendment. Count Four parallels Plaintiffs theory in Count One but is brought under Equal Protection Clause of the Fourteenth Amendment.

Relevant to the instant motion, Plaintiffs requested that CHA produce "[a]ll background checks of current or past CHA tenants which reveal criminal history of any kind, including arrests, convictions, youthful offender adjudications, deferred prosecutions, adjournments in contemplation of dismissal, or any other disposition." (Dkt. #45-3, Req. #17)

11.     Then on February 15, 2024, Plaintiffs served on Ms. Diiorio their Requests for Admissions, First Set of Interrogatories, and Requests for Production from her. (Dkt. Nos. 45-4, 45-5, 45-6, respectively.). Relevant to this instant motion, Plaintiffs requested Ms. Diiorio "[i]dentify all efforts to investigate tenants' criminal backgrounds personally undertaken or overseen by you from 2005 to the present, including a description of the individual responsible for investigation and any result obtained." (Dkt. #45-5, Interr. #9).

12.     After receiving the requests, the parties did speak on the issue of the production of information pertaining to other CHA tenants which was then brought to this Court's attention at the Rule 16 conference held on March 7, 2024.

13.     Defendants served Plaintiffs with their responses to the Requests for Admissions and Interrogatories and sought additional time to respond to the demands to produce documents. (Dkt. Nos. 45-7, 45-8). Ms. Diiorio in response to Interrogatory #9 stated:

> Ms. Diiorio objects to Interrogatory No. 9 as an overly broad fishing expedition for irrelevant information that seeks information that is not relevant to the four (4) causes of action set forth in the operative complaint.  Subject to and without waiving said objection, it is the policy and requirement of the CHA to conduct a criminal background check for every applicant to ensure an applicant's eligibility for public assistance. Applicants are required to submit to a background check by providing a fingerprint which is securely sent to an independent third party that conducts the search. A secured email is then sent back to the executive director of CHA with a link containing the results which are then printed out and provided to the CHA occupancy staff to review and verify the applicant's criminal history does not disqualify the applicant for assistance. The paper document is then destroyed and the secured linked terminated with a certain amount of time after it is sent. At the time relevant to Plaintiff Hunter's application, Heather Wasley reviewed criminal backgrounds of applicants. (Ex. H, Interr. #9)

14.     In their cover letter, Defendants again objected to Plaintiffs attempts to invade the privacy of CHA's other tenants. (Dkt. #47-4)

15.     In accordance with this Court's procedures, the parties conferred again on March 20, 2024, to discuss Defendants' objections to Plaintiffs' discovery demands.[2] Plaintiffs at the March 20th conference only wanted to discuss the present issue of the discovery of background checks conducted on the tenants of the CHA. Defendants reaffirmed at the conference that they objected to the production of this material in any form under N.Y. Pub. Hous. Law § 159 and its relevancy to Plaintiffs' claims set forth in their Amended Complaint. (Dkt. #20). Three dates were chosen for argument.

16.     At the March 20th conference, it was relayed to Plaintiffs that the CHA employees a third-party contractor to conduct the criminal background investigation for public housing applicants. As stated in Defendants responses to Plaintiffs' discovery demands, the CHA takes a fingerprint of the applicant. (Ex. H, Interr. #9). It then sends the fingerprint and other personal information to its third-party contractor which conducts the search. (*Id.*) The results of the search are then emailed to the CHA through a secure system. (*Id.*) The email link does not stay valid for an indefinite period. (*Id.*) In order not to lose any data before the link stops working, a paper copy of the results is printed out and provided to the appropriate housing coordinator. (*Id.*) The coordinator reviews to ensure the applicant is eligible for public housing and then destroys the hardcopy to protect the applicant's information. (*Id.*)

17.     Since the March 20th conference and the issuance of this Court's April 10th Order, Ms. Diiorio has been in contact with CHA's vendor, National Credit Reporting. (Dkt. #45-10, ¶5). As part of the background check, the vendor utilizes the FBI's NCIC database. (*Id.*) The FBI

---

[2] Although Defendants had objected to several other topic areas covered in Plaintiffs requests, Plaintiffs limited the discussion only to the production of CHA's tenants' criminal background checks.

requires the vendor to purge all criminal record reports within twenty-four (24) hours of the CHA reviewing it. (*Id.*) Similarly, HUD guidance requires CHA to purge the records after a decision is made on whether to accept or deny an applicant. (*Id,* ¶10).

18.     For the reasons set forth in the accompanying *Memorandum of Law in Opposition to Plaintiffs' Motion to Compel and for Spoilation Sanctions*, this Court should deny the instant motion in its entirety as Plaintiffs have failed to meet their burden on the present motion.

WHEREFORE, Defendants, Cortland Housing Authority and Ella M. Diiorio, respectfully request that the Court deny Plaintiffs' motion in its entirety, together with such other and further relief as this Court deems just, equitable, and proper.

Dated: May 24, 2024
        Cortland, New York

                                    Respectfully submitted,

                            By: ___*s/ Mark T. Houston*_____
                                 Mark T. Houston, Esq.
                                 NDNY Bar Roll No. 519979
                                 The Towne Law Firm, P.C.
                                 Attorneys for Defendants
                                 500 New Karner Road, PO Box 15072
                                 Albany, New York 12212
                                 P: (518) 452-1800

Cc:  Counsel of Record (*via ECF*)

5