UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT HUNTER, ELMER IRWIN, DOUG
MERRIN, and THE SECOND AMENDMENT         Case No: 5:23-cv-01540
FOUNDATION,                                              (GTS/ML)

                                      Plaintiffs,      **DECLARATION**

        - against –

CORTLAND HOUSING AUTHORITY, and ELLA M.
DIIORIO, in her official capacity as Executive Director
of CORTLAND HOUSING AUTHORITY,

                                      Defendants.
-----------------------------------------------------------------X

**SUPPLEMENTAL DECLARATION OF ELLA M. DIIORIO IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF TENANT'S CRIMINAL BACKGROUND CHECKS AND FOR SANCTIONS**

I, Ella M. Diiorio, declare under penalty of perjury that the following facts are true and correct:

1. I am the Executive Director of Defendant, Cortland Housing Authority (hereinafter referred to as "CHA"), and as such I am fully familiar with the policies, customs, practices, and legal matters concerning CHA.

2. I have been made aware that Plaintiffs have moved this Court for an Order directing Defendants to produce CHA's tenants criminal background checks and for sanctions for Defendants destruction of said background checks in compliance with the United States Department of Housing and Urban Development's guidance.

3. I submit this supplemental declaration in opposition to Plaintiffs instant motion.

4. I have been made aware that Plaintiffs have demanded that the CHA produce with information contained in public housing applicants' criminal background checks. It is my understanding that this request is for the criminal background checks for the past and present CHA tenants without any qualifier.

5. As I have previously stated, the CHA was established in 1957 by New York's legislature. I cannot attest to the exact number of tenants the CHA has had living in its public housing developments. I also would not be able to give a guess given that developments were built at different times of CHA's history

6. I started working for the CHA in 2005. Since that time, the CHA has always conducted a criminal background check for any applicant or members of the applicant's family. I cannot attest to when the CHA began conducting criminal background checks for applicants prior to the date of my employment.

7. In the near twenty years, I have been employed by the CHA the has had the same policy. The CHA staff does not conduct criminal background checks. Rather, CHA staff fingerprints an applicant. It sends the fingerprint along with other personal identifying information to a third-party contractor that has access to the FBI database. The contractor then sends a report to the CHA regarding the applicant that includes the applicant's criminal history, if any, along with other information considered when assessing a potential tenant.

8. It has been the policy of the CHA to purge an applicant's criminal history as soon as possible after a decision is made. The outer limit for retention of the record is thirty (30) days from the letter notifying the applicant of its decision. Typically, the CHA will only hold the record for those applicants that have been rejected for housing. Rejected applicants have no more than

thirty (30) days to inform the CHA that they intend to challenge its decision. Typically, accepted applicant's records may be purged sooner given that there is no chance of a legal challenge.

9. Regarding the Plaintiffs' demand for the criminal records of CHA's tenants, most of the "past" records they seek would have been purged well before they commenced this action. Further the records of the tenant currently living in the Galatia Apartments were purged prior to the commence of this action. Most of the tenants living in Plaintiffs' development were already accepted and moved in prior to Plaintiffs action. There was one tenant that moved on December 1, 2023. However, this tenant would have been reviewed and accepted in November of 2023 meaning this tenant's record was purged prior to Plaintiffs' service of their summons.

10. Public housing is intended to provide decent, safe, and sanitary housing to individuals who otherwise may not be able to afford it on their own. The CHA, like other PHAs, conducts criminal background checks to make sure het applicant is entitled to public housing and is not otherwise disqualified based on their criminal histories.

11. Recently, HUD has begun to recommend PHAs to be mindful of the effect criminal background checks can have on an applicant's willingness to even apply for public housing. The focus has been on trying to help individuals re-integrate into their communities after being released from prison or otherwise having faced our criminal justice system. HUD's concern is that of recidivism. If any individual who has faced their punishment cannot find an opportunity to do better, they may not reintegrate and may revert to prior criminal behavior due to a lack of support.

12. Furthermore, public housing tends, at times, to be a community within a community. The disclosure of an individual's criminal history has the real potential to negatively impact the individual and the community. It is not uncommon to see tenants face stigmatization and ostracism from their community when they are accused with criminal behavior. It would not

be unexpected for individuals who have a criminal history to face the same which would make it harder for them to rebuild their lives. Similarly, exposure presents a personal safety risk. It would not be unexpected that along with the stigmatization and ostracism that the person face threats of harassment from their community.

13. The individual tenant's family may also suffer from the exposure. The tenant's family members will not only have to deal with guilt by association and maybe subject to same ostracism and personal safety risk as the individual with the record.

14. Additionally, there are mental health consequences to consider for both the tenant with a record and the tenant's family. The stress and anxiety of being publicly identified and judged based on past actions can negatively impact a person's mental health.

15. Hence, the value, if any, of the information Plaintiffs' hope to gain by intruding into the personal affairs of the other CHA tenants does not outweigh the potential harm it could result in to the CHA community.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 20, 2024
Cortland, New York

*Ella M. Diiorio*

Ella M. Diiorio